# EXHIBIT A

| Defendant | Case Number | Resolution Type | Sentencing Date | Court Sentence: PROBATION | Court Sentence: INCARCERATION | Court Sentence: HOME CONFINEMENT |
|---|---|---|---|---|---|---|
| Dillon, Brittiany | 1:21-CR-00360 | Plea | 11/4/2021 | 36 months | N/A | 2 months |
| Harrison, Bruce | 1:21-CR-00365 | Plea | 12/16/2021 | 48 months | N/A | N/A |
| Wangler, Douglas | 1:21-CR-00365 | Plea | 12/16/2021 | 24 months | N/A | N/A |
| Schwemmer, Esther | 1:21-CR-00364 | Plea | 1/10/2022 | 24 months | N/A | N/A |
| Kostolsky, Jackson | 1:21-CR-00197 | Plea | 1/11/2022 | 36 months | N/A | 30 days |
| Walden, Carey Jon | 1:21-CR-00548 | Plea | 1/19/2022 | 36 months | N/A | 30 days |
| Straka, Brandon | 1:21-CR-00579 | Plea | 1/24/2022 | 36 months | N/A | 3 months |

| Williams, Andrew | 1:21-CR-00045 | Plea | 2/9/2022 | 24 months | N/A | N/A |
| McAlanis, Edward | 1:21-CR-00516 | Plea | 2/15/2022 | 24 months | N/A | N/A |
| Nalley, Verden | 1:21-CR-00116 | Plea | 3/10/2022 | 24 months | N/A | N/A |
| Loftus, Kevin Daniel | 1:21-CR-00081 | Plea | 3/15/2022 | 36  months | N/A | N/A |
| Kelley, Kari | 1:21-CR-00201 | Plea | 3/17/2022 | 36 months | N/A | N/A |
| Martin, Zachary | 1:21-CR-00201 | Plea | 3/17/2022 | 36 months | N/A | N/A |
| Quick, Michael | 1:21-CR-00201 | Plea | 3/17/2022 | 24 months | N/A | N/A |
| Quick, Stephen | 1:21-CR-00201 | Plea | 3/17/2022 | 24 months | N/A | N/A |

| Ballesteros, Robert | 1:21-CR-00580 | Plea | 4/28/2022 | 36 months | N/A | N/A |
|---|---|---|---|---|---|---|
| Webler, Matthew | 1:21-CR-00741 | Plea | 5/3/2022 | N/A | 45 days | N/A |
| Spain Jr., Edward | 1:21-CR-00651 | Plea | 5/4/2022 | 36 months | N/A | N/A |
| Suarez, Marissa | 1:21-CR-00205 | Plea | 7/12/2022 | 36 months | N/A | N/A |
| Todisco, Patricia | 1:21-CR-00205 | Plea | 7/12/2022 | 36 months | N/A | N/A |
| Evans III, Treniss | 1:21-CR-00225 | Plea | 11/21/2022 | 36 months | N/A | 20 days intermittent confinement |
| Panayiotou, Marcos | 1:22-CR-00055 | Plea | 11/29/2022 | 36 months | 14 days intermittent | N/A |
| Garcia, Jacob | 1:22-CR-00118 | Plea | 1/26/2023 | 24 months | 30 days intermittent confinement on weekends | N/A |

| Ambrose, Lawrence | 1:22-CR-302 | Plea | 3/13/2023 | 36 months | N/A | N/A |
|---|---|---|---|---|---|---|
| Saer, Lilith Anton | 1:22-CR-374 | Plea | 4/4/2023 | 36 months | N/A | N/A |
| Allen, Chase | 1:22-CR-361 | Plea | 4/20/2023 | 36 months | 14 days | N/A |
| Colgan, Joshua | 1:22-CR-00224 | Plea | 4/25/2023 | 36 months | 28 days | 90 days |
| Hallon, Luis | 1:22-CR-217 | Plea | 4/26/2023 | 24 months | N/A | N/A |
| Robinson, James | 1:22-CR-00267 | Plea | 5/9/2023 | N/A | 6 months | N/A |
| Horvath, Ian | 1:22-CR-00344 | Plea | 5/12/2023 | 36 months | N/A | N/A |
| Cohen, Menachem | 1:22-CR-00393 | Plea | 6/12/2023 | 36 months | N/A | N/A |

# EXHIBIT B

| Defendant | Case Number | Judge | Offenses Charged | Plea? | Sentencing Date | Court Sentence: Probation | Court Sentence: Incarceration |
|---|---|---|---|---|---|---|---|
| Hodgkins, Paul | 1:21-CR-00188 | Moss | 18 U.S.C. § 1512(c)(2)<br>18 U.S.C. § 1752(a)(1)<br>18 U.S.C. § 1752(a)(2)<br>40 U.S.C. § 5104(e)(2)(D)<br>40 U.S.C. § 5104(e)(2)(G) | Yes | 7/19/2021 | 24 months supervised release | 8 months |
| Fairlamb, Scott | 1:21-CR-00120 | Lamberth | 18 U.S.C. § 231(a)(3)<br>18 U.S.C. § 1512(c)(2)<br>18 U.S.C. § 111(a)(1)<br>18 U.S.C. § 1752(a)(1)<br>18 U.S.C. § 1752(a)(2)<br>18 U.S.C. § 1752(a)(3)<br>18 U.S.C. § 1752(a)(4)<br>40 U.S.C. § 5104(e)(2)(D)<br>40 U.S.C. § 5104(e)(2)(G) | Yes | 11/10/2021 | 36 months supervised release | 41 months |
| Chansley, Jacob | 1:21-CR-00003 | Lamberth | 18 U.S.C. § 231(a)(3)<br>18 U.S.C. § 1512(c)(2)<br>18 U.S.C. § 1752(a)(1)<br>18 U.S.C. § 1752(a)(2)<br>40 U.S.C. § 5104(e)(2)(D)<br>40 U.S.C. § 5104(e)(2)(G) | Yes | 11/17/2021 | 36 months supervised release | 41 months |
| Wilson, Duke | 1:21-CR-00345 | Lamberth | 18 U.S.C. § 111(a)(1) and (2)<br>18 U.S.C. § 231(a)(3)<br>18 U.S.C. § 1752(a)(1)<br>18 U.S.C. § 1752(a)(2)<br>18 U.S.C. § 1512(c)(2)<br>40 U.S.C. § 5104(e)(2)(C)<br>40 U.S.C. § 5104(e)(2)(D) | Yes | 3/4/2022 | 36 months supervised release | 51 months |
| Mostofsky, Aaron | 1:21-CR-00138 | Boasberg | 18 U.S.C. § 231(a)(3)<br>18 U.S.C. § 1512(c)(2)<br>18 U.S.C. § 111(a)(1)<br>18 U.S.C. § 1752(a)(1)-(2)<br>40 U.S.C. § 5104(e)(2)(D) & (G) | Yes | 5/6/2022 | 12 months supervised release | 8 months |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Ehmke, Hunter | 1:21-CR-00029 | Chutkan | 18 U.S.C. § 1361<br>18 U.S.C. § 1512(c)(2)<br>40 U.S.C. § 5104(e)(2)(D)<br>40 U.S.C. § 5104(e)(2)(G) | Yes | 5/13/2022 | 36 months supervised release | 4 months |
| Miller, Matthew Ryan | 1:21-CR-00075 | Moss | 18 U.S.C. § 231(a)(3)<br>18 U.S.C. § 1512(c)(2)<br>18 U.S.C. § 111(a) and (b)<br>18 U.S.C. § 1752(a)(1)<br>18 U.S.C. § 1752(a)(2)<br>18 U.S.C. § 1752(a)(4)<br>40 U.S.C. § 5104(e)(2)(D)<br>40 U.S.C. § 5104(e)(2)(G | Yes | 5/23/2022 | 24 months supervised release | 33 months |
| Rubenacker, Greg | 1:21-CR-00193 | Howell | 18 U.S.C. § 231(a)(3)<br>18 U.S.C. § 1512(c)(2)<br>18 U.S.C. § 111(a)<br>18 U.S.C. § 1752(a)(1)<br>18 U.S.C. § 1752(a)(2)<br>18 U.S.C. § 1752(a)(4)<br>40 U.S.C. § 5104(e)(2)(D)<br>40 U.S.C. § 5104(e)(2)(E)<br>40 U.S.C. § 5104(e)(2)(F)<br>40 U.S.C. § 5104(e)(2)(G) | Yes | 5/26/2022 | 36 months supervised release | 41 months |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Evans, Derrick | 1:21-CR-00337 | Lamberth | 18 U.S.C. § 1512(c)(2)<br>18 U.S.C. § 231(a)(3)<br>18 U.S.C. § 1752(a)(1)<br>18 U.S.C. § 1752(a)(2)<br>40 U.S.C. § 5104(e)(2)(D)<br>40 U.S.C. § 5104(e)(2)(G) | Yes | 6/22/2022 | 36 months supervised release | 3 months |
| Griswold, Andrew | 1:21-CR-00459 | Cooper | 18 USC §1512(c)(2) and 2<br>18 USC §231(a)(3)<br>18 USC §1752(a)(1)<br>18 USC §1752(a)(2)<br>40 USC §5104(e)(2)(B<br>40 USC §5104(e)(2)(D);<br>40 USC §5104(e)(2)(G) | Yes | 7/13/2022 | 2 years supervised release | 75 days |
| Mattice, Cody | 1:21-CR-00657 | Howell | 18 U.S.C. § 231(a)(3)<br>18 U.S.C. § 1512(c)(2)<br>18 U.S.C. § 111(a)(1) & (b)<br>18 U.S.C. § 1752(a)(1)<br>18 U.S.C. § 1752(a)(2)<br>18 U.S.C. § 1752(a)(4)<br>40 U.S.C. § 5104(e)(2)(D)<br>40 U.S.C. § 5104(e)(2)(F) | Yes | 7/15/2022 | 36 months supervised release | 44 months |
| Mault, James | 1:21-CR-00657 | Howell | 18 U.S.C. § 231(a)(3)<br>18 U.S.C. § 1512(c)(2)<br>18 U.S.C. § 111(a)(1) & (b)<br>18 U.S.C. § 1752(a)(1)<br>18 U.S.C. § 1752(a)(2)<br>18 U.S.C. § 1752(a)(4)<br>40 U.S.C. § 5104(e)(2)(D)<br>40 U.S.C. § 5104(e)(2)(F) | Yes | 7/15/2022 | 36 months supervised release | 44 months |
| Ponder, Mark | 1:21-CR-00259 | Chutkan | 18 U.S.C. § 231(a)(3)<br>18 U.S.C. § 1512(c)(2)<br>18 U.S.C. § 111(a)(1) & (b)<br>18 U.S.C. § 1752(a)(1)<br>18 U.S.C. § 1752(a)(2) | Yes | 7/26/2022 | 36 months supervised release | 63 months |

| | | | 18 U.S.C. § 1752(a)(4)<br>40 U.S.C. § 5104(e)(2)(D)<br>40 U.S.C. § 5104(e)(2)(F) | | | | |
|---|---|---|---|---|---|---|---|
| Reffitt, Guy | 1:21-CR-00032 | Friedrich | 18 U.S.C. § 231(a)(2)<br>18 U.S.C. § 1512(c)(2)<br>18 U.S.C. § 1752(a)(1)<br>18 U.S.C. § 231(a)(3)<br>18 U.S.C. § 1512(a)(2) | Yes | 8/1/2022 | | 87 months |
| Robertson, Thomas | 1:21-CR-00034 | Cooper | 18 USC 1512(c)(2) and 2<br>18 USC 231(a)(3) and 2<br>18 USC 1752(a)(1) and (b)(1)(A)<br>18 USC 1752(a)(2) and (b)(1)(A)<br>40 USC 5104(e)(2)(D) | No – Trial | 8/11/2022 | 36 months supervised release | 87 months |
| Fracker, Jacob | 1:21-CR-00034 | Cooper | 18 U.S.C. § 1512(c)(2)<br>18 U.S.C. § 1752(a)(1)<br>18 U.S.C. § 1752(a)(2)<br>18 U.S.C. § 1752(b)(1)(a)<br>18 U.S.C. § 371<br>40 U.S.C. § 5104(e)(2)(D) | Yes | 8/16/2022 | 12 months supervised release | None (59 days home confinement) |
| Cortez, Christian Glen | 1:21-CR-00317 | Chutkan | 18 U.S.C. § 231(a)(3)<br>18 U.S.C. § 1512(c)(2)<br>18 U.S.C. § 1752(a)(1)<br>18 U.S.C. § 1752(a)(2)<br>18 U.S.C. § 111(a)<br>40 U.S.C. § 5104(e)(2)(D)<br>40 U.S.C. § 5104(e)(2)(E)<br>40 U.S.C. § 5104(e)(2)(G) | Yes | 8/31/2022 | 36 months supervised release | 4 months |
| Michetti, Richard | 1:21-cr-00232 | Cooper | 18 U.S.C. §1512(c)(2) and 2<br>18 U.S.C. §1752(a)(1)<br>18 U.S.C. §1752(a)(2)<br>40 U.S.C. §5104(e)(2)(D) | Yes | 9/6/2022 | 24 months supervised release | 9 months |

| Williams, Anthony | 1:21-CR-00377 | Howell | 18 U.S.C. 1512(c)(2); 40 U.S.C. 5104(e)(2)(D) and (G); 18 U.S.C. 1752(a)(1) and (2) | Yes | 9/16/2022 | 36 months supervised release | 60 months |
|---|---|---|---|---|---|---|---|
| Hale-Cusanelli, Tim | 1:21-CR-00037 | McFadden | 18 U.S.C. 1512(c)(2) and 2 18 U.S.C. 1752(a)(1) 18 U.S.C. 1752(a)(2) 40 U.S.C. 5104(e)(2)(D) 40 U.S.C. 5104(e)(2)(G) | No – Trial | 9/22/2022 | 36 months supervised release | 48 months |
| Lyon, Robert | 1:21-CR-00161 | Walton | 18 U.S.C. § 1752(a)(1) 18 U.S.C. § 1752(a)(2) 18 U.S.C. § 641 40 U.S.C. § 5104(e)(2)(D) 40 U.S.C. § 5104(e)(2)(G) 18 U.S.C. § 1512(c)(2) | Yes | 9/22/2022 | 1 year supervised release | 40 days |
| Neefe, Marshall | 1:21-CR-00567 | Lamberth | 18 U.S.C. § 231(a)(3) 18 U.S.C. § 1512(k) 18 U.S.C. § 1512(c)(2) 18 U.S.C. § 1752(a)(1) 18 U.S.C. § 1752(a)(2) 18 U.S.C. § 1752(a)(4) 18 U.S.C. § 111(a)(1) 18 U.S.C. § 111(b)(1) 40 U.S.C. § 5104(e)(2)(D) 40 U.S.C. § 5104(e)(2)(F) 40 U.S.C. § 5104(e)(2)(G) | Yes | 9/23/2022 | 36 months supervised release | 41 months |
| Smith, Charles Bradford | 1:21-CR-00567 | Lamberth | 18 U.S.C. § 231(a)(3) 18 U.S.C. § 1512(k) 18 U.S.C. § 1752(a)(1) 18 U.S.C. § 1752(a)(2) 18 U.S.C. § 1752(a)(3) 18 U.S.C. § 1752(a)(4) 18 U.S.C. § 111(a)(1) 18 U.S.C. § 111(b)(1) 40 U.S.C. § 5104(e)(2)(D) 40 U.S.C. § 5104(e)(2)(F) | Yes | 9/23/2022 | 36 months supervised release | 41 months |

| | | | 40 U.S.C. § 5104(e)(2)(G) 40 U.S.C. § 5104(e)(1)(A) | | | | |
|---|---|---|---|---|---|---|---|
| Young, Kyle | 1:21-CR-00291 | Jackson | 18 U.S.C. § 231(a)(3) 18 U.S.C. § 2111 18 U.S.C. § 1512(c)(2) 18 U.S.C. § 1752(a)(1) 18 U.S.C. § 1752(a)(2) 18 U.S.C. § 1752(a)(3) 18 U.S.C. § 1752(a)(4) 18 U.S.C. § 111(a)(1) 40 U.S.C. § 5104(e)(2)(E) 40 U.S.C. § 5104(e)(2)(F) | Yes | 9/27/2022 | 36 months supervised release | 86 months |
| Ryals, Jerry | 1:21-CR-00244 | Kollar-Kotelly | 18 U.S.C. § 1512(c)(2) 18 U.S.C. § 1752(a)(1) 18 U.S.C. § 1752(a)(2) 40 U.S.C. § 5104(e)(2)(D) 40 U.S.C. § 5104(e)(2)(G) | Yes | 10/18/2022 | 36 months supervised release | 9 months |
| Secor, Christian | 1:21-CR-00157 | McFadden | 18 U.S.C. 1512(c)(2) and 2; 18 U.S.C. 231(c)(3) and 2; 18 U.S.C. 231(a)(3) and 2; 18 U.S.C. 111(a)(1) and 2; 18 U.S.C. 111(a)(1), 2; 18 U.S.C. 1752(a)(1); 18 U.S.C. 1752(a)(2); 40 U.S.C. 5104(e)(2)(A); 40 U.S.C. 5104(e)(2)(B); 40 U.S.C. 5104(e)(2)(C); 40 U.S.C. 5104(e)(2)(D); 40 U.S.C. 5104(e)(2)(G); | Yes | 10/19/2022 | 36 months supervised release | 42 months |
| Fairchild, Jr., Robert | 1:21-CR-00551 | Hogan | 18 U.S.C. 231(a)(3); 18 U.S.C. 1512(c)(2) and 2; 18 U.S.C. 111(a)(1); 18 U.S.C. 1752(a)(1); 18 U.S.C. 1752(a)(2); | Yes | 10/20/2022 | | 6 months |

| | | | 18 U.S.C. 1752(a)(4);<br>40 U.S.C. 5104(e)(2)(D);<br>40 U.S.C. 5104(e)(2)(F);<br>40 U.S.C. 5104(e)(2)(G); | | | | |
|---|---|---|---|---|---|---|---|
| Bledsoe, Matthew | 1:21-CR-00204 | Howell | 18 U.S.C. 1512(c)(2)<br>18 U.S.C. 1752(a)(1)<br>18 U.S.C. 1752(a)(2)<br>40 USC 5104(e)(2)(D)<br>40 USC 5104(e)(2)(G) | No – Trial | 10/21/2022 | 36 months supervised release | 48 months |
| Mazza, Andrew Mark | 1:21-CR-00736 | Boasberg | 18 U.S.C. 231(a)(3);<br>18 U.S.C. 1512(c)(2) and 2;<br>18 U.S.C. 1512(c)(2);<br>18 U.S.C. 111(a)(1) and (b);<br>18 U.S.C. 1752(a)(1) and (b)(1)(A);<br>18 U.S.C. 1752(a)(2) and (b)(1)(A);<br>18 U.S.C. 1752(a)(4) and (b)(1)(A);<br>40 U.S.C. 5104(e)(1)(A);<br>40 U.S.C. 5104(e)(2)(F);<br>22 D.C. Code 4504(a)(2001 ed.);<br>7 D.C. Code 2502.01(a)(2001 ed.);<br>7 D.C. Code 2506.01(3)(2001 ed.);<br>22 D.C. Code 3211, 3212(b)(2001 ed.); | Yes | 10/21/2022 | 36 months supervised release | 60 months |

| Seefried, Hunter | 1:21-CR-00287 | McFadden | 18 U.S.C. 1512(c)(2) and 2<br>18 U.S.C. 1752(a)(1)<br>18 U.S.C. 1752(a)(2)<br>40 U.S.C. 5104(e)(2)(D)<br>40 U.S.C. 5104(e)(2)(G)<br>18 U.S.C. 1752(a)(4)<br>18 U.S.C. 1361<br>40 U.S.C. 5104(e)(2)(F) | Guilty Verdict Bench Trial 6/15/2022 | 10/24/2022 | 12 months supervised release | 24 months |
| Head, Albuquerque Cosper | 1:21-CR-00291 | Jackson | 18 U.S.C. § 231(a)(3)<br>18 U.S.C. § 1512(c)(2)<br>18 U.S.C. § 1752(a)(1)<br>18 U.S.C. § 1752(a)(2)<br>18 U.S.C. § 1752(a)(3)<br>18 U.S.C. § 1752(a)(4)<br>18 U.S.C. § 111(a)(1)<br>40 U.S.C. § 5104(e)(2)(E)<br>40 U.S.C. § 5104(e)(2)(F) | Yes | 10/27/2022 | 36 months supervised release | 90 months |
| Faulkner, Troy Elbert | 1:21-CR-00126 | Howell | 18 U.S.C. 1361;<br>18 U.S.C. 1512(c)(2);<br>18 U.S.C. 1752(a)(1)(2)(4);<br>40 U.S.C. 5104(e)(2)(D)(G) | Yes | 11/3/2022 | 36 months supervised release | 5 months |
| Thompson, Dustin | 1:21-cr-00161 | Walton | 18 U.S.C. 1512(c)(2) and 2<br>18 U.S.C. 641 and 2<br>18 U.S.C. 1752(a)(1)<br>18 U.S.C. 1752(a)(2)<br>40 U.S.C. 5104( e) (2) (D)<br>40 U.S.C. 5104( e) (2)(G) | Yes | 11/18/2022 | 36 months supervised release | 36 months |
| Hughes, Joshua | 1:21-CR-00106 | Kelly | 18 U.S.C. 1512(c)(2);<br>18 U.S.C. 231(a)(3);<br>18 U.S.C. 1752(a)(1);<br>18 U.S.C. 1752(a)(2);<br>40 U.S.C. 5104(e)(2)(A);<br>40 U.S.C. 5104(e)(2)©;<br>40 U.S.C. 5104(e)(2)(G); | Yes | 11/22/2022 | 36 months supervised release | 38 months |

|  |  |  | 18 U.S.C. 1361 and 18 U.S.C. 2 |  |  |  |  |
|---|---|---|---|---|---|---|---|
| Wood, Matthew | 1:21-CR-00223 | Mehta | 18 U.S.C. 1512(c)(2)<br>18 U.S.C. 1752(a)(1)<br>18 U.S.C. 1752(a)(2)<br>40 U.S.C. 5104(e)(2)(C)<br>40 U.S.C. 5104(e)(2)(D)<br>40 U.S.C. 5104(e)(2)(G) | Yes | 11/28/2022 | 36 months supervised release | None (12 months home detention) |
| Presley, Ronnie | 1:21-CR-257 | Moss | 18 U.S.C. 231(a)(3);<br>18 U.S.C. 1512(c)(2);<br>18 U.S.C. 1752(a)(1);<br>18 U.S.C. 1752(a)(2);<br>18 U.S.C. 1752(a)(4);<br>40 U.S.C. 5104(e)(2) | Yes | 11/30/2022 | 26 months supervised release | 12 months |
| Tenney, George | 1:21-CR-00640 | Hogan | 18 USC 1512 ( c) (2) and 2<br>18 USC 231 (a) (3)<br>18 USC 111 (a) (1)<br>18 USC 1752 (a)(1)<br>18 USC 1752 (a) (2) | Yes | 12/5/2022 | 36 months supervised release | 36 months |
| Cantwell, Lewis Easton | 1:21-CR-00089 | Sullivan | 18 U.S.C. 231(a)(3) and 2<br>18 U.S.C. 1512(c)(2) and 2;<br>18 U.S.C. 1752(a)(1<br>18 U.S.C. 1752(a)(2)<br>40 U.S.C. 5104(e)(2)(D)<br>40 U.S.C. 5104(e)(2)(G) | Yes | 12/6/2022 | 36 months supervised release | 5 months |
| Reid, William | 1:21-CR-00316 | Friedrich | 18 U.S.C. 1512(c)(1);<br>18 U.S.C. 1752(a)(1) and (2);<br>40 U.S.C. 5104(e)(2)(D) and (G) | Yes | 12/7/2022 | 36 months supervised release | 37 months incarceration |

| Decarlo, Nicholas | 1:21-CR-00073 | Howell | 18 U.S.C. 371 and 1512(c)(2); 18 U.S.C. 1361, 2; 18 U.S.C. 641, 2; 18 U.S.C. 1752(a)(1); 18 U.S.C. 1752(a)(2); 18 U.S.C. 1752(a)(4) and 2 | Yes | 12/9/2022 | 36 months supervised release | 48 months |
|---|---|---|---|---|---|---|---|
| Ochs, Nicholas | 1:21-CR-00073 | Howell | 18 U.S.C. 371 and 1512(c)(2); 18 U.S.C. 1361, 2; 18 U.S.C. 641, 2; 18 U.S.C. 1752(a)(1); 18 U.S.C. 1752(a)(2); 18 U.S.C. 1752(a)(4) and 2 | Yes | 12/9/2022 | 36 months supervised release | 48 months |
| Grayson, Kenneth | 1:21-CR-00224 | Chutkan | 18 U.S.C. 1752(a)(1); 18 U.S.C. 1752(a)(2); 40 U.S.C. 5104(e)(2)(D); 40 U.S.C. 5104(e)(2)(G); 18 U.S.C. 1512(c)(2) | Yes | 12/19/2022 | 24 months supervised release | 2 months |
| Hughes, Jerod | 1:21-CR-00106 | Kelly | 18 U.S.C. 1512(c)(2); 18 U.S.C. 231(a)(3); 18 U.S.C. 1752(a)(1); 18 U.S.C. 1752(a)(2); 40 U.S.C. 5104(e)(2)(A); 40 U.S.C. 5104(e)(2)©; 40 U.S.C. 5104(e)(2)(G); 18 U.S.C. 1361 and 18 U.S.C. 2 | Yes | 1/6/2023 | 36 months supervised release | 46 months |
| Herrera, Erik | 1:21-CR-619 | Howell | 18 U.S.C. 1512(c)(2) 18 U.S.C. 1752(a)(1) 18 U.S.C. `752(a)(2) 40 U.S.C. 5104()(2)(D) 40 U.S.C. 5104(e)(2)(G) | Yes | 1/13/2023 | 36 months supervised release | 48 months |
| Rahm, James Jr | 1:21-CR-00150 | Hogan | 18 U.S.C. § 1512(c)(2) and 2; 18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2); | Yes | 1/18/2023 | 36 months supervised release | 12 months incarceration |

| | | | 40 U.S.C. § 5104(e)(2)(D); 40 U.S.C. § 5104(e)(2)(G) | | | | |
|---|---|---|---|---|---|---|---|
| McGrew, James | 1:21-CR-00398 | Howell | 18 U.S.C. 231(a)(3); 18 U.S.C. 1512(c)(2) and 2; 18 U.S.C. 111(a)(1) and (b); 18 U.S.C. 1752(a)(1) and (b)(1)(A); 18 U.S.C. 1752(a)(2) and (b)(1)(A); 18 U.S.C. 1752(a)(4) and (b)(1)(A); 40 U.S.C. 5104(e)(2)(D); 40 U.S.C. 5104(e)(2)(F); 40 U.S.C. 5104(e)(2)(G); | Yes | 1/20/2023 | 36 months supervised release | 78 months |
| Hernandez, Andrew Alan | 1:21-CR-00445 | Kollar-Kotelly | 18 U.S.C. 1512(c)(2); 18 U.S.C. 1752(a)(1); 18 U.S.C. 1752(a)(2); 40 U.S.C. 5104(e)(2)(D); 40 U.S.C. 5104(e)(2)(G) | Yes | 1/27/2023 | 36 months supervised release | 18 months |
| Khater, Julian Elie | 1:21-CR-00222 | Hogan | 18 U.S.C. 111(a) and(b); 18 U.S.C. 111(a) and (b); 18 U.S.C. 111(a) and (b); 18 U.S.C. 372; 18 U.S.C. 231(a)(3); 18 U.S.C. 1512(c)(2); 18 U.S.C. 1752(a)(1),(2),(4),(b)(1)(A) and (b)(1)(B); 40 U.S.C. 5104(e)(2)(f), and 18 U.S.C. 2 | Yes | 1/27/2023 | 24 months supervised release | 80 months |
| Moynihan, Christopher | 1:21-CR-226 | Cooper | 18 U.S.C. 1752(a)(1); 40 U.S.C. 5104(e)(2); 18 U.S.C. 1512(c)(2) | Yes | 2/1/2023 | 36 months supervised release | 21 months |

| Haynes, Joshua | 1:21-CR-594 | Chutkan | 18 U.S.C. 1752(a)(1), (2) and (4); 18 U.S.C. 1512(c)(2) and 2; 18 U.S.C. 1363, 40 U.S.C. 5104(e)(2)(D); 40 U.S.C. 5104(e)(2)(F); 40 U.S.C. 5104(e)(2)(G) | Yes | 2/2/2023 | 36 months supervised release | 32 months |
|---|---|---|---|---|---|---|---|
| Seefried, Kevin | 1:21-CR-00287 | McFadden | 18 U.S.C. 1512(c)(2) and 2 18 U.S.C. 1752(a)(1) 18 U.S.C. 1752(a)(2) 40 U.S.C. 5104(e)(2)(D) 40 U.S.C. 5104(e)(2)(G) | No – Trial | 2/9/2023 | 12 months supervised release | 36 months |
| Wright, John Douglas | 1:21-CR-00341 | Kollar-Kotelly | 18 U.S.C. 1752(a)(1)(2)(4); 40 U.S.C. 5104(e)(2)(D)(G); 18 U.S.C. 231(a)(3); 18 U.S.C. 1512(c)(2); 18 U.S.C. 1001 | Yes | 3/6/2023 | 36 months supervised release | 49 months |
| Eckerman, Michael | 1:21-CR-623 | Cooper | 18 U.S.C. 111(a)(1); 18 U.S.C. 231(a)(3); 18 U.S.C. 1512(c)(2); 18 U.S.C. 1752(a)(1); 18 U.S.C. 1752(a)(2); 40 U.S.C. 5104(e)(2)(A); 40 U.S.C. 5104(e)(2)(D); 40 U.S.C. 5104(e)(2)(G) | Yes | 3/8/2023 | 24 months | 20 months |
| Egtvedt, Daniel | 1:21-CR-177 | Cooper | 18 U.S.C. § 111(a)(1); 18 U.S.C. § 231(a)(3); 18 U.S.C. § 1512(c)(2); 18 U.S.C. § 1752(a)(1), (2) &; (4); 40 U.S.C. § 5104(e)(2)(D) &; (F) | Yes | 3/16/2023 | 36 months supervised release | 42 months |

| Gardner, Mitchell | 1:21-CR-00622 | Mehta | 18 U.S.C. 231(a)(3); 18 U.S.C. 1512(c)(2) and 2; 18 U.S.C. 111(a)(1) and (b); 18 U.S.C. 1361 and 2; 18 U.S.C. 1752(a)(1); 18 U.S.C. 1752(a)(2); 18 U.S.C. 1752(a)(4); 40 U.S.C. 5104(e)(2)(D); 40 U.S.C. 5104(e)(2)(F); 40 U.S.C. 5104(e)(2)(G); | Yes | 3/16/2023 | 36 months supervised release | 55 months |
|---|---|---|---|---|---|---|---|
| Puma, Anthony | 1:21-CR-00454 | Friedman | 18 U.S.C. 1752(a)(1); 18 U.S.C. 1752(a)(2); 18 U.S.C. 1512(c)(2); 40 U.S.C. 5104(e)(2) | Yes | 3/21/2023 | 24 months supervised release | 9 months |
| Williams, Riley | 1:21-CR-618 | Jackson | 18 U.S.C. 1752(a)(1),(2); 40 U.S.C. 5104(e)(2); 18 U.S.C. 641,2; 18 U.S.C. 1512(c)(2) | No – Trial | 3/23/2023 | 36 months supervised release | 36 months |
| Price, Shawn | 1:22-CR-00106 | Nichols | 18 U.S.C. 1752(a)(1); 18 U.S.C. 1752(a)(2); 18 U.S.C. 231(a)(3); 18 U.S.C. 1512(c)(2); 18 U.S.C. 2 | Yes | 4/3/2023 | 36 months supervised release | 12 months |
| Adams, Howard | 1:22-CR-358 | Howell | 18 U.S.C. § 231(a)(3); 18 U.S.C. § 1512(c)(2); 18 U.S.C. § 1752(a)(1), 18:1752(a)(2); 40 U.S.C. § 5104(e)(2)(D); 40 U.S.C. § 5104(e)(2)(G) | Yes | 4/13/2023 | 36 months supervised release | 8 months |
| Bender, Luke | 1:21-CR-508 | Howell | 18 U.S.C. 1512(c)(2); 18 U.S.C. 1752(a)(1); 18 U.S.C. 1752(a)(2); 40 U.S.C. 5104(e)(2)(A); 40 U.S.C. 5104(e)(2)(D); 40 U.S.C. 5104(e)(2)(G) | Yes | 4/20/2023 | 36 months supervised releases | 21 months |

| Mitchell, Landon | 1:21-CR-508 | Howell | 18 U.S.C. 1512(c)(2); 18 U.S.C. 1752(a)(1); 18 U.S.C. 1752(a)(2); 40 U.S.C. 5104(e)(2)(A); 40 U.S.C. 5104(e)(2)(D); 40 U.S.C. 5104(e)(2)(G) | Yes | 4/20/2023 | 36 months supervised releases | 27 months |
| Copeland, Landon | 1:21-CR-00570 | Mehta | 18 U.S.C. § 231(a)(3) 18 U.S.C. § 1512(c)(2) and 2 18 U.S.C. § 111(a)(1) and (b) 18 U.S.C. §111(a)(1) 18 U.S.C. §111(a)(1) and (b) 18 U.S.C. §1752(a)(1) 18 U.S.C. §1752(a)(2) 18 U.S.C. § 1752(a)(4) 40 U.S.C. § 5104(e)(2)(D) 40 U.S.C. § 5104(e)(2)(F) | Yes | 5/8/2023 | 36 months | 36 months |
| Colt, Josiah | 1:21-CR-00074 | Hogan | 18 U.S.C. 1512(c)(2) and 2; 18 U.S.C. 1752(a)(1); 18 U.S.C. 1752(a)(2); 40 U.S.C. 5104(e)(2)(D); | Yes | 5/10/2023 | 36 months supervised release | 15 months |
| Shalvey, Dale Jeremiah | 1:21-CR-00334 | Kelly | 18 U.S.C. 1512(c)(2); 18 U.S.C. 1752(a)(1); 18 U.S.C. 1752(a)(2); 40 U.S.C. 5104(e)(2)(D); 40 U.S.C. 5104(e)(2)(G) | Yes | 5/11/2023 | 24 months supervised release | 41 months |
| Morss, Robert | 1:21-CR-00040 | McFadden | 18 U.S.C.§ 111, 2; 18 U.S.C.§ 231(a)(3); 18 U.S.C.§ 1212; 18 U.S.C.§ 1512(c)(2) | Yes | 5/24/2023 | 24 months supervised release | 66 months |
| Bauer, Pauline | 1:21-CR-386 | McFadden | 18 U.S.C. 1512(c)(2); 18 U.S.C. 1752(a)(1); 18 U.S.C. 1752(a)(2); 40 U.S.C. 5104(e)(2)(D); 40 U.S.C. 5104(e)(2)(G) | Yes | 5/30/2023 | 24 months supervised release | 27 months |

| Strand, John | 1:21-CR-85 | Cooper | 18 U.S.C. 1512(c)(2) and 2;<br>18 U.S.C. 1752(a)(1);<br>18 U.S.C. 1752(a)(2);<br>40 U.S.C. 5104(e)(2)(D);<br>40 U.S.C. 5104(e)(2)(G) | Yes | 6/2/2023 | 36 months supervised release | 32 months |
|---|---|---|---|---|---|---|---|
| Roche, Michael | 1:22-CR-00086 | Howell | 18 U.S.C. § 1752(a)(1),<br>18 U.S.C. § 1752(a)(2),<br>18 U.S.C. § 1512(c)(2),<br>40 U.S.C. § 5104(e)(2)(A),<br>40 U.S.C. § 5104(e)(2)(C),<br>40 U.S.C. § 5104(e)(2)(D) and<br>40 U.S.C. § 5104(e)(2)(G) | Yes | 6/9/2023 | 36 months supervised release | 18 months |
| Adams, Thomas | 1:22-CR-00354 | Mehta | 18:1752(a)(1) and (2),<br>40:5104(e)(2)(D) and (G) and<br>18:1512(c)(2) | No – Trial | 6/16/2023 | 36 months supervised release | 14 months |
| Rodriguez, Daniel | 1:21-CR-00246 | Jackson | 18 U.S.C. § 1512(c)(2) and 2;<br>18 U.S.C. § 231(a)(3);<br>18 U.S.C. § 641;<br>18 U.S.C. § 1752(a)(1) and (b)(1)(A);<br>18 U.S.C. § 1752(a)(2) and (b)(1)(A);<br>18 U.S.C. § 1752(a)(3) and (b)(1)(A); | Yes | 6/21/2023 | 36 months supervised release | 151 months |
| Sourthard-Rumsey, Audrey | 1:21-CR-387 | Mehta | 18 U.S.C. § 111(a)(1);<br>18 U.S.C. § 231(a)(3);<br>18 U.S.C. § 1512(c)(2);<br>18 U.S.C. § 1752(a)(1);<br>18 U.S.C. § 1752(a)(2);<br>18 U.S.C. § 1752(a)(4);<br>40 U.S.C. § 5104(e)(2)(D);<br>40 U.S.C. § 5104(e)(2)(G);<br>40 U.S.C. § 5104(e)(2)(F) | Yes | 7/14/2023 | 36 months supervised release | 72 months |

# EXHIBIT C

```
 1                 IN THE SUPREME COURT

 2                  STATE OF GEORGIA

 3

 4            DISCIPLINARY PROCEEDINGS

 5

 6         HELD BEFORE SPECIAL MASTER:

 7               LARAE DIXON MOORE

 8

 9   IN THE MATTER OF:        )SUPREME COURT DOCKET NO.
                              )
10   W. McCALL CALHOUN, JR.   )STATE DISCIPLINARY BOARD
     State Bar No. 103915,    )DOCKET NO. 7696
11                            )
             Respondent.      )
12

13

14

15         Show Cause Hearing, Pursuant to Bar Rule

16   4-106, taken before Paula N. Marchetti, Certified

17   Court Reporter in and for the State of Georgia, held

18   at the Sumter County Courthouse, Courtroom B, Room

19   227, Second Floor, 500 West Lamar Street, Americus,

20   Georgia 31709, on the 21st day of June, 2023,

21   commencing at 10:05 a.m. and concluding at 12:31

22   p.m.

23

24

25
```

CALHOUN, W. MCCALL on 06/21/2023

Page 1

```
1              IN THE SUPREME COURT
2               STATE OF GEORGIA
3
4           DISCIPLINARY PROCEEDINGS
5
6       HELD BEFORE SPECIAL MASTER:
7            LARAE DIXON MOORE
8
9   IN THE MATTER OF:      )SUPREME COURT DOCKET NO.
                           )
10  W. McCALL CALHOUN, JR. )STATE DISCIPLINARY BOARD
    State Bar No. 103915,  )DOCKET NO. 7696
11                         )
           Respondent.     )
12
13
14
15      Show Cause Hearing, Pursuant to Bar Rule
16  4-106, taken before Paula N. Marchetti, Certified
17  Court Reporter in and for the State of Georgia, held
18  at the Sumter County Courthouse, Courtroom B, Room
19  227, Second Floor, 500 West Lamar Street, Americus,
20  Georgia 31709, on the 21st day of June, 2023,
21  commencing at 10:05 a.m. and concluding at 12:31
22  p.m.
23
24
25
```

Page 2

```
1                  APPEARANCES
2
3   On behalf of the State Bar of Georgia:
4
5        JENNY K. MITTELMAN, ESQ.
         PAULA J. FREDERICK, ESQ.
6        Office of the General Counsel
         State Bar of Georgia
7        104 Marietta Street, NW, Suite 100
         Atlanta, Georgia 30303-2743
8        404.527.8720
         jennym@gabar.org
9        paulaf@gabar.org
10
11  On behalf of W. McCall Calhoun, Jr., Respondent:
12
13
         DONALD CLARENCE EVANS, JR., ESQ.
14       EVANS LAW FIRM
         117 N. Erwin Street
15       P. O. Box 3022
         Cartersville, Georgia 30120
16       770.382.4374
         don@evansfirm.com
17
18
19
20
21
22
23
24
25
```

Page 3

```
1              I N D E X
2
    EXAMINATIONS                           PAGE
3
    Examination of W. McCall Calhoun, Jr.
4
    DIRECT EXAMINATION                      53
5   BY MR. EVANS
6   CROSS-EXAMINATION                       61
    BY MS. MITTELMAN
7
    REDIRECT EXAMINATION                    61
8   BY MR. EVANS
9
    CERTIFICATE OF REPORTER                 91
10
           E X H I B I T S
11
    NUMBER AND DESCRIPTION                 PAGE
12
13    STATE BAR EXHIBIT 1                    18
        United States District Court for the
14      District of Columbia, Indictment of W.
        McCall Calhoun, Jr., Document 83
15
      STATE BAR EXHIBIT 2                    20
16      United States District Court for the
        District of Columbia, Judgement of Guilt
17      of W. McCall Calhoun, Jr., Document 163
18
      RESPONDENT'S EXHIBIT 1                 43
19      Thumb Drive Containing Footage of W.
        McCall Calhoun, Jr. in Washington, DC, on
20      January 6, 2021.
21
22
23
24
25
```

Page 4

```
1   STATE OF GEORGIA
2   COUNTY OF MUSCOGEE
3   STATE DISCIPLINARY BOARD DOCKET NO. 7696
4
5       Pursuant to Article 8.B of the RULES AND
6   REGULATIONS OF THE BOARD OF COURT REPORTING OF THE
7   JUDICIAL COUNCIL OF GEORGIA, I make the following
8   disclosure:
9
10      I am a Georgia Certified Court Reporter.  I
11  am here as a representative of Marchetti Reporting,
12  LLC.
13
14      Marchetti Reporting, LLC, was contacted by
15  the offices of the State Bar of Georgia, to provide
16  court reporting services for this hearing.
17  Marchetti Reporting, LLC, will not be taking this
18  hearing by O.C.G.A. 15-14-37 (a) and (b).
19
20      This 4th day of July, 2023.
21
22
23      Paula N. Marchetti
        CCR # 4670-2684-9667-4816
24      Expiration Date April 1, 2024
25
```

CALHOUN, W. MCCALL on 06/21/2023

Page 5

1  THEREUPON:
2         MS. MOORE:  All right, good morning, I
3  am LaRae Moore, and I am the Special Master assigned
4  to this case.
5         This is the, in the matter of W. McCall
6  Calhoun, Jr., State Bar Number 103915, State
7  Disciplinary Board Matter, Docket Number 7696.  And
8  this is pursuant to the State Bar's petition for a
9  disciplinary matter.
10        I guess we can determine if everybody is
11  present; on behalf of the State Bar?
12        MS. MITTELMAN:  Jenny Mittelman on
13  behalf of the State Bar, I have the General Counsel,
14  Paula Frederick, present with me, also.
15        MS. MOORE:  Okay, thank you, and for
16  the respondent?
17        MR. EVANS:  Donald Evans, on behalf of
18  McCall Calhoun.
19        MS. MOORE:  Okay, thank you, Mr. Evans,
20  and Mr. Calhoun is present?
21        MR. EVANS:  He is.
22        MS. MOORE:  Okay, all right.  Well, are
23  we ready to proceed, are there any preliminary
24  matters that we need to take up?
25        MS. MITTELMAN:  I don't believe there

Page 6

1  are any preliminary matters we need to take up,
2  other than I have a notebook for you, which Mr.
3  Evans has seen, and authorized me to deliver to you.
4         Is that okay, Mr. Evans?
5         MR. EVANS:  It is fine, thank you.
6         MS. MOORE:  Okay.
7         MS. MITTELMAN:  Thank you.
8         MS. MOORE:  Thank you.
9         MS. MITTELMAN:  Actually, we also have
10  one stipulation, we have -- Mr. Calhoun has agreed
11  that he will stipulate to the fact that he intends
12  to appeal his criminal conviction.
13        MS. MOORE:  Okay.  So I guess my
14  question, as to the stipulation, is has a notice of
15  appeal been filed already?
16        MR. EVANS:  No, Your Honor, and that
17  would be the -- I would like to, to ask the Court to
18  consider a continuance of this hearing, to enable
19  that.
20        There, we've only had the rulings from the
21  Court, and there are several posttrial motions that
22  are being prepared, at the moment, including a
23  motion to -- for a new trial, a rehearing, or an
24  adjustment of the felony count.
25        Mr. Calhoun does not object to the

Page 7

1  misdemeanor counts that were -- he was found guilty
2  of.  What troubles him, and what troubles the State
3  Bar, is only one of the counts, the felony
4  conviction.
5         And, and even though, as the Court will
6  learn, the, the Federal judge who found that Mr.
7  Calhoun had committed a felony, in his brief entry
8  into the Capitol Building, on January 6th, she said
9  that she intended him as a misdemeanor, anyway.
10        MS. MITTELMAN:  I'm going to object to
11  the testimony from Counsel.  There are documents he
12  can submit, if he would like to.
13        MR. EVANS:  Well, I'm just trying to
14  give the Court a preview of what the file will
15  reflect.
16        We'll be moving to admit the entire Federal
17  record, which is on Pacer, it's public record, but I
18  didn't want to print out the boxes and drag them
19  down here.
20        MS. MOORE:  Sure, sure, and I guess my
21  question just, at this time, is, so he's been
22  convicted, but there are posttrial motions pending,
23  and the notice -- there is no notice of appeal filed
24  yet, until the posttrial motions are disposed of?
25        MR. EVANS:  And we are asking the, we

Page 8

1  are asking this tribunal to simply, having opened
2  the matter, continue the matter, to allow us to, you
3  know, prosecute those posttrial motions, before we
4  even know that an appeal is going to be necessary in
5  this case.
6         I mean, the, the everything has been slowed
7  down and delayed in DC, in the court system there,
8  and these important motions are yet to be heard, and
9  may even mean that we don't need to proceed further
10  with this case.
11        And, of course, the Court would be aware
12  that January 6th, and everything that happened on
13  that day, is being litigated politically, in the
14  media, and, and in Congress.
15        And we learn new and interesting facts
16  about the events of that day, the Government's
17  involvement in those events, that pertain to
18  everything that is involved with this charge against
19  Mr. Calhoun.
20        And given the uncertain circumstances of
21  those proceedings, we think it would be fair, at
22  least, to allow Mr. Calhoun to resolve the posttrial
23  motions before filing a notice of appeal, and
24  certainly before losing his ability to earn a living
25  in Georgia is taken away from him

CALHOUN, W. MCCALL on 06/21/2023

Page 9

1      MR. CALHOUN:  I want to -- excuse me, I
2  haven't been sentenced yet.
3          MS. MOORE:  Sure.  So, Mr. Calhoun,
4  please allow your attorney to speak for you.  I'm
5  not inclined, at this time, to grant a continuance.
6  I'll hear from the State Bar, as to its position.
7          MS. MITTELMAN:  A couple of things, Ms.
8  Moore.  First, Mr. Evans said that what's troubling
9  the Bar is the felony conviction.  The felony
10  conviction is troubling the Bar, but that is not the
11  only portion of this that would be in issue.
12          The felony conviction is what -- the reason
13  that we could be here today, regardless of the
14  other, of the misdemeanor convictions, because Mr.
15  Calhoun has been convicted of a felony that damages
16  the representation of the profession in the eyes of
17  the public.
18          And there's a series of cases that expect
19  that he would, at least, be suspended, pending the
20  outcome of the appeals.
21          MS. MOORE:  Is that what's in --
22          MS. MITTELMAN:  Yes, ma'am, so what's
23  in your notebook are a series of cases, starting
24  with the Stoner case, that all describe the fact
25  that the appearance of a convicted attorney does

Page 10

1  great damage to the profession in the eyes of the
2  public.  And, therefore, Mr. Calhoun should be
3  suspended, pending the outcome of his appeals.
4          If he was exonerated, if he was -- if his
5  felony conviction is removed, and we're just looking
6  at the misdemeanors, at that point we reevaluate and
7  have another conversation with Mr. Evans.
8          But, at this point, there is a felony
9  conviction in place, and the Court would expect him
10  to be suspended pending appeal.  So we would object
11  to a continuance.
12          MR. EVANS:  Your Honor, there's another
13  consideration, if I may?
14          MS. MOORE:  And Mister, Mr. Evans, I'm
15  sorry, you can call me Ms. Moore, I'm not a judge, I
16  am a Special Master, so Ms. Moore is fine.
17          MR. EVANS:  Ms. Moore.
18          MS. MOORE:  Okay.
19          MR. EVANS:  The Court -- this tribunal
20  should also consider the harm to McCall Calhoun's 41
21  current clients, who have already paid their fee for
22  representation, many of them are in the courtroom
23  here today, and who are entitled to the attorney of
24  their choice.
25          They have a constitutional right to that,

Page 11

1  which is going to, you know, while the State Bar
2  maintains that Mr. McCall [sic] has been convicted
3  of what they call a felony in DC, is somehow harm to
4  the profession.  That's an abstract principle.
5          At least 41 clients here are going to lose
6  the lawyer that they've already paid, that they
7  selected, that's their counsel of choice.
8          And they've got a constitutional right, as
9  well.  And, a continuance, in order to allow
10  McCall to prosecute posttrial motions, at least,
11  would be a benefit for Mr. Calhoun, and would be a
12  blessing for his 41 clients, who he needs to
13  continue to represent, having been paid to do that.
14  And, of course, prematurely takes away his ability
15  to do that.
16          Then we've trampled on the actual existing.
17  Right now, rights of 41 clients, whereas the State
18  Bar is talking about abstract principles that
19  affects no one, except my client, who is
20  definitely --
21          MS. MOORE:  And I do appreciate the
22  arguments, Mr. Evans, but I believe that in terms of
23  the rules, that certainly would have anticipated
24  these issues.
25          I know how criminal appeals can certainly

Page 12

1  drag out, especially, you know, if there's posttrial
2  motions, and he hasn't even been sentenced.
3          And then once the appeal is filed, you're
4  looking at, at the bare minimum, on a good day, a
5  year, up to two, two and a half years, before you
6  can even get an opinion.
7          And so I don't think that the, that the
8  Georgia Bar rules anticipated that a respondent
9  would be able to, in the face of a conviction, would
10  be able to delay a decision that long.
11          Especially, again, in these situations
12  where the rules provide that a hearing be held
13  within 30 days.
14          MR. EVANS:  The hearing has been, you
15  know, it's started, I'm just asking the Court to
16  consider continuing it.
17          MS. MOORE:  Sure.
18          MR. EVANS:  And not until the appeal is
19  prosecuted, simply until he does appeal, despite
20  we're not at that stage yet, and now I'm asking for
21  the opportunity to prosecute the posttrial motions,
22  which could eliminate the issue altogether, and we
23  may not need to appeal any longer.
24          And, and so, would a continuance only for
25  that amount of time, and that would be for the

CALHOUN, W. MCCALL on 06/21/2023

Page 13

1  benefit of the existing clients, allow him to try to
2  make an orderly transition to other attorneys, who
3  could, you know, represent them, if the posttrial
4  motions do not achieve the relief sought.
5          This comports with the Bar's doing what it
6  needs to do, but allowing Mr. Calhoun to handle his
7  existing clients appropriately, during this little
8  window of time we have left before the -- a notice
9  of appeal is filed.
10          MS. MOORE:  I'm going to decline the
11  request and, and move forward with the hearing
12  today.
13          MR. EVANS:  Okay.
14          MS. MOORE:  Okay, are we ready to
15  proceed, then?  All right, I guess we can begin with
16  the, it's the State Bar's burden.
17          MS. MITTELMAN:  Yes, Ms. Moore, so I
18  just wanted to verify, Mr. Evans told me there were
19  no witnesses for Mr. Calhoun, but if there will be
20  any witnesses, I want to invoke the rule.
21          MS. MOORE:  Okay.  We will invoke the
22  rule of sequestration.  If there are any witnesses
23  who intend to speak or testify on behalf of Mr.
24  Calhoun, you're required to step outside, until
25  called.

Page 14

1          MR. EVANS:  Your Honor, we don't have
2  any witnesses, except perhaps Mr. Calhoun, and I
3  have a tape that was prepared by the US Department
4  of Justice.
5          MS. MOORE:  Okay.
6          MR. EVANS:  And it shows everything
7  that Mr. Calhoun did during the 20 minutes that he
8  followed the crowd into the Capitol Building on
9  January 6th.
10          MS. MOORE:  Okay.
11          MR. EVANS:  All of his interactions
12  with persons, and there's a thumb drive that
13  contains that evidence, as sent to his attorney in
14  DC, and then to our office.
15          MS. MOORE:  Okay.
16          MR. EVANS:  And we made a copy of it
17  for the Court, and if we think it's relevant, and we
18  have also an affidavit from a paralegal in my
19  office, to attest to how she obtained the material,
20  where it came from.
21          I've shown it to Ms. Mittelman, she's asked
22  for an opportunity to make sure that it's complete
23  and accurate, and contact the Department of Justice,
24  if necessary, to do that, which we don't object to.
25          MS. MOORE:  Okay.

Page 15

1          MR. EVANS:  But we just want the Court
2  to have the benefit of being able to see exactly
3  what Mr. Calhoun did.
4          MS. MOORE:  Okay.
5          MR. EVANS:  Since there's no question
6  about what his conduct was.
7          MS. MOORE:  Okay.  But no witnesses,
8  you have no other witnesses that possibly --
9          MR. EVANS:  Other than, possibly, to
10  authenticate the tape, if that became necessary in
11  the Court's view.
12          MS. MOORE:  Okay.  All right, Ms.
13  Mittelman, you may proceed.
14          MS. MITTELMAN:  All right, a brief
15  opening statement, then, Ms. Moore.
16          This is State Bar Docket Number 7696, in
17  the Matter of McCall Calhoun.  The State Bar
18  petitioned the Supreme Court for the appointment of
19  a Special Master, after US District Court Judge
20  Dabney Friedrich found Mr. Calhoun guilty of one
21  Federal felony, and three Federal misdemeanors,
22  related to his involvement in the January 6th riot
23  at the US Capitol.
24          Bar Rule 4-106 requires the Bar to petition
25  the Court for a show of cause hearing, upon

Page 16

1  receiving the evidence that any member of the
2  Georgia Bar has been convicted of a felony, or
3  certain misdemeanors.
4          According to the Rules of Professional
5  Conduct in the terminology section, which is 1.0(e),
6  you have a copy of that in your notebook, as does
7  Mr. Evans.  Convicted, as used in the rules, means,
8  denotes a verdict of guilty, whether or not a
9  sentence has been imposed, as Mr. Evans told you,
10  and as Mr. Calhoun stood up to tell you, he has not
11  been sentenced yet.  The Bar has jurisdiction, at
12  this point, because of the felony conviction.
13          Rule 8.4(a)(2) provides that it's a
14  violation of the Georgia Rules of Professional
15  Conduct for a lawyer to be convicted of any felony.
16          8.4(a)(3) provides that it's a violation
17  of the rules of professional conduct for a lawyer to be
18  convicted of a misdemeanor, involving moral
19  turpitude, where the underlying conduct relates to
20  the lawyer's fitness to practice law.
21          Because he intends to appeal his
22  conviction, as he stipulated, the Bar, at this time,
23  is only requesting that Mr. Calhoun agree to be
24  suspended, pending the outcome of his appeals,
25  determination of his appeals, the case law describes

CALHOUN, W. MCCALL on 06/21/2023

Page 17

1  that termination is the first level of appeals, up
2  to the United States Supreme Court, so no habeas
3  matters, or any of those things, would extend the,
4  the return to a final hearing in the matter.
5        Because he intends to appeal his
6  conviction, I would direct you to the Stoner case,
7  which is in your notebook that I've provided you.
8  And it says the appearance of a convicted attorney,
9  continuing to practice, does more to disrupt public
10 confidence in the legal profession than any other
11 disciplinary problem.
12       Members of the Bar must maintain a high
13 standard of conduct, if the law is to be respected.
14 The public must be able to respect the individuals
15 who administer it.
16       By failing to swiftly discipline any
17 attorney found guilty of a serious offense, we
18 necessarily impair the public confidence in the law,
19 and this Court's willingness to enforce the law
20 evenhandedly.  So, for this reason, we're asking for
21 Mr. Calhoun's suspension, pending appeal.
22       I'll introduce the evidence, but would like
23 to ask if Mr. Evans has any further opening remarks.
24       MS. MOORE:  Okay, thank you, Ms.
25 Mittelman.  Mr. Evans, do you have an opening

Page 18

1  statement?
2        MR. EVANS:  Your Honor, all we have is
3  Mr. Calhoun.  I'll reserve, however, let the State,
4  let the State Bar proceed.
5        MS. MOORE:  Okay.
6        MS. MITTELMAN:  So, at this time, the
7  State Bar moves for the admission of Exhibit 1,
8  which is a certified copy of the indictment, it is
9  behind tab two in your notebook.
10       State Bar moves for the admission of
11 Exhibit 1.
12       MR. EVANS:  No objections, Your Honor.
13       MS. MOORE:  Okay, it's admitted, thank
14 you.
15 (STATE BAR EXHIBIT 1 was admitted into evidence.)
16       MS. MITTELMAN:  The State Bar moves for
17 the admission of State Bar Exhibit 2, which is the
18 verdict of guilty from Judge Dabney Friedrich,
19 entered on March 20th, 2023.
20       MS. MOORE:  Mr. Evans?
21       MR. EVANS:  We object to that, as
22 genuine.
23       MS. MOORE:  Okay, on what basis?
24       MR. EVANS:  Well, we don't, we don't
25 dispute the accuracy of the judgment, we object to

Page 19

1  its characterization by the State Bar as a verdict.
2  It's not a verdict, it's a judgment of the Court.
3        MS. MOORE:  Okay, and what, what is
4  your, what is your distinction?  How are you
5  distinct -- how are you saying that a verdict is
6  different from a judgment?
7        MR. EVANS:  A verdict is done by a
8  jury.
9        MS. MOORE:  Okay, this was a bench --
10       MR. EVANS:  And this matter did not
11 involve a jury.
12       MS. MOORE:  Okay.  But this was a bench
13 trial?
14       MR. EVANS:  It was a bench trial.
15       MS. MOORE:  Okay.  But, Mr. Calhoun, he
16 would have been entitled to a jury trial, and my
17 conclusion is that he opted for a bench trial.
18       MR. EVANS:  I'm objecting to her
19 characterization -- to the State Bar's
20 characterizations of the document as a verdict, it's
21 not a verdict.
22       MS. MOORE:  All right.
23       MS. MITTELMAN:  I have no objection to
24 calling it a judgment of guilt, issued by Judge
25 Dabney Friedrich, in the matter of the United States

Page 20

1  versus William Calhoun.  It's a certified copy of
2  the, the Court document, and admissible for that
3  reason.
4        MS. MOORE:  Okay.  I will admit it on
5  the basis that it is a certified copy, reflecting
6  the judgment of Judge Dabney Friedrich in this case.
7  So I'll admit it on that basis.
8  (STATE BAR EXHIBIT 2 was admitted into evidence.)
9        MS. MITTELMAN:  And with the
10 stipulation that Mr. Calhoun intends to appeal his
11 conviction, at this point the State Bar rests.
12       And Mr. Calhoun is obligated to show cause
13 why he shouldn't be suspended, pending the outcome
14 of the appeal.
15       MS. MOORE:  Okay.  Upon the State Bar
16 resting, upon tendering Exhibits 1 and 2, Mr. Evans,
17 I'll hear from you on behalf of Mr. Calhoun.
18       MR. EVANS:  Your Honor, Mr. Calhoun
19 is -- there's been a petition filed by the State
20 Bar, a new petition, the only grounds stated for
21 his, suspension of his law license is Rule 8.4, and
22 the sole grounds cited in the petition is that Mr.
23 Calhoun was convicted of a felony.
24       Under the, under the, under Rule 8.4,
25 Subsection B, for purposes of this rule, conviction

CALHOUN, W. MCCALL on 06/21/2023

Page 21

1   shall have a meaning set forth in 1.0(e), okay?
2           MS. MOORE:  Okay.
3           MR. EVANS:  And if the Court would
4   examine one point -- Rule 1.0(e), it says conviction
5   or convicted denotes any of the following, accepted
6   by a court:  Whether or not a sentence has been
7   imposed; a guilty plea; a plea of nolo contendere; a
8   verdict of guilty; a verdict of guilty, but mentally
9   ill, or, lastly, a plea entered under the Georgia
10  First Offender, or some -- or a similar statute in
11  Georgia, or another jurisdiction.
12          Georgia law is, is -- well, let me back up.
13  These are the rules, Bar rules, and they are
14  punishment, and we're in the disciplinary section of
15  the Bar rules.
16          And, and the Court has made clear, in case
17  after case, that these Bar rules are to be strictly
18  interpreted in favor of the accused, and, and in
19  normal language, and all the rules of statutory
20  construction that apply in criminal laws, apply to
21  this section of the Bar rules.
22          We have to assume that the Bar rules
23  mean -- say what they man, and mean what they say,
24  and we're limited by the, by the terms of those
25  rules.

Page 22

1           There is nothing in the five -- a bench
2   trial does not involve a verdict.  And so we don't
3   have a guilty plea, he didn't plead guilty, he
4   didn't plead nolo --
5           MS. MOORE:  Let me ask you --
6           MR. EVANS:  -- he did not --
7           MS. MOORE:  Let me --
8           MR. EVANS:  -- there was no jury, so
9   there was no verdict of guilty.
10          MS. MOORE:  Mr. Evans, let me interrupt
11  you for just a second.  Two things, first of all, do
12  you have a copy of the rule that you've cited to?
13          MR. EVANS:  Uh-huh.
14          MS. MOORE:  Secondly, is this your
15  closing argument, or --
16          MR. EVANS:  Well, I move, I move to
17  dismiss the proceeding.  They don't have evidence of
18  a conviction.
19          MS. MOORE:  Thank you.
20          MR. EVAN:  I mentioned the rules of
21  statutory interpretation, because they are relevant
22  here, because Georgia law is real clear about the
23  meaning of the term verdict.  And you don't have a
24  verdict without a jury.
25          I cite from Woodham versus State, this is a

Page 23

1   2001 case, it is 235 Ga. App. 112 [sic].  Headnote
2   one:  The trial court could not have directed a
3   verdict of acquittal, because there is no verdict in
4   a bench trial.  That's Georgia law.
5           Poole versus State, in 2001, trial court
6   could not have directed verdict of acquittal after
7   defendant was convicted following a bench trial, two
8   counts of driving under the influence.
9           Even if defendant had made a motion for a
10  directed verdict, following the conviction at
11  mistrial, such a motion would have had no meaning
12  when the case was tried without a jury.
13          Jones versus State, as a preliminary
14  matter -- which is a 1997 case, 226 Ga. App., I have
15  copies for the Court, of all of these cases.
16          As a preliminary matter, we note that the
17  trial court could not have directed a verdict of
18  acquittal, because there is no verdict in a bench
19  trial.
20          I have copies of these cases for the Court.
21  I have copies for you, too --
22          MS. MOORE:  Thank you.
23          MR. EVANS:  -- each of those cases.
24  Our Bar rules define conviction as either an
25  admission of guilt, or a finding of guilt by a jury.

Page 24

1   That's why they use the term verdict, that's what
2   juries do, and courts cannot do.
3           The meaning of the word verdict is very
4   clear under Georgia law, and we are talking about
5   the Georgia Rules of Professional Conduct.
6           We didn't draft them, and we don't know why
7   they left out a bench trial, although it certainly
8   existed when the rules were adopted.
9           They could have easily stated, and
10  included, in their definition of conviction the
11  result of a bench trial, but chose not to.
12          And so the canon of statutory construction,
13  that if a, and I cite the Court here to Carothers,
14  which is a Supreme Court decision, from just this
15  year, interpreting the Georgia Bar rules.
16          And under Carothers, if we -- in
17  considering the, the meaning of Bar admission rules
18  we must afford the text its "plain and ordinary
19  meaning", view it "in the context in which it
20  appears", and interpret it and read it "in its most
21  natural and reasonable way, as an ordinary speaker
22  of the English language would".
23          This is --
24          MS. MOORE:  You're saying Carothers is
25  a 2023 case?

CALHOUN, W. MCCALL on 06/21/2023

1    MR. EVANS:  2021 case.
2    MS. MOORE:  Okay.
3    MR. EVANS:  And, as a, a standard tenet
4 of statutory construction is also that if -- the
5 inclusion of several specific things in a statute,
6 without including the, a, a related thing, the
7 inclusion of the first things, and the exclusion of
8 the other, means that that was probably intended.
9    MS. MOORE:  Well, let me ask you, so
10 since you've cited to Carothers, does Carothers
11 involve a question, is it, does Carothers involve a
12 conviction after a bench trial?
13    MR. EVANS:  No.
14    MS. MOORE:  What does Carothers
15 involve?
16    MR. EVANS:  Involves a -- Bar admission
17 standards, but it's, it's simply a decision that
18 talks about how to interpret the Bar rules, and
19 that's its relevance here.
20    MS. MOORE:  Okay.  But does it
21 specifically talk about how to interpret conviction,
22 is that discussed in Carothers, how to interpret
23 conviction?
24    MR. EVANS:  It doesn't discuss felony
25 convictions, that was not with issue in it.  But the

1 Bar rules were an issue.
2    MS. MOORE:  Okay.
3    MR. EVANS:  And how to interpret the
4 Bar rules --
5    MS. MOORE:  Okay, I follow you.
6    MR. EVANS:  -- is what it discusses.
7    MS. MOORE:  All right.
8    MR. EVANS:  And here, you know, at Rule
9 1.1(e) [sic] expressly mentions pleas and verdicts,
10 but it does not expressly mention a judgment of
11 guilt following a bench trial.
12    The efforts are, therefore, stronger that
13 such judgments were not intended to fall under the
14 definition of conviction, and, too, issue for the
15 verdict includes a judgment of guilt following a
16 bench trial.
17    But, as in Carothers, you can look to the
18 normal Heritage Dictionary, and if you look it up,
19 look up the word verdict, it says, in the American
20 Heritage Dictionary, the English language, a verdict
21 is the decision of the jury, after the trial of a
22 case.
23    MS. MOORE:  Okay, so just, just so I'm
24 clear, Mr. Evans, you are, at this point, moving to
25 dismiss the State Bar's petition, is that --

1    MR. EVANS:  That's correct.
2    MS. MOORE:  -- that's where we are,
3 okay.  So, as I read Rule 4-106, it says upon
4 receipt of information or evidence that a conviction
5 for any felony has been entered, so is not a
6 judgment a conviction?
7    MR. EVANS:  Well, it's, were it not for
8 (b)(1), 8.4(b)(1), do you have a copy of that,
9 Judge -- Mrs. Moore?
10    MS. MOORE:  Thank you.
11    MR. EVANS:  Very clear what a
12 conviction means, from the Bar rules.  And it says
13 the purpose of this rule, conviction shall have a
14 meaning set forth in Rule 1.0(e).
15    MS. MOORE:  Okay.  Ms. Mittelman,
16 what's the State Bar's position, or response?
17    MS. MITTELMAN:  This is a, this is a
18 conviction, and 8.4 says it is a violation of the
19 Georgia rules to be convicted of any felony.
20    In the, I, in the terminology section, it's
21 not exclusive, it says it denotes any of the
22 following, but doesn't say only the following, it
23 can't possibly be the case that a judge's decision,
24 in a bench trial, is unworthy of the outcome that
25 the disciplinary rule expects.

1    At this particular time, there's no
2 question that Mr. Calhoun has been convicted of a
3 felony in a bench trial.
4    And I believe the Court should follow the
5 direction in Stoner and the following, in the
6 ensuing cases.
7    MS. MOORE:  Okay.  So, Mr. Evans, I'm
8 going to deny your motion to dismiss --
9    MR. EVANS:  On what grounds, Your
10 Honor?
11    MS. MOORE:  Mr. Evans, I agree, I mean
12 the plain language says upon a conviction.  And I
13 believe that if the Supreme Court did not intend for
14 a judge's judgment of guilty to apply, then they
15 can, they can say that.
16    MR. EVANS:  Well --
17    MS. MOORE:  They can review, they can
18 review, you know, they can review their cases, and,
19 and specifically say that, but I, at this point I
20 don't think that that alone is enough to, to dismiss
21 this case.  I mean, the rule clearly says upon
22 conviction.
23    MR. EVANS:  But it's by a conviction,
24 Your Honor, and it's very specific, and it lists
25 five specific things that constitute a conviction

CALHOUN, W. MCCALL on 06/21/2023

Page 29

1  for purposes of the Bar rules.  And a bench trial
2  result is not included among them.
3          The -- they, you can't add that, it
4  probably needs to be added.  If they thought about
5  it, they may want to add it.  But it's too late to
6  add it for this case.
7          And we don't have a conviction here, and so
8  we're not dealing anymore with conviction of a
9  felony.  We're dealing with a judgment of a felony,
10 which our Bar rules don't speak to.
11         So we should be done here.
12         MS. MOORE:  Okay, I'm going to deny the
13 motion.
14         MR. EVANS:  Next, Your Honor, we move
15 to dismiss, because the conduct that Mr. Calhoun is
16 accused of committing is also made illegal under
17 the, under the Georgia Code, specifically in
18 O.C.G.A. § 16-11-34.1, entitled Disruption of the
19 Senate or House of Representatives.  I've got a copy
20 of it for you.
21         MS. MITTELMAN:  Could I have a copy, as
22 well?
23         MR. EVANS:  Uh-huh.
24         MS. MITTELMAN:  Thank you.
25         MS. MOORE:  Thank you.

Page 30

1          MR. EVANS:  If you, the Court will look
2  at the indictment, and compare it to O.C.G.A. §
3  16-11-34.1, you will see that the same conduct is
4  included in both.
5          Now, what Mr. Calhoun is accused of doing
6  is interfering with an official proceeding of the
7  House of Representatives to, I guess, complete the
8  election of the presidency, as they were doing on
9  January 6th.
10         Now, the actual facts of the case would
11 reveal that Mr. Calhoun's entry into the Capitol was
12 long after Congress had stopped doing whatever it
13 was doing.
14         But I know the Court's not concerned about
15 the -- about whether the judge in DC got the case
16 wrong, and we're not here to relitigate that matter
17 before this Court.
18         But we are here to defend his Bar license,
19 and he's entitled to keep his Bar license unless
20 he's clearly in violation of the State Bar rules.
21         Now, we've already hit on the fact that
22 he's not been convicted, as that word, as that term
23 is defined under State Bar rules.
24         But what I'm, what I'm pointing out now is
25 that the conduct at issue, Bar rules punish conduct,

Page 31

1  not the interpretation of that conduct put on it by
2  someone else.
3          DC, and the folks in DC, can call what
4  McCall did, in walking through the Capitol Building,
5  between the ropes, where the public is generally
6  admitted, on every other day, and in leaving 20
7  minutes later, without speaking to anyone,
8  interfering with the, interfering with anyone,
9  didn't touch anything.
10         We've got a tape that shows everything he
11 did when he was in the Capitol Building.  They can
12 call that a felony.  But, in Georgia, we have
13 standards, and McCall Calhoun's conduct was not
14 felonious.
15         It is a violation of this Statute, but this
16 is a misdemeanor.  So the conduct that they call a
17 felony is, in Georgia, a misdemeanor.
18         MS. MOORE:  Yes, but, but I, I, for
19 purposes of this hearing, I think we are, our only,
20 the only question is whether or not he was a
21 convicted of a felony, in whatever jurisdiction, I
22 don't think that --
23         MR. EVANS:  It's not a felony.
24         MS. MOORE:  I think, I think you would
25 apply the standards in the jurisdiction where he

Page 32

1  committed the offense, I don't --
2          MR. EVANS:  You don't substitute your,
3  your judgement someone else for his conduct.
4          MS. MOORE:  How is it that -- how is it
5  that we take a felony, committed in some other
6  State, and then try to compare it with the laws of
7  this State, and say because it was, it wasn't even
8  committed in Georgia, so why are we applying Georgia
9  law?
10         MR. EVANS:  Because he's a Georgia
11 lawyer, and we, the Georgia Rules of Professional
12 Conduct -- if Mr. Calhoun had gone to Pakistan and
13 eaten pork, they call that a felony.  We don't
14 consider it a felony.
15         But if they, if the State Bar was here with
16 a conviction out of Pakistan, for eating pork, would
17 you make the same statement?
18         They can call it a felony if they want to.
19 The same conduct is already made illegal in Georgia,
20 but it's a misdemeanor.
21         MS. MOORE:  He's -- my understanding is
22 he is, he was tried and convicted for felonies, for
23 offenses occurring in another jurisdiction, and,
24 therefore, he is judged by that, the standards and
25 the laws of that jurisdiction.  And if those laws

CALHOUN, W. MCCALL on 06/21/2023

Page 33

1  say his conduct amounted to a felony or a
2  misdemeanor, that we are bound by that.
3      We can't take those facts and then turn
4  around and apply Georgia law on the substantive
5  offenses.  I'm not talking about the Georgia Bar
6  rules, which is what we're here for today.
7      So any argument that his conduct in DC,
8  criminal conduct in DC doesn't meet criminal conduct
9  standards of Georgia, I'm not persuaded, because I'm
10 not -- that's not the standard.
11     The only issue is whether or not his
12 conviction is a felony conviction, regardless of
13 what State it occurred in.  He's not alleged to have
14 committed that criminal offense in Georgia.
15     So I don't see any reason why we're
16 applying Georgia law to the, to the underlying
17 offenses.
18         MR. EVANS:  Ms. Moore, because of the,
19 what the rules speak to are unprofessional conduct.
20 And, and the --
21         MS. MOORE:  In addition to convictions,
22 criminal convictions, unprofessional conduct and
23 convictions.
24         MR. EVANS:  I admit that it's an issue
25 of first impression under Georgia law.

Page 34

1         MS. MOORE:  This is an issue of first
2  impression?
3         MR. EVANS:  When, when there is -- our
4  Bar rules speak to when there is more than one
5  jurisdictional law at issue, and it guides a, an
6  attorney's behavior, it's in the conduct of laws
7  section.
8      And, oftentimes, a lawyer, particularly a
9  lawyer who practices in more than one State, can
10 find himself in a position where the Bar rules, the
11 Rules of Professional Conduct, of one State, point
12 in a different direction than the professional rules
13 of conduct for Georgia.
14     And it's no different.  And, in fact, in
15 New York and several other jurisdictions they'd
16 apply the same model rules as Georgia does.
17     The fact that the conduct at issue is a
18 felony in another State, but not in New York,
19 precludes punishment.
20     And I think, given the fact that we're
21 using the same rules that New York does, and the
22 conduct at issue in, if we, if we take the, the
23 judge's ruling in DC as authoritative for the
24 moment, all he's alleged to have done is to
25 interfered with an ongoing Congressional hearing,

Page 35

1  that's made illegal in Georgia, but it's a
2  misdemeanor.  Same conduct, same exact conduct.
3      And we move to admit, as we keep talking
4  about conduct, I move to admit a tape that was made
5  by the US Government, and tendered in the
6  prosecution of Mr. Calhoun in DC, of all of his
7  activities in the Capitol Building, every single
8  one.
9      You can see him enter, you can see him walk
10 up the stairs.  You can see him wait to allow people
11 to pass, and he walks by Nancy Pelosi's office, not
12 in it, just staying between the ropes.  And then
13 you'll see him walk on out.
14     As far as Mr. Calhoun was concerned, if it
15 was, if, if -- he was, he was, he was participating
16 in a political protest over an election that he, and
17 many others, felt had been stolen.  And all he did
18 was walk along like everybody else did.
19     It's interesting, his co-defendant in this
20 case, Mr. Nalley, rode with, rode with --
21         MS. MITTELMAN:  Your Honor, I object to
22 the testimony.  If he wants to offer the evidence,
23 I'll respond to his request to admit it.
24         MS. MOORE:  Okay.  So, again, Mr.
25 Evans, just step by step.  With respect to your

Page 36

1  motion to dismiss the petition on the grounds that
2  the offense that he was convicted of in DC is a
3  misdemeanor in Georgia, I'm going to deny that --
4  well, before I do that, let me give the State Bar an
5  opportunity.  Do you have a response to that?
6         MS. MITTELMAN:  None other than you've
7  expressed, Your Honor.
8         MS. MOORE:  Okay, I'm going to deny
9  that motion.
10     Are there any more motions, before we move
11 into the defense, the Respondent's proof?  Any more
12 motions?
13         MR. EVANS:  No, Your Honor.
14         MS. MOORE:  Okay.  Okay, so, Mr. Evans,
15 you have, you've mentioned, I guess, wanting to
16 admit or tender some evidence, a recording of the
17 events of that day.  And upon your moving to admit
18 that, what's the State Bar's response?
19         MS. MITTELMAN:  Your Honor, I question
20 the relevance, given the fact that the -- we have a
21 limited purpose here today, related to the
22 conviction and appropriate suspension, pending the
23 outcome of the appeals.
24     But I have not seen the contents of the
25 flash drive, so aside from your ruling related to

CALHOUN, W. MCCALL on 06/21/2023

Page 37

1  relevance, which I do question what relevance this
2  would have, I would like the opportunity to look at
3  it, and, if you admit it, so that I can raise
4  appropriate objections, related to contents.
5        And Mr. Evans has told me that his
6  secretary downloaded the contents, or got the
7  contents from the US Attorney, so I would need to
8  verify that with them, but, subject to your ruling
9  on relevance.
10       MS. MOORE:  Mr. Evans, how long is it,
11  how long is the recording?
12       MR. EVANS:  About 20 minutes.
13       MS. MOORE:  So --
14       MR. EVANS:  I'd ask to play it now.
15       MS. MOORE:  So I do, I do question its
16  relevance.  However, in, in an effort to, to give
17  Mr. Calhoun as complete a hearing as possible, or to
18  give him the opportunity, I would, I would consider
19  reviewing it with, though, the State Bar having the
20  opportunity to review it.
21       If it's 20 minutes, and it takes her about
22  20 minutes to review, that would give me the
23  opportunity to peruse some of the cases that the
24  State Bar has submitted.
25       So we can, we can -- that's how I'd like to

Page 38

1  handle that.  I will, that will give her the
2  opportunity to review, I can review the cases, and
3  then after she's reviewed that, I'll entertain any
4  objections, any additional objections.
5        MR. EVANS:  Okay.
6        MS. MOORE:  Let's, I guess, be in
7  recess for 20 minutes?
8        MR. EVANS:  Okay.
9        MS. MOORE:  Or sooner, if --
10       MS. MITTELMAN:  Your Honor, I also --
11       MS. MOORE:  Hold on, just one second.
12  Go ahead, Ms. Mittelman, I'm sorry.
13       MS. MITTELMAN:  I also would like the
14  opportunity to verify its origin, so I would need an
15  opportunity to call the US Attorney's office to
16  check.  I guess Mr. Evans' secretary got it from a
17  particular US Attorney, so we need to check with
18  them.
19       MS. MOORE:  Okay, that's fine, yes.
20  (An off-the-record discussion was had at this time.)
21       MS. MOORE:  So, again, I'll be in
22  recess, allow you two to confer on review on that,
23  and, again, after recess, I'll certainly hear from
24  Ms. Mittelman, if she is able to reach someone, or
25  not, I'm not saying at this point in time that I'm

Page 39

1  going to review it.
2        I'm going to give her the opportunity, and
3  then we can come back and hear any objections, if
4  any.
5        MR. EVANS:  Thank you.
6        (After a brief recess, the deposition
7        resumed with the same appearances.)
8        MS. MOORE:  Okay, we, after a, looks
9  like about a 30 minute recess, we are back on the
10  record.
11       And I guess my first question is the status
12  of the parties' attempts to review the evidence, and
13  maybe come to an agreement, or not, as to, as to the
14  relevance and admissibility of a recording.
15       MS. MITTELMAN:  So, Your Honor, the
16  State Bar looked at the video on the thumb drive, it
17  was two minutes and 21 seconds.
18       I notified Mr. Evans that it was not a 20
19  minute video.  He spent the remainder of the time
20  going to his car looking for a different thumb
21  drive.
22       At this point, and I don't know how the two
23  minute and 21 second video was created, and haven't
24  been able to get a clear answer on exactly where
25  it -- what it is, it appears to be a montage video

Page 40

1  of Mr. Calhoun's presence in the Capitol on January
2  6th.
3        I still question its relevance, but if Your
4  Honor wants to take that two minute and 21 second
5  video for what it's worth, I have no objection.
6        MS. MOORE:  Okay, with no objection
7  from the State Bar, I'll consider it.
8        MR. EVANS:  All right.
9        MS. MITTELMAN:  Mr. Evans, you'll need
10  to give the court reporter a copy of the video to
11  attach to the official transcript.
12       Is that the only copy you have?
13       MR. EVANS:  This one is, but I can make
14  as many copies as we want to.  I'll go back to my
15  car.
16       MS. MOORE:  I, well, let me ask
17  something basic, how are you are you going to play
18  it?  I do not have a laptop.  I don't have any -- I
19  didn't bring a laptop, so I don't have a means of
20  playing it.
21       MR. EVANS:  If there is not a means of
22  playing it in the courtroom, I can go get my
23  computer.
24       MS. MOORE:  Okay, do you have a laptop?
25       MR. EVANS:  Uh-huh.

CALHOUN, W. MCCALL on 06/21/2023

1     MS. MOORE:  Okay, we'll take a -- Mr.
2  Evans?  Mr. Evans, what, we'll take a five minute
3  break, I'll let you go get your laptop so we can
4  review it.
5     MR. EVANS:  I'll be right back.
6     MS. MOORE:  Okay.
7     (After a brief recess, the deposition
8         resumed with the same appearances.)
9     MS. MOORE:  Mr. Evans, where are we, as
10  far as the video?
11     MR. EVANS:  You know, it is, there's a
12  longer montage, but it does not apply, appear to
13  apply directly to Mr. Calhoun.
14     Ms. Moore, I would ask to admit the, the
15  entire Federal docket, actually, and the
16  transcripts, and all, the proceedings from the
17  District Court.
18     I didn't bring physical copies because they
19  are all available on Pacer, and we don't intend to
20  argue specifically from them today.  However, we
21  want them to be part of the record, because we
22  expect that the matter will be heard at a later
23  date.
24     MS. MOORE:  I, I don't see how
25  admitting the entire docket is relevant to this

1  proceeding.
2     The issue, again, the issue, in my mind, is
3  simply whether or not there is a felony conviction,
4  or misdemeanor convictions, involving moral
5  turpitude, that's it.  And I don't --
6     MR. EVANS:  We don't need to worry
7  about those misdemeanors, because it's not part of
8  the case.
9     MS. MOORE:  Okay, well, no, I think
10  they are.
11     MS. MITTELMAN:  They certainly are part
12  of the petition, Ms. Moore.
13     MS. MOORE:  Okay.
14     MR. EVANS:  Well, you've not specified
15  in what regard they -- any of them pertaining to
16  moral turpitude, which means that it's only
17  partially an issue.
18     MS. MOORE:  Well, again, and remember,
19  the reason we're here today is for, for a
20  suspension, reported recommendation as to a
21  suspension, and they are, they, they accompany a
22  felony.
23     So, at the very minimum, you have the
24  felony.  If, for some reason, pending appeal,
25  something different happens with the felony, then I

1  guess, you know, you all could come back and
2  consider the misdemeanor, or litigate whether or not
3  the misdemeanors rise to the level of moral
4  turpitude.
5     But, I, I just don't see the relevance of
6  admitting the entire record.  Again, I'm not here to
7  relitigate the underlying facts and circumstances
8  that led to the convictions.
9     MR. EVANS:  Well, I'd like to play the
10  two minute tape, which is a condensed version of Mr.
11  Calhoun's activities as part of the record.
12     MS. MOORE:  Okay, and that's the same
13  two minute tape --
14     MR. EVANS:  Yes.
15     MS. MOORE:  -- that you've listened to,
16  Ms. Mittelman?
17     MS. MITTELMAN:  I believe so, if it is,
18  if it's on your computer, based on the thumb drive,
19  two minutes, 21 minute -- 21 seconds, is fine with
20  me.
21     MS. MOORE:  Okay, it's admitted, and
22  I'd like to look at it.  And I'll note for the
23  record, it was without objection from the State Bar.
24  (RESPONDENT'S EXHIBIT 1 was admitted into evidence.)
25     (The Special Master reviews the video.)

1  (An off-the-record discussion was had at this time.)
2     MR. EVANS:  Some people are shouting,
3  not Mr. Calhoun.  Now he's trying to leave.
4     MS. MOORE:  Okay.  All right, for the
5  record, I have reviewed the two, two minute, two
6  minute and 15 second video tendered by the
7  Respondent.
8     MR. EVANS:  And it's on this tape.
9     MS. MOORE:  Okay.
10     MR. EVANS:  I'll give it to the court
11  reporter.
12     MS. MOORE:  Okay, thank you.  All
13  right, Mr. Evans, do you have any other evidence?
14     MR. EVANS:  We'd ask the Court to
15  include the transcripts from the Federal proceedings
16  in the record.
17     MS. MOORE:  I --
18     MR. EVANS:  And they're useful, and
19  they are useful in that, that the, we're talking --
20  the Federal judge was very interested in why Mr.
21  Calhoun was being charged with a felony.
22     And the person, his co-defendant, who was
23  right beside him the whole time, they rode from
24  Americus together, stayed in a hotel room together,
25  went to the Capitol together, and they left and

CALHOUN, W. MCCALL on 06/21/2023

Page 45

1  drove back together.  Their conduct was exactly the
2  same.
3          Why is it that Mr. Calhoun was charged with
4  a felony, and the co-defendant was only charged with
5  a misdemeanor?  The judge had a hard time with that.
6  And I think that that is significant for the Supreme
7  Court's review of this matter.
8          Because Mr. Calhoun felt that he was
9  engaged in a political protest that was protected
10 under the First Amendment.  This is a protected
11 speech.
12         Mr. Calhoun had no notice that his
13 activities, which were no different than the
14 co-defendant, who was charged with a misdemeanor,
15 how his activities could be elevated to a felony,
16 and would have had no expectation, while committing
17 those acts, that his were, were considered a felony,
18 whereas the person beside him was only a
19 misdemeanor.
20         And that's just a prosecutorial decision,
21 but the conduct is the same.  And what we want the
22 Supreme Court to be able to understand is exactly
23 what his conduct was.
24         I think they'll also be interested in how
25 the Federal judge responded to the lack of any

Page 46

1  overt -- we could both admit, from what we've seen
2  on the short two and a half minute video, that Mr.
3  Calhoun did not raise his voice, didn't appear to
4  speak to anyone.
5          He was making photographs, and walking
6  along, not to the front of any crowd, following --
7  every door he entered was open.  Other people were
8  going through them, every door that he exited
9  through was open.  Other people were walking through
10 that, as well.
11         At no point would Mr. Calhoun have
12 recognized that his conduct was anything that would
13 ever impair his ability to practice law in Georgia.
14         And the Supreme Court needs to be made
15 aware of that.  And it's going to relate to the
16 arguments that I'll be making in a moment.
17         MS. MOORE:  What, what's the Bar's
18 position?
19         MS. MITTELMAN:  Ms. Moore, this sounds
20 like arguments related to the appeal of the criminal
21 case, and they don't have any place here.
22         There's a conviction in place.  The Federal
23 judge found that, after hearing evidence, that Mr.
24 Calhoun had engaged in a felony, in -- by corruptly
25 obstructing, influencing and impeding an official

Page 47

1  proceeding, that is a proceeding before Congress,
2  specifically Congress's certification of the
3  electoral college vote, as set out in the 12th
4  Amendment of the Constitution of the United States,
5  in 3 U.S.C. § 15-18, in violation of 18 U.S.C.
6  1512(c) and 2.
7          She listened to the evidence, she made the
8  finding, there's a conviction in place.  Mr. Evans'
9  arguments are more appropriate for the appeal of the
10 criminal case.  So I see no reason to include the
11 entire transcript of the criminal trial.
12         MS. MOORE:  Thank you.  Mr. Evans, I
13 tend to agree.  I think the only thing the
14 transcript would assert is -- the only purpose of
15 the underlying transcript, again, is to relitigate
16 those issues.
17         MR. EVANS:  No, no.
18         MS. MOORE:  There is a process, there
19 is a process by which, you know, which is his
20 opinion, by which he can certainly relitigate those
21 issues.
22         But for the purposes of this proceeding,
23 again, I think the only issue is whether or not it's
24 a conviction.
25         MR. EVANS:  No, Your Honor, if I could,

Page 48

1  if I may?
2          MS. MOORE:  Sure.
3          MR. EVANS:  The, under Rule 8.4,
4  misconduct, there are comments to the rule.  And
5  in -- first of all, it's a matter of law, and the
6  Supreme Court has ruled that the State Bar rules
7  must be interpreted in light of the primary purpose
8  of disciplinary proceedings, which is to protect the
9  public from attorneys who are not qualified to
10 practice law, due to incompetence, or unprofessional
11 conduct.  And that's in the matter of Allison, which
12 is 267 Ga. 638.
13         Comments to Rule 8.4 confirm that the rule
14 concerns only crimes which fall both, under both the
15 rubric of moral turpitude, and involve conduct
16 relating to the fitness of the lawyer to practice
17 law.  That's conduct number 2.
18         The rule is concerned with addressing those
19 crimes that indicate lack of those characteristics
20 relevant to law practice.
21         It begs the question of why the rules
22 specify that moral turpitude, and not the underlying
23 conduct connected to the practice of law, is
24 required for misdemeanors, but not for felonies.
25         I think that the Court should, I think

CALHOUN, W. MCCALL on 06/21/2023

Page 49

1  this -- you should interpret the rule of -- even
2  regard to felony, to either require some degree of
3  moral turpitude, or which indicate, in some way,
4  that the activity, the conduct at issue, bears on
5  the fitness of the respondent to practice law.
6        Now, Mr. Calhoun's participation as a
7  private individual, he was not appearing in a court,
8  he was not representing any other person, other than
9  himself, and he participated in a political protest
10 concerning the 2020 election, and, and got caught up
11 in whatever was going on, on January 6th, at the
12 Capitol.
13       But he walked through open doors, following
14 a crowd that had been in there for some time, and
15 had no notice that he was committing a felony at the
16 time he was acting.
17       Nor does the conduct, that is at issue in
18 the felony count, have anything to do with moral
19 turpitude, he's exercising his First Amendment
20 rights.  He didn't do anything to -- he didn't even
21 enter one of the chambers where any of the activity
22 could have been taking place.  He was always in the
23 hallway.
24       Nor does anything that we saw of, or that
25 is alleged in the indictment leading to the felony

Page 50

1  conviction, involve his fitness to practice law.
2  Nothing about what we saw on the tape made him any
3  less a lawyer than, than I, or anyone else in the,
4  any lawyer in this room
5        MS. MOORE:  Again, Mr. Evans, you keep
6  going back to his underlying conduct, and,
7  basically, what you're arguing is that his, his --
8  the conduct underlying his conviction is not enough
9  for him to face public discipline.
10       But I would, I would go back to, and rely
11 on, at least one of the cases that the State Bar has
12 submitted, the Stoner case.  Even the appearance of
13 a convicted attorney continuing to practice does
14 more to disrupt public confidence.  That's where we
15 are today.
16       MR. EVANS:  No, public --
17       MS. MOORE:  The public doesn't, the
18 public knows that he's a convicted felon.  The
19 public doesn't know that his conduct underlying the
20 conviction, you know, is not enough to, to bear on
21 his fitness to practice law.  The public doesn't
22 know that.
23       MR. EVANS:  Well, the rule says it
24 must, because, I mean, comment number two says here,
25 concern is limited to those matters which fall under

Page 51

1  both the rubric of moral turpitude, and involve
2  underlying conduct.  That's what the rule says,
3  ma'am.
4        MS. MOORE:  Sure, so --
5        MR. EVANS:  That -- relating to the
6  fitness of the lawyer to practice law.
7        MS. MOORE:  Your, your arguments are
8  noted, and are recorded in the record.  And whatever
9  the decision, as far as the reported recommendation
10 that I issue today, and you realize that I don't
11 make the decision as to whether or not he should be
12 suspended pending appeal.  I make a recorded
13 recommendation to the Supreme Court.
14       The Supreme Court is certainly free to
15 disagree with whatever I argue, or whatever is in my
16 reported recommendation.  They are free to agree or
17 disagree to any objections, or exceptions you might
18 have to a report and recommendation.
19       And, but, at this time, as far as where we
20 are today, I just don't see how a full transcript
21 from Mr. Calhoun's trial is relevant to this
22 determination today.  So I'm going to overrule --
23       MR. EVANS:  On that basis?
24       MS. MOORE:  Yes.
25       MR. EVANS:  I have one additional

Page 52

1  argument.
2        MS. MOORE:  Sure.
3        MR. EVANS:  Under comment five, to Rule
4  8.4 --
5        MS. MOORE:  Are we still under -- we're
6  under Rule 8.4?
7        MR. EVANS:  Uh-huh.
8        MS. MOORE:  Okay, comment five, go
9  ahead.
10       MR. EVANS:  A lawyer may refuse to
11 comply with an obligation imposed, by law, upon a
12 good faith belief that no valid obligation exists.
13       Mr. Calhoun's reasons for being there, and
14 reasons for participating, are relevant to a
15 violation of Rule 8.4, whether or not it's called a
16 felony.
17       Because under the comment number five, a
18 lawyer is entitled to refuse to comply with an
19 obligation imposed by law, where he has a good faith
20 belief that no valid obligation exists.
21       MS. MOORE:  Okay.  I appreciate your
22 argument, but I'm going to deny on that basis, as
23 well.  Do you have any additional evidence?
24       MR. EVANS:  One moment, please.
25       MS. MOORE:  Sure.

CALHOUN, W. MCCALL on 06/21/2023

Page 53

1    MR. EVANS:  Call McCall Calhoun.
2    MS. MOORE:  Okay.
3         W. McCALL CALHOUN, JR.
4  was called as a witness, and having first been duly
5  sworn, was examined and testified as follows:
6              DIRECT EXAMINATION
7  BY MR. EVANS:
8    Q.  Please be seated.  Can you state your name
9  for the record?
10   A.  William McCall Calhoun, Jr.
11   Q.  And, Mr. Calhoun, were you present on
12 January 6th at the US Capitol?
13   A.  Yes, I was.
14   Q.  Why were you there?
15   A.  To protest the January 6th -- I mean,
16 excuse me, the 2020 election, and the problems that
17 it had.
18   Q.  Were you alone?
19   A.  No.
20   Q.  Who traveled with you?
21   A.  I rode up there with my co-defendant,
22 Verden Nalley, that's who, that's who I went with.
23   Q.  Were you with Mr. Nalley all day?
24   A.  Yes.  We were never more than, you know,
25 ten feet away from each other, all day long.  For

Page 54

1  the most part, it may have been, I mean, in other
2  words, it was never more than a matter of, I think
3  he went to the Capitol first, and I lost sight of
4  him, but we met up in the -- as soon as I went in.
5    Q.  Now, were you with Mr. Nalley when you made
6  the decision to walk over toward the Capitol?
7    A.  Yes.
8    Q.  And what did you see along the way, did you
9  see -- well, let me back up.
10       Did you see anything, along your path to
11 the Capitol, that made it clear to you that --
12       MS. MITTELMAN:  Ms. Moore --
13   Q.  -- you were engaged in criminal behavior?
14       MS. MITTELMAN:  -- this seems like a
15 relitigation of the underlying criminal conviction.
16       MR. EVANS:  No, it's not.
17       MS. MITTELMAN:  Then I'd ask Mr. Evans
18 to tell us what it is, otherwise.
19       MR. EVANS:  We're making the argument
20 under 8.4(e), of Subsection 5.
21       MS. MOORE:  Again, Mister -- Mr. Evans,
22 I am giving you some leeway, in an effort to allow
23 you to, you know, represent your client and make the
24 case today.
25       But, again, we're not going to relitigate

Page 55

1  the entire case
2         MR. EVANS:  Not going to do that, I'm
3  sticking to the Bar rules.
4         MS. MOORE:  Okay, go ahead.
5  BY MR. EVANS:
6    Q.  Was there anything that indicated to you
7  that you had embarked upon what would later be
8  alleged to be a criminal endeavor?
9    A.  No, and I, as a lawyer, we are, we're all
10 trained to, you know, be very mindful of, that we do
11 have a law license, and there's certain very bright
12 lines that we don't cross, if we want to keep that
13 license.
14       One of those, or two of those lines are you
15 don't, you know, commit an assault at a political
16 protest, or do any vandalism or property damage at a
17 political protest.
18       You don't insight others to riot.  You
19 don't conspire to riot, or, you know, do bad things
20 that are inherently bad, is what I'm talking about.
21       And so I was very conscious not to do any
22 of those things.  And I think I testified to this at
23 my trial, but my, my purpose was to engage in civil
24 disobedience to protest the election.
25       I, and, again, this is sort of covering

Page 56

1  what I've previously testified to, but I, when I
2  found myself at the bottom of the stairs, I had to
3  make a, you know, and Nalley had gone on up the
4  stairs, and at the top there was a terrace, and then
5  the door we went in was, you know, right there.
6       But he'd gone up, up the stairs, was headed
7  up the stairs.  And I was at the bottom of the
8  stairs.  And I thought, you know, well, you know, if
9  I go in there, up those stairs right now, then, you
10 know, I'm going inside.
11       You know you're not going to do anything
12 wrong.  The worst that can happen to you is you're
13 going to be charged with some type of trespass.
14       And, sometimes, when civil rights are at
15 stake that affect millions of people, and the right
16 to vote is such a right, and to have that vote
17 counted, I resolved then that I'd take a misdemeanor
18 for the cause, you know, take one for the team, if
19 it came to it.  So that's what I did.
20       But I know I did not commit a felony,
21 because every felony has a bad act in the timeline
22 of that felony.
23       And you can -- that any juror can point to
24 and go, aha, right there, that's when that person
25 knew they were committing a serious crime.  There is

CALHOUN, W. MCCALL on 06/21/2023

Page 57

1   no such actus reus in my case.
2           And it's being, you know, still being
3   litigated, but you've got to do a felonious act.
4   You've got to attempt to do a felonious act in order
5   to commit a felony.
6           And that is just not present in my case.
7   And the appellate case law that, such as it's
8   developing out of January 6th, particularly the
9   Miller appeal, that challenged the applicability of
10  18 U.S.C. § 1512(c)(2), you know, they, they, they
11  discuss that.
12          I mean, you, you know, and in that case,
13  all of the appellant -- or the appellees, I guess
14  they were, had attacked a police officer in some
15  fashion, that was sufficient.
16          But just walking through the Capitol,
17  that's covered by other statutes, which have been
18  rendered superfluous by the, you know, government's
19  decision to prosecute things like that.
20      Q.  Did you --
21      A.  Because now they just wanted a one to 20
22  year felony that you tag on trespassers, that's what
23  that's about.  Now, and, you know, it's a double
24  standard of the --
25      Q.  Did you genuinely believe that you were

Page 58

1   exercising your First Amendment rights?
2       A.  That was the whole point of it.
3       Q.  And was that belief a good faith belief?
4       A.  Yes, I did nothing to bring dishonor on
5   myself, or the State Bar, nothing.
6           The government is trying to set a precedent
7   to -- for prosecuting and convicting a lawyer for
8   thinking the wrong way.  That's basically what this
9   is about.
10      Q.  Now, did you break a window?
11      A.  No.
12      Q.  Did you enter a doorway that was not open?
13      A.  No.
14      Q.  Had others gone before you?
15      A.  Yes.
16      Q.  How long were you there?
17      A.  According to the video, I was in there
18  about, it was, I want to say 20, it was either 27,
19  23 minutes, something like that.
20          And almost half of that time was spent
21  trying to get out.  Because there was so many people
22  coming in, it took a while to get out.
23          But I stayed in the publicly accessible
24  areas, and, you know, I mean, I did not go into any
25  Senate or House Chamber.

Page 59

1           And so it -- furthermore, there are
2   hundreds, if not thousands of, of persons who were
3   in the Capitol, because I estimated it must have
4   been about 10,000 people that went through there
5   that day.
6           But of the ones that are charged, of the
7   thousand or 1,500 or so that have been charged, and
8   this is what the judge was inquiring about, you
9   know, what did I do that was different from those
10  people who didn't get charged with a felony?  And
11  that, that's, that's the question.
12          And that's why the conduct is important,
13  because the conduct does not show a felony, at all.
14  And I'm, I have every confidence the Supreme Court
15  is going to overturn this case, if the trial judge
16  doesn't do it, you know, first.  But we're not --
17  that's still in progress.
18      Q.  Now, as you left the Capitol and made your
19  way home, did you feel like you were hiding from a
20  crime?
21      A.  No.  And I, we, you've got -- it's
22  important to keep in mind, there were a lot of
23  things that happened that day in Washington.
24          The, you know, when the Capitol, people
25  entered the Capitol after 2:00 o'clock, I think, I

Page 60

1   want to say sometime around, it was 2:00, before
2   2:15, they had entered the Capitol, the first people
3   had, apparently.
4           They were in the Capitol, somebody, other
5   people were in the Capitol until about, I think
6   after 8:00 o'clock, around 8:30.  Before 3:00
7   o'clock, Nalley and I were in the car, headed back
8   to Georgia.
9           So a lot of stuff happened after we weren't
10  even in town, that, that the government has, you
11  know, lain at my feet, that I didn't know, I didn't
12  have anything to do with.
13          I mean, that's part of the, you know, we've
14  heard this thing called an insurrection, we've heard
15  it called this violent -- there were over, there
16  were probably two million people there that day.
17  And, and, you know, I -- a handful did something
18  violent, but I wasn't one of them.  And I didn't,
19  and that, that's just the way it is.
20          I can't help what, I'm not responsible for
21  what others do, any more than they are responsible
22  for what I do.  If -- unless it's a conspiracy,
23  which it wasn't.
24          So it's, it's just, it's been a lot of
25  misperception, misinformation, and misrepresentation

CALHOUN, W. MCCALL on 06/21/2023

Page 61

1  about what happened on January the 6th in the media.
2  And it's, it's just -- most of it is just, it's
3  lies.  I mean, it's not what, what happened.
4          I'm not saying that some people didn't do
5  some bad things, there were a handful of people who
6  did do some bad things.  But I was not one of them.
7          MS. MOORE:  Mr. Evans, anything else?
8          MR. EVANS:  Nothing further.
9          MS. MOORE:  Thank you.  Do you have any
10 other witnesses, or evidence?  I'm sorry, Ms.
11 Mittelman?
12          CROSS-EXAMINATION
13 BY MS. MITTELMAN:
14     Q.  I've just got one question for you, then,
15 Mr. Calhoun.  Can we all assume you have no remorse
16 for going, January 6th, to the Capitol?
17     A.  Why would I have remorse?
18          MS. MITTELMAN:  Okay, thank you.
19          MS. MOORE:  Any redirect?
20          REDIRECT EXAMINATION
21 BY MR. EVANS:
22     Q.  Mr. Calhoun, you've got -- did you feel a
23 little remorse when you spent 57 days in solitary
24 confinement?
25     A.  The feeling, to feel remorse requires that

Page 62

1  the person had to have done something inherently
2  wrong.  It is not wrong to engage in civil
3  disobedience to fight for civil rights.
4          And I think that's something that the left
5  has forgotten.  It is not wrong to engage in
6  peaceful political protests, and that is objectively
7  what I did.  I did not do anything more than that.
8     Q.  Do you feel remorse now that the State Bar
9  is trying to take your license away?
10     A.  If, if the State Bar, you know, it's -- no,
11 I do not.  Because it is, I can answer that with a
12 question, what's more important than the right to
13 vote?  A Bar license?  I'd give up a hundred Bar
14 licenses, if that's what it takes.
15          But, you know, I don't think there's any
16 grounds to feel remorse.  I mean, do I like the idea
17 that I, you know, had to go up there and do that?
18 No, I don't.  But somebody had to go up there to
19 protest this election.  And peacefully protesting is
20 not a crime.
21     Q.  Did you do anything, at all, in the
22 Capitol, that was not peaceful?
23     A.  No.  That's all, that's all settled.  I
24 mean, it's all on video.  There's no dispute about
25 what I did in the Capitol, it's covered on video.

Page 63

1          The US Attorney was questioned by the
2  judge, what did he do that was different, and,
3  finally, after that went on for, seemed like over
4  half an hour, the US Attorney, one of them finally
5  stood up and said we're going on his mere presence.
6          And that, in conjunction with my, some
7  social media posts that they said showed my intent.
8  But I didn't act, just looking at that, in the best
9  light for the government, or for the Bar, I did not
10 act -- no matter what I posted on social media, I
11 didn't act on it.  And I didn't threaten anybody, I
12 didn't do anything, I didn't commit a crime.
13          So it's, you know, it's all First Amendment
14 protected activity.  I mean, and sometimes in, in
15 political protesting, as anybody who's familiar with
16 the civil rights era will know, sometimes you have
17 to, you know, get a ticket for doing something that
18 is, you know, illegal.
19          But it doesn't involve moral turpitude, and
20 you don't commit a felony against anybody, you don't
21 assault anybody, you don't use violence, you engage
22 in peaceful protests, and that's where we've seen
23 it.
24          It's a protected First Amendment right.  If
25 you want to step across the line, because they're

Page 64

1  saying don't step across that line, you walk across
2  it, you get arrested.  You pay your fine and you're
3  done.
4          That, that's, that's what happened here,
5  except they're, they have turned it into a felony,
6  and I mean, it's --
7     Q.  Were your actions and decisions, on that
8  day, made in good faith?
9     A.  Yes.
10         MR. EVANS:  Nothing further.
11         MS. MOORE:  Thank you.  Mr. Calhoun,
12 you can step down.  Mr. Evans, any additional
13 witnesses or evidence?
14         MR. EVANS:  No, Your Honor.
15         MS. MOORE:  All right, I will, I'll
16 hear closing remarks, then.  I guess it remains the
17 State Bar's burden, so they'll close last.
18         Mr. Evans, I'll allow you to go first.
19         MR. EVANS:  Well, you've heard several
20 of the arguments, and, and just to complete the
21 thought of, of argument number two, under Rule 8.4
22 we contend that the use of the term felony, within
23 the meaning of the Bar rules, is a, it has to be a
24 matter which is, both shows moral turpitude and
25 underlying conduct, relating to the fitness of the

CALHOUN, W. MCCALL on 06/21/2023

Page 65

1  lawyer to practice law.
2        And an unrelated -- participation in an
3  unrelated political protest, concerning an election,
4  as a private individual, does not meet either of
5  those standards, even though what they call it in DC
6  was a felony.
7        Now, same conduct's not a felony in Georgia
8  law.  We've got a statute directly on point, which
9  we've cited to the Court, and you've heard that
10 argument.
11       MS. MOORE:  Let me, let me interrupt
12 you and ask you this, do you, you have any
13 authority, from cases, disciplinary cases,
14 previously decided by the State Bar, where they have
15 engaged in this sort of analysis?
16       MR. EVANS:  Not in Georgia, but in New
17 York, in other jurisdictions.  I have all ALR on it,
18 which I can submit to the court, and I will do that.
19       MS. MOORE:  Okay, no Georgia cases?
20       MR. EVANS:  In Georgia, I did not find
21 one, and I'm not saying there doesn't exist one, but
22 the, the concept has been used repeatedly in other
23 States, as a defense, and has been found to be a
24 valid defense in other States.
25       MS. MOORE:  All right.

Page 66

1        MR. EVANS:  And it's particularly
2  important here because, as you heard from Mr.
3  Calhoun himself, he's careful about what he felt
4  like the lines were, and he was willing to cross the
5  threshold of the Capitol, and, and commit a
6  misdemeanor, as civil disobedience, as part of his
7  political protest.
8        But he was not going to cross the line to a
9  felony, did not think he was doing anything that
10 would impair his ability to continue to represent
11 the 41 clients, and others, that depend on him,
12 currently.  And that number would have been 150,
13 prior to January 6th of 2021.
14       MS. MOORE:  You said how many?
15       MR. EVANS:  Generally he handles
16 caseloads of about 150 people.  But spending three
17 months in jail, various jails in Georgia, and then
18 in Oklahoma, and then DC, and then 57 days in
19 solitary confinement, only out for one hour a day,
20 left him unable to handle that same caseload, as you
21 can imagine.
22       And, simply, he's been punished enough.
23 The State Bar does not need to further punish him
24 for what he thought, genuinely thought was a
25 protected First Amendment free speech activity, that

Page 67

1  he did nothing that was inconsistent with what he
2  expressed to this Court as his good faith belief, at
3  the time.
4        And, and the rules clearly allow exactly
5  that.  I mean, what would be the point of comment
6  five, to Rule 8.4, if it did not allow an attorney
7  to make a good faith decision about his conduct,
8  even if it does violate a law.  If he -- and I
9  believe that the, Mr. Calhoun's statements meet
10 that, meet that standard.
11       MS. MOORE:  Don't, don't you, do you
12 not think that maybe that standard is more
13 appropriately considered at a later point in this
14 process?  Maybe at the point in time where the
15 consideration was for disbarment, maybe in
16 mitigation?
17       MR. EVANS:  It would certainly be a
18 matter of mitigation, but what we're trying to do
19 right now is to keep his license intact.
20       I mean, we've asked for a continuance, we
21 did not get one.  The -- he's got plenty of
22 opportunities to get rid of that felony, but why
23 the, I don't see why the State's concern that he's
24 currently, on paper, convicted, although the
25 proceedings are not done, why that causes more

Page 68

1  damage than the 41 clients that he does have, who
2  have already paid him, and they're going to lose
3  their counsel of choice.
4        Why does an abstract concern outweigh the
5  concrete physical concerns of 41 people who are
6  going to lose their lawyer if the State Bar does
7  this?
8        MS. MOORE:  And I, I certainly, I
9  certainly understand that argument, and, and do
10 believe in the right of individuals, to be able to
11 select a lawyer of their own choosing, and have the
12 lawyer that they'd like, but I don't think that is
13 without limits.
14       And, again, what we're, what we're talking
15 about here today, when I look at the rules overall,
16 right, and even the, the expediency at which this,
17 the rules anticipate that this issue is to be
18 addressed, I don't see a process, I mean, to me the
19 rules suggest that they take this very seriously, a
20 conviction, a criminal conviction is taken very
21 seriously.
22       MR. EVANS:  Sure.
23       MS. MOORE:  And I think that's
24 reflected even in the period of time at which we are
25 to consider this, and have these hearings.

CALHOUN, W. MCCALL on 06/21/2023

1    And so I just, I don't see, you know, in
2  order to -- A, relitigating the underlying issues,
3  even, you know, your argument for a continuance, I
4  think that everything in the rule points to these --
5  this issue should be decided, and should be decided
6  quickly.
7    As I mentioned to you before, my job here
8  today is to determine, is to issue a reported
9  recommendation, based on what's in front of me.
10    My job is not to determine whether or not,
11  you know, Mr. Calhoun, in good faith, exercised his
12  right to protest, or was exercising his First
13  Amendment rights.
14    MR. EVANS:  Oh, it is, it is, because
15  that's what it says under Rule 8.4.
16    MS. MOORE:  No, my issue is only to
17  determine whether or not he has been convicted,
18  after he, he certainly had an opportunity, and I
19  understand your argument, and your point about
20  whether or not a judicial decision is a conviction,
21  I've certainly, I've looked at the cases you've
22  submitted, and they seem to indicate that, they seem
23  to be consistent with your definition of verdict.
24    But I still have a hard time believing that
25  a judge's decision, in whatever jurisdiction, in

1  these situations, is to be given no consideration.
2  For that matter, that would just mean any, any
3  lawyer who's ever committed any criminal offense
4  would just have a bench trial, and that would buy
5  them some more time, in terms of, in terms of the
6  State Bar rules, which I'm sure they would be
7  certain to know are coming, if a judge finds them
8  guilty.  So, I just, I don't -- I'm not persuaded by
9  that argument that --
10    MR. EVANS:  We can both read English,
11  though.
12    MS. MOORE:  Again, if it is to be -- if
13  verdict is to be interpreted that narrowly, then it
14  would, it's going to be for the Supreme Court to say
15  so.
16    MR. EVANS:  It says what it says.
17    MS. MOORE:  It says what it says.
18    MR. EVANS:  And Georgia law says what
19  it says.
20    MS. MOORE:  But if it's going to be
21  interpreted that narrowly, it's -- I will allow the
22  Supreme Court to say that.
23    MR. EVANS:  Your Honor, we ask you,
24  also, to focus on comment number three, to Rule 8.4.
25  And it says, in material part, although a lawyer is

1  personally answerable to the entire criminal law, a
2  lawyer should be professionally answerable only for
3  offenses that indicate lack of those characteristics
4  relevant to practice law, the law practice.
5    Offenses including violence, dishonesty,
6  breach of trust, or serious interference with the
7  administration of justice, are in that category.
8    MS. MOORE:  And, again --
9    MR. EVANS:  Mister -- and, again, we
10  get back to the conduct.
11    MS. MOORE:  With all due respect to
12  your argument, I still think that we are, we are
13  premature in terms of me making that determination,
14  at this point.
15    MR. EVANS:  All felonies are not
16  created equal.  And the comments to Rule 8.4 clearly
17  focused the Court's attention, and, and you, as,
18  acting as Special Master here, should also focus
19  your thoughts about the actual conduct that's at
20  issue.
21    Because not all felonies are created equal.
22  If you commit murder, I can, there's not going to be
23  any contest about whether your Bar license needs to
24  be revoked.  There are a lots of felonies that fall
25  in that category.

1    MS. MOORE:  If you, if you --
2    MR. EVANS:  But the rules are designed
3  to be rules of reason, that should be interpreted
4  with reference to the purposes of legal
5  representation, and the law itself, that's comment
6  number 13, to the Rules of Professional Conduct.
7    MS. MOORE:  So the State Bar has
8  presented me with seven cases considering this exact
9  scenario, where a person has either voluntarily
10  petitioned for a suspension of their license, after
11  conviction, or where it was recommended even after
12  dispute.
13    Do you have any cases where the Georgia
14  Supreme Court has said, in these -- under these
15  particular circumstances, we are not going to
16  suspend?  I'm not talking about disbarment, issue a
17  suspension.
18    Show me one case where the Supreme Court
19  has said it's not appropriate, or it's not, you
20  know, we won't impose a suspension, after
21  conviction.
22    MR. EVANS:  I don't have a Georgia case
23  involving a First Amendment protest that resulted in
24  a felony charge, because they typically don't.  I
25  mean, they, it's a constitutional principle, and

CALHOUN, W. MCCALL on 06/21/2023

Page 73

1  normally they are not violated.
2          I mean, but you can see from the tape, and
3  you heard from the testimony, that's all the man
4  did.  But, they've called it a felony in DC, and,
5  but I don't think that your inquiry should be
6  limited to what they did in DC, for reasons of their
7  own, whatever they could be.
8          And we're not relitigating the case, but
9  all conduct is not the same.
10         MS. MOORE:  Part of the risk that you
11 take when you, when you go to any other State, and
12 you're a Georgia lawyer, and you go to any other
13 State, part of the risk that you take is that, is
14 that you may commit an offense that, under that
15 State, is a felony.
16         MR. EVANS:  Well, if you're going -- if
17 you live in Georgia, and you want to protest a
18 Federal election, the only place you can go do that
19 is DC.  That's where the Federal elections occur.
20         And that's, and, and it wasn't Mr.
21 Calhoun's singular idea to do that, he said that
22 there were probably two million people there on that
23 day, doing the same thing, or a species of it.
24         And normally that's protected free speech.
25 Not in this instance.  And so not all felonies are

Page 74

1  the same, and that's why we've always tried, and we
2  keep coming back to, in this hearing, well, look at
3  the conduct, you can see what the man did.
4          It's no mystery, we've got a two and a half
5  minute compilation of the tape.  Every single
6  activity that he committed was on some tape, and
7  that's the Federal government's compilation of
8  pictures of -- that they sought, if they found
9  something worse, I'm sure they would have put that
10 in the tape.
11         MS. MOORE:  Okay.
12         MR. EVANS:  That's all the man did.
13         MS. MOORE:  Okay.
14         MR. EVANS:  Did it look like a felony
15 to you?
16         MS. MOORE:  I'm not here -- I respect
17 the decision that the DC Circuit Judge, or District
18 Judge imposed.
19         MR. EVANS:  Without, without looking at
20 the reasons for it, and any examination of the
21 transcript?
22         MS. MOORE:  It is not for me, it is not
23 for me to consider the underlying basis, only that,
24 that Mr. Calhoun had an opportunity, he had his
25 choice of judge, or a jury of his peers.

Page 75

1          He opted for a judge, and the judge found,
2  based on whatever happened in court that day, I
3  certainly wasn't there, and they found that his
4  conduct amounted to a felony.
5          He has the right to appeal, as I'm sure he
6  is exercising that right, or intends to exercise
7  that right.  And, you know, if somebody got it
8  wrong, then, then I'm sure that will bear out.  But,
9  again, for the reason we're here today, is only for
10 me to consider --
11         MR. EVANS:  Whether he should be, his
12 law license should be suspended for commission of an
13 act, which either shows a lack of moral turpitude,
14 or is underlying conduct connected to the, to the
15 practice of law, and shows that he's unfit to do
16 that, and --
17         MS. MOORE:  I don't think --
18         MR. EVANS:  And nothing about the
19 conduct that you've seen would indicate either of
20 those two things.
21         MS. MOORE:  I don't, I don't think my
22 purpose here today, and, again, if I'm wrong, the
23 Supreme Court can correct me, but I don't think my
24 purpose here today is to determine the underlying
25 conduct.  I think my purpose here today is to

Page 76

1  determine whether, whether or not there is a felony
2  conviction.
3          MR. EVANS:  And, and I've got two
4  arguments that speak to that, and I'll be done.
5          MS. MOORE:  You can make them quick,
6  Mr. Evans?
7          MR. EVANS:  Yes.
8          MS. MOORE:  Thank you.
9          MR. EVANS:  I mentioned in the, in the,
10 in arguments, that the statute in Georgia would
11 treat Mr. Calhoun's conduct as a misdemeanor.  And
12 if you notice, that statute is O.C.G.A. 16-11-34.1.
13         And the Supreme Court has analyzed the
14 constitutionality of O.C.G.A. § 16-11-34, not 34.1,
15 which criminalized simply disrupting a public
16 meeting.
17         MS. MOORE:  But because, as we've
18 discussed before, because Mr. Calhoun is not alleged
19 to have committed this offense in Georgia, this
20 statute is not relevant to, to this, to our
21 consideration here today.
22         MR. EVANS:  Well, in the --
23         MS. MOORE:  I appreciate --
24         MR. EVANS:  -- Supreme Court's analysis
25 of a similar statute, they found it

CALHOUN, W. MCCALL on 06/21/2023

1  unconstitutional, and the decision --
2        MS. MOORE:  I appreciate --
3        MR. EVANS:  -- Your Honor, so the
4  record is clear, the decision I would like -- you
5  don't have to read it, but I'm asking you to read
6  280 Ga. 444.
7        MS. MOORE:  All right, again, just so
8  the record is clear, that is 280 Ga. 444, the State
9  v. Fielden, and the State versus Touchton, and,
10  again, I, I've, I've already ruled that this is not
11  relevant, your argument will be --
12        MR. EVANS:  My argument will be that
13  the Supreme Court would, if they had the Federal
14  statute that, that Mr. Calhoun was convicted of a
15  felony under, before, just like they did in this
16  case, they would consider that to be an
17  unconstitutional statute.
18        MS. MOORE:  Okay.
19        MR. EVANS:  That's how they interpret
20  the law.
21        MS. MOORE:  Thank you.
22        MR. EVANS:  And we are talking about
23  our Supreme Court.
24        MS. MOORE:  Okay, your argument is on
25  the record, Mr. Evans.

1        MR. EVANS:  Thank you.
2        And then, lastly, by sanctioning attorney
3  discipline for all felonies, without regard to moral
4  turpitude, or whether the underlying conduct bears
5  some relation to his fitness to practice law,
6  without either of those two factors in play, the
7  Supreme Court lacks authority, under the
8  Constitution, to discipline attorneys.
9        And that constitutes an unreasonable
10  restraint on Mr. Calhoun's right to work in his
11  chosen profession, free from unreasonable government
12  interference.
13        That's not just me saying that, Ms. Moore,
14  this is, let me quote you from Justice Peterson's
15  concurrence in matter of Palazzola -- I assume that
16  I have it here.
17        MS. MOORE:  That was, that's a
18  disciplinary matter?
19        MR. EVANS:  It is -- yes.
20        MS. MOORE:  You said a matter of
21  Palazzola, what's --
22        MR. EVANS:  Yes, it is, the matter of
23  Palazzola, I have the cite on my desk, where is
24  Palazzola?  I get all confused here.  I've got a
25  copy for Your Honor, that is a 2020 case 310 Ga.

1  634.
2        MS. MOORE:  Thank you.
3        MR. EVANS:  And the, Justice Peterson
4  writes:  I would observe not every bad thing a
5  lawyer does should jeopardize the lawyer's ability
6  to work.  For that matter, I'm not at all sure that
7  the inherent authority to regulate the practice of
8  law, that the Georgia Constitution vests in this
9  court, includes the authority to adopt such far --
10  such a far reaching rule, even if the Court wanted
11  to, and even if the Court's inherent constitutional
12  authority extended so broadly.  This is the
13  concurrence.
14        MS. MOORE:  Thank you.
15        MR. EVANS:  Other provisions of the
16  Georgia Constitution might prohibit the Court from
17  exercising that authority like this.  Georgia
18  lawyers are people, too.
19        And the Georgia Constitution's due process
20  clause guarantees, to the people of Georgia, the
21  right to work in one's chosen profession, free from
22  unreasonable government interference.
23        This court has long exercised the solemn
24  responsibility to protect the public by regulating
25  the practice of law.  The more core to the

1  protection of the public a regulation is, the more
2  clearly the exercise of our authority to regulate is
3  reasonable.
4        But the further that -- from that core our
5  regulations stretch, the greater the risk that our
6  reach exceeds our power.
7        It's not at all clear to me that the
8  dishonest conduct involving associates' retirement
9  accounts, which was at issue in that case, that is
10  at issue here, has anything to do with the
11  retirement account -- anything to do with the
12  protection of the public.
13        And, of course, considers only the right to
14  work, long guaranteed by the Georgia Constitution's
15  due process clause.  Other constitutional rights may
16  require us to tread even more lightly.
17        The gist of the regulation has to be
18  reasonable.  You can't just say felony, without
19  regard to what kind of a felony it is, and they're
20  not all created equal.
21        DC can call it a felony.  But we can see
22  what the man did, and it's not a felony in Georgia.
23  It's never been a felony before.  It's been First
24  Amendment's freedom of speech.  But it is -- they're
25  calling it a felony.

CALHOUN, W. MCCALL on 06/21/2023

Page 81

1    What I'm saying, the Court needs to look
2  beyond that, particularly in this unique
3  circumstance, where the exercise of a constitutional
4  freedom has been -- is being used, first by the
5  Department of Justice, and now by the State Bar, to
6  deprive Mr. Calhoun of his due process rights to
7  work in the profession of his choosing.
8    And to deny the 41 people, several of whom
9  are here in the courtroom, the lawyer of their
10  choice.
11    Are you going to throw all those principles
12  away to punish a man for walking for 20 minutes in
13  the Capitol, without causing any trouble?
14    MS. MOORE:  All right.
15    MR. EVANS:  We ask --
16    MS. MOORE:  I'm sorry, go ahead.
17    MR. EVANS:  We ask the report and
18  recommendation to certainly include consideration of
19  these important factors.
20    MS. MOORE:  I've noted your arguments,
21  thank you.  And again, for the record, the case cite
22  is 310 Ga. 634, Supreme Court, In the Matter of
23  Christopher John Palazzola.  Did I say it --
24    MS. MITTELMAN:  Palazzola, I believe it
25  was.

Page 82

1    MS. MOORE:  All right, thank you.  Ms.
2  Mittelman, your closing?
3    MS. MITTELMAN:  Yes, so just briefly,
4  we vacillated today between arguments that Mr.
5  Calhoun's underlying conduct is not relevant, and
6  then extensive presentation and argument related to
7  the fact that he didn't do anything wrong when he
8  was in Washington.
9    And that, at this point, given the State
10  Bar's petition for violations of 8.4(a)(2) and
11  8.4(a)(3), the conviction is the violation of the
12  Bar rules.
13    And, for that reason, because the State has
14  a legitimate interest in the relationship of the
15  courts and attorneys in such serious matters, and we
16  are concerned that the public must have trust in
17  these folks who are practicing law in this State, I
18  would rely on the Stoner case, and the cases
19  following Stoner.
20    I would point out that I'm not aware of any
21  instance where a felony conviction hasn't resulted
22  in discipline of some sort.
23    I agree with you, Ms. Moore, that the
24  nature of the underlying conduct becomes significant
25  when we are asking for a final disposition of this

Page 83

1  matter.
2    But, in this instance, we have a felony
3  conviction, misdemeanor convictions involving moral
4  turpitude.  The Court has never interpreted, has
5  never interpreted gradations of felonies in
6  8.4(a)(2) matters, there's a felony or there isn't.
7  In this case there is.
8    We are not asking anything other than a
9  suspension pending the outcome of the appeals.  Mr.
10  Calhoun will have his right to make his arguments
11  related to the propriety of the conviction, of both
12  the felonies and the misdemeanors.
13    I would point out in the Stoner case, Mr.
14  Stoner raised the issue of his clients'
15  constitutional right to counsel.  The Court said the
16  right to counsel doesn't mean the right to counsel
17  of one's own choosing in every situation.
18    In this case, we don't have any idea
19  whether Mr. Calhoun took these clients on following
20  the conviction, in the face of the conviction, but
21  none of those things are relevant at this juncture,
22  because there is a violation of 8.4(a)(2),
23  8.4(a)(3), and we would ask for a suspension pending
24  the outcome of those appeals.
25    MS. MOORE:  Thank you.

Page 84

1    MR. EVANS:  Your Honor, could we -- I
2  would argue, upon this, to send you the ALR, that I
3  referred to earlier.
4    MS. MOORE:  For the New York case?
5    MR. EVANS:  For the, yeah, for the
6  discussion of that principle, generally, as it's
7  applied in other States, I think is relevant here.
8    Would you -- are there any other
9  authorities that you would like for us to research
10  for you, and resubmit to you, that would help you in
11  your report?
12    MS. MOORE:  I'm, I'm not interested in
13  the ALR information, especially as it pertains to
14  maybe how other States view this.
15    Because I haven't, I haven't seen anything
16  so far, I mean, again, all of the cases, all of the
17  similar cases dealing with suspension, at the
18  juncture after conviction, seem to indicate that
19  suspension is, is appropriate.
20    And, again, I do think it's premature.  I
21  certainly understand your argument, but I think it's
22  premature in terms of what to do at this juncture.
23    MR. EVANS:  Well, the punishment comes
24  now, starts if the recommendation is to suspend, and
25  the Supreme Court agrees, his punishment starts

CALHOUN, W. MCCALL on 06/21/2023

Page 85

1  right now.
2          MS. MOORE:  I, I understand, but I
3  think that certainly the State Bar is, is entitled
4  to, entitled to the, I guess, a benefit, for lack of
5  a better word, of the underlying conviction.  I
6  mean, someone else has, has found him guilty of a
7  felony.
8          MR. EVANS:  It wasn't a verdict.
9          MS. MOORE:  Again, I understand your
10 arguments as to that.  But if, if, if that is too
11 narrow of an interpretation, in other words, if, you
12 know, I just think it's for the Supreme Court to
13 say, you know, a judge, a judgment, or a judge's
14 decision, or a judge's opinion, or a judge's ruling
15 is not a verdict for purposes of discipline.
16         MR. EVANS:  If that's what they meant,
17 they would have said that.
18         MS. MOORE:  Well, and I think this is
19 the opportunity, if this is how they want to
20 interpret it, this will be the opportunity for them
21 to interpret it that way.  I just think that is a
22 narrow reading.
23         MR. EVANS:  But that is what it says.
24         MS. MOORE:  I don't disagree that
25 that's what it says.  You know, whether or not

Page 86

1  that's the intent, to exclude situations where a
2  defendant has, has forgone his right to a jury, and
3  instead opted on a judge, and then to make the
4  decision, and then say the judge's decision doesn't
5  qualify for a conviction, I, I'm just, I don't --
6  that's a stretch.
7          MR. EVANS:  Well, we don't know why
8  they drafted it that way, but they drafted it that
9  way.
10         MS. MOORE:  I, I --
11         MR. EVANS:  That's all we've got in
12 front of us.
13         MS. MOORE:  I understand, your
14 arguments are well taken, and are noted for the
15 record.  But, I will say that, at this point, I
16 think --
17         MR. EVANS:  And the felony has to
18 involve, for it to be material to the Bar license,
19 it has to involve either moral turpitude or
20 something that relates to his ability to practice
21 law.
22         MS. MITTELMAN:  Ms. Moore, I would say,
23 on that point, the rule says a felony, I understand
24 his argument, and it's probably time to stop
25 arguing, isn't it?

Page 87

1          But the rule, the comments, I think, are in
2  reference to the misdemeanor provisions, which are
3  also relevant here.
4          But I wouldn't want anyone to think we had
5  conceded that there are gradations of felony for the
6  purposes of the Georgia disciplinary system.
7          MS. MOORE:  Sure.
8          MS. MITTELMAN:  Thank you.
9          MS. MOORE:  So with that, Counsel, I
10 will say that I believe that the State Bar has met
11 its burden of establishing that Mr. Calhoun has
12 committed a felony, conviction, and which would
13 warrant my issuing a reported recommendation.
14         Again, just to be clear --
15         MR. EVANS:  So you're done considering
16 anything, you're not going to read anything more?
17         MS. MOORE:  I'm not at this time, no.
18         MR. EVANS:  All right.
19         MS. MOORE:  Just to be clear, just to
20 be clear, Mr. Evans, I issue a report and
21 recommendation for the Supreme Court to consider.
22         MR. EVANS:  You've already made your
23 mind up.
24         MS. MOORE:  And -- pardon?
25         MR. EVANS:  But you've already made

Page 88

1  your mind up.
2          MS. MOORE:  Well, no, I have, I have
3  decided -- yes, I'm telling the party that I have
4  decided that the State Bar has met their burden of
5  establishing that Mr. Calhoun has committed a
6  felony, and misdemeanor offenses, and that it would
7  be appropriate to recommend, to the Supreme Court,
8  that he be suspended.  And that's what my
9  recommendation will say.
10         And I would assume you except to my ruling,
11 and that's fine with the Court, the court
12 reporter -- or the record will reflect that, but
13 that will be my ruling.
14         Anything further?
15         MR. EVANS:  When can we expect a
16 report?
17         MS. MOORE:  Question, do we need to
18 wait for a transcript?
19         MR. EVANS:  Yes.
20         MS. MITTELMAN:  You, the rule says that
21 you should rule with -- make your recommendation
22 within 30 days of the hearing.
23         If you don't think you have enough time,
24 after the receipt of the transcript, to meet that,
25 you can extend the deadline on your own.

CALHOUN, W. MCCALL on 06/21/2023

Page 89

1    I was also going to ask if you want
2  proposed reports from the parties, which I'm happy
3  to do, but the rule, specifically 4-106, talks about
4  a 30 day deadline.
5           MS. MOORE:  So, Mr. Evans, to your
6  point, I will wait for the transcript.  And
7  therefore, that way you can, you can have a copy of
8  the transcript, or the Supreme Court can have a copy
9  of the transcript, as well, as they are reviewing my
10 report and recommendation.
11          I would like a proposed report and
12 recommendation, but I'm sure that I will add my, my
13 own language to a shell report.  Does that answer
14 your question?
15          MR. EVANS:  I didn't ask a question.
16          MS. MOORE:  Oh, somebody asked who --
17 when would the report and recommendation be issued.
18          MS. MITTELMAN:  I asked if you'd like
19 one, yeah, happy to do it.
20          MS. MOORE:  No, no, no, I'm sorry, you
21 did ask a question, Mr. Evans, you asked when I --
22          MR. EVANS:  When to expect a report.
23          MS. MOORE:  Oh, okay, okay.  Does that
24 answer that question, as to when to expect a report?
25          MR. EVANS:  It does.

Page 90

1           MS. MOORE:  Okay, all right, anything
2  further?
3           MS. MITTELMAN:  Nothing from the State
4  Bar.
5           MS. MOORE:  Okay.  Well, I appreciate
6  everybody for presenting their arguments, and their
7  side, in a professional manner, and if there's
8  nothing further, we are adjourned.  Thank you.
9           MS. MITTELMAN:  Thank you.
10          (The hearing was recessed at 12:31 p.m.)

Page 91

1  STATE OF GEORGIA
2  MUSCOGEE COUNTY
3
4            CERTIFICATE OF REPORTER
5
6       I hereby certify that the foregoing
7  transcript was taken down as stated in the caption
8  and the statements thereto were reduced to this
9  transcript under my direction, that the foregoing
10 pages 5 through 90 represent a true, complete and
11 correct transcript of the proceedings, and I further
12 certify that I'm not of kin or counsel to the
13 parties in the case, am not in the regular employ of
14 counsel of any of said parties, nor am I in anywise
15 interested in the result of said case.
16       This 4th day of July, 2023.
17
18
19
20            Paula N. Marchetti, RPR, CCR
            Certificate No. 4670-2684-9667-4816
21
22
23
24
25

## Exhibits

W.
   McCall Calhoun Disciplinary Hea
ring State Bar Exhibit 1  3:13,18
   18:7,11,15 43:24

W.
   McCall Calhoun Disciplinary Hea
ring State Bar Exhibit 2  3:15 18:17
   20:8

## (

(b)(1)  27:8

## 1

1  18:7,11,15 20:16 43:24

1,500  59:7

1.0(e)  16:5 21:1,4 27:14

1.1(e)  26:9

10,000  59:4

103915  5:6

112  23:1

12:31  90:10

12th  47:3

13  72:6

15  44:6

15-18  47:5

150  66:12,16

1512(c)  47:6

1512(c)(2)  57:10

16-11-34  76:14

16-11-34.1  29:18 30:3 76:12

18  47:5 57:10

1997  23:14

## 2

2  18:17 20:8,16 47:6 48:17

20  14:7 31:6 37:12,21,22 38:7 39:18

57:21 58:18 81:12

2001  23:1,5

2020  49:10 53:16 78:25

2021  25:1 66:13

2023  18:19 24:25

20th  18:19

21  39:17,23 40:4 43:19

226  23:14

23  58:19

235  23:1

267  48:12

27  58:18

280  77:6,8

2:00  59:25 60:1

2:15  60:2

## 3

3  47:5

30  12:13 39:9 88:22 89:4

310  78:25 81:22

34.1  76:14

3:00  60:6

## 4

4-106  15:24 27:3 89:3

41  10:20 11:5,12,17 66:11 68:1,5 81:8

444  77:6,8

## 5

5  54:20

57  61:23 66:18

## 6

634  79:1 81:22

638  48:12

6th  7:8 8:12 14:9 15:22 30:9 40:2
   49:11 53:12,15 57:8 61:1,16 66:13

## 7

7696  5:7 15:16

## 8

8.4  20:21,24 27:18 48:3,13 52:4,6,15
   64:21 67:6 69:15 70:24 71:16

8.4(a)(2)  16:13 82:10 83:6,22

8.4(a)(3)  16:16 82:11 83:23

8.4(b)(1)  27:8

8.4(e)  54:20

8:00  60:6

8:30  60:6

## A

ability  8:24 11:14 46:13 66:10 79:5
   86:20

abstract  11:4,18 68:4

accepted  21:5

accessible  58:23

accompany  42:21

account  80:11

accounts  80:9

accuracy  18:25

accurate  14:23

accused  21:18 29:16 30:5

achieve  13:4

acquittal  23:3,6,18

act  56:21 57:3,4 63:8,10,11 75:13

acting  49:16 71:18

actions  64:7

activities  35:7 43:11 45:13,15

activity  49:4,21 63:14 66:25 74:6

acts  45:17

actual  11:16 30:10 71:19

actus  57:1

add  29:3,5,6 89:12

**added** 29:4

**addition** 33:21

**additional** 38:4 51:25 52:23 64:12

**addressed** 68:18

**addressing** 48:18

**adjourned** 90:8

**adjustment** 6:24

**administer** 17:15

**administration** 71:7

**admissibility** 39:14

**admissible** 20:2

**admission** 18:7,10,17 23:25 24:17 25:16

**admit** 7:16 20:4,7 33:24 35:3,4,23 36:16,17 37:3 41:14 46:1

**admitted** 18:13,15 20:8 31:6 43:21,24

**admitting** 41:25 43:6

**adopt** 79:9

**adopted** 24:8

**affect** 56:15

**affects** 11:19

**affidavit** 14:18

**afford** 24:18

**agree** 16:23 28:11 47:13 51:16 82:23

**agreed** 6:10

**agreement** 39:13

**agrees** 84:25

**aha** 56:24

**ahead** 38:12 52:9 55:4 81:16

**alleged** 33:13 34:24 49:25 55:8 76:18

**Allison** 48:11

**allowing** 13:6

**ALR** 65:17 84:2,13

**altogether** 12:22

**Amendment** 45:10 47:4 49:19 58:1 63:13,24 66:25 69:13 72:23

**Amendment's** 80:24

**American** 26:19

**Americus** 44:24

**amount** 12:25

**amounted** 33:1 75:4

**analysis** 65:15 76:24

**analyzed** 76:13

**answerable** 71:1,2

**anticipate** 68:17

**anticipated** 11:23 12:8

**anymore** 29:8

**App** 23:1,14

**apparently** 60:3

**appeal** 6:12,15 7:23 8:4,23 10:10 12:3,18,19,23 13:9 16:21 17:5,21 20:10,14 42:24 46:20 47:9 51:12 57:9 75:5

**appeals** 9:20 10:3 11:25 16:24,25 17:1 36:23 83:9,24

**appearance** 9:25 17:8 50:12

**appearances** 39:7 41:8

**appearing** 49:7

**appears** 24:20 39:25

**appellant** 57:13

**appellate** 57:7

**appellees** 57:13

**applicability** 57:9

**applied** 84:7

**apply** 21:20 28:14 31:25 33:4 34:16 41:12,13

**applying** 32:8 33:16

**appointment** 15:18

**appropriately** 13:7 67:13

**areas** 58:24

**argue** 41:20 51:15 84:2

**arguing** 50:7 86:25

**argument** 22:15 33:7 52:1,22 54:19 64:21 65:10 68:9 69:3,19 70:9 71:12 77:11,12,24 82:6 84:21 86:24

**arguments** 11:22 46:16,20 47:9 51:7 64:20 76:4,10 81:20 82:4 83:10 85:10 86:14 90:6

**arrested** 64:2

**assault** 55:15 63:21

**assert** 47:14

**assigned** 5:3

**associates'** 80:8

**assume** 21:22 61:15 78:15 88:10

**attach** 40:11

**attacked** 57:14

**attempt** 57:4

**attempts** 39:12

**attention** 71:17

**attest** 14:19

**attorney** 9:4,25 10:23 14:13 17:8,17 37:7 38:17 50:13 63:1,4 67:6 78:2

**attorney's** 34:6 38:15

**attorneys** 13:2 48:9 78:8 82:15

**authenticate** 15:10

**authoritative** 34:23

**authorities** 84:9

**authority** 65:13 78:7 79:7,9,12,17 80:2

**authorized** 6:3

**aware** 8:11 46:15 82:20

— **B** —

**back** 21:12 39:3,9 40:14 41:5 43:1 45:1 50:6,10 54:9 60:7 71:10 74:2

**bad** 55:19,20 56:21 61:5,6 79:4

**Bar** 5:6,11,13 7:3 9:6,9,10 11:1,18 12:8 15:16,17,24 16:2,11,22 17:12 18:4,7,10,15,16,17 19:1 20:8,11,15,20 21:13,15,17,21,22 23:24 24:15,17 25:16,18 26:1,4 27:12 29:1,10 30:18, 19,20,23,25 32:15 33:5 34:4,10 36:4 37:19,24 39:16 40:7 43:23 48:6 50:11 55:3 58:5 62:8,10,13 63:9 64:23 65:14 66:23 68:6 70:6 71:23 72:7 81:5 82:12 85:3 86:18 87:10 88:4 90:4

**Bar's** 5:8 13:5,16 19:19 26:25 27:16 36:18 46:17 64:17 82:10

**bare** 12:4

**based** 43:18 69:9 75:2

**basic** 40:17

**basically** 50:7 58:8

**basis** 18:23 20:5,7 51:23 52:22 74:23

**bear** 50:20 75:8

**bears** 49:4 78:4

**begin** 13:15

**begs** 48:21

**behalf** 5:11,13,17 13:23 20:17

**behavior** 34:6 54:13

**belief** 52:12,20 58:3 67:2

**believing** 69:24

**bench** 19:9,12,14,17 22:1 23:4,7,18 24:7,11 25:12 26:11,16 27:24 28:3 29:1 70:4

**benefit** 11:11 13:1 15:2 85:4

**blessing** 11:12

**Board** 5:7

**bottom** 56:2,7

**bound** 33:2

**boxes** 7:18

**breach** 71:6

**break** 41:3 58:10

**briefly** 82:3

**bright** 55:11

**bring** 40:19 41:18 58:4

**broadly** 79:12

**Building** 7:8 14:8 31:4,11 35:7

**burden** 13:16 64:17 87:11 88:4

**buy** 70:4

---

**C**

**Calhoun** 5:6,18,20 6:10,25 7:7 8:19, 22 9:1,3,15 10:2 11:11 13:6,19,24 14:2,7 15:3,17,20 16:10,23 18:3 19:15 20:1,10,12,17,18,23 28:2 29:15 30:5 32:12 35:6,14 37:17 41:13 44:3,21 45:3,8,12 46:3,11,24 53:1,3,10,11 61:15,22 64:11 66:3 69:11 74:24 76:18 77:14 81:6 83:10,19 87:11 88:5

**Calhoun's** 10:20 17:21 30:11 31:13 40:1 43:11 49:6 51:21 52:13 67:9 73:21 76:11 78:10 82:5

**call** 10:15 11:3 31:3,12,16 32:13,18 38:15 53:1 65:5 80:21

**called** 13:25 52:15 53:4 60:14,15 73:4

**calling** 19:24 80:25

**canon** 24:12

**Capitol** 7:8 14:8 15:23 30:11 31:4,11 35:7 40:1 44:25 49:12 53:12 54:3,6,11 57:16 59:3,18,24,25 60:2,4,5 61:16 62:22,25 66:5 81:13

**car** 39:20 40:15 60:7

**careful** 66:3

**Carothers** 24:13,16,24 25:10,11,14, 22 26:17

**case** 5:4 8:5,10 9:24 16:25 17:6 20:6 21:16,17 23:1,12,14 24:25 25:1 26:22 27:23 28:21 29:6 30:10,15 35:20 42:8 46:21 47:10 50:12 54:24 55:1 57:1,6, 7,12 59:15 72:18,22 73:8 77:16 78:25 80:9 81:21 82:18 83:7,13,18 84:4

**caseload** 66:20

**caseloads** 66:16

**cases** 9:18,23 23:15,20,23 28:6,18 37:23 38:2 50:11 65:13,19 69:21 72:8, 13 82:18 84:16,17

**category** 71:7,25

**caught** 49:10

**causing** 81:13

**certification** 47:2

**certified** 18:8 20:1,5

**challenged** 57:9

**Chamber** 58:25

**chambers** 49:21

**characteristics** 48:19 71:3

**characterization** 19:1,19

**characterizations** 19:20

**charge** 8:18 72:24

**charged** 44:21 45:3,4,14 56:13 59:6, 7,10

**check** 38:16,17

**choice** 10:24 11:7 68:3 74:25 81:10

**choosing** 68:11 81:7 83:17

**chose** 24:11

**chosen** 78:11 79:21

**Christopher** 81:23

**Circuit** 74:17

**circumstance** 81:3

**circumstances** 8:20 43:7 72:15

**cite** 22:25 24:13 78:23 81:21

**cited** 20:22 22:12 25:10 65:9

**civil** 55:23 56:14 62:2,3 63:16 66:6

**clause** 79:20 80:15

**clear** 21:16 22:22 24:4 26:24 27:11 39:24 54:11 77:4,8 80:7 87:14,19,20

**client** 11:19 54:23

**clients** 10:21 11:5,12,17 13:1,7 66:11 68:1 83:19

**clients'** 83:14

**close** 64:17

**closing** 22:15 64:16 82:2

**co-defendant** 35:19 44:22 45:4,14 53:21

**Code** 29:17

**college** 47:3

**comment** 50:24 52:3,8,17 67:5 70:24 72:5

**comments** 48:4,13 71:16 87:1

**commission** 75:12

**commit** 55:15 56:20 57:5 63:12,20 66:5 71:22 73:14

**committed** 7:7 32:1,5,8 33:14 70:3 74:6 76:19 87:12 88:5

**committing** 29:16 45:16 49:15 56:25

**compare** 30:2 32:6

**compilation** 74:5,7

**complete** 14:22 30:7 37:17 64:20

**comply** 52:11,18

**comports** 13:5

**computer** 40:23 43:18

conceded 87:5

concept 65:22

concern 50:25 67:23 68:4

concerned 30:14 35:14 48:18 82:16

concerns 48:14 68:5

conclusion 19:17

concrete 68:5

concurrence 78:15 79:13

condensed 43:10

conduct 15:6 16:5,15,17,19 17:13
 24:5 29:15 30:3,25 31:1,13,16 32:3,
 12,19 33:1,7,8,19,22 34:6,11,13,17,22
 35:2,4 45:1,21,23 46:12 48:11,15,17,
 23 49:4,17 50:6,8,19 51:2 59:12,13
 64:25 67:7 71:10,19 72:6 73:9 74:3
 75:4,14,19,25 76:11 78:4 80:8 82:5,24

conduct's 65:7

confer 38:22

confidence 17:10,18 50:14 59:14

confinement 61:24 66:19

confirm 48:13

confused 78:24

Congress 8:14 30:12 47:1

Congress's 47:2

Congressional 34:25

conjunction 63:6

connected 48:23 75:14

conscious 55:21

consideration 10:13 67:15 70:1
 76:21 81:18

considered 45:17 67:13

considers 80:13

consistent 69:23

conspiracy 60:22

conspire 55:19

constitute 28:25

constitutes 78:9

Constitution 47:4 78:8 79:8,16

Constitution's 79:19 80:14

constitutional 10:25 11:8 72:25
 79:11 80:15 81:3 83:15

constitutionality 76:14

construction 21:20 24:12 25:4

contact 14:23

contend 64:22

contendere 21:7

contents 36:24 37:4,6,7

contest 71:23

context 24:19

continuance 6:18 9:5 10:11 11:9
 12:24 67:20 69:3

continue 8:2 11:13 66:10

continuing 12:16 17:9 50:13

conversation 10:7

convicted 7:22 9:15,25 11:2 16:2,7,
 15,18 17:8 20:23 21:5 23:7 27:19 28:2
 30:22 31:21 32:22 36:2 50:13,18
 67:24 69:17 77:14

convicting 58:7

conviction 6:12 7:4 9:9,10,12 10:5,9
 12:9 16:12,22 17:6 20:11,25 21:4
 22:18 23:10,24 24:10 25:12,21,23
 26:14 27:4,6,12,13,18 28:12,22,23,25
 29:7,8 32:16 33:12 36:22 42:3 46:22
 47:8,24 50:1,8,20 54:15 68:20 69:20
 72:11,21 76:2 82:11,21 83:3,11,20
 84:18 85:5 86:5 87:12

convictions 9:14 25:25 33:21,22,23
 42:4 43:8 83:3

copies 23:15,20,21 40:14 41:18

copy 14:16 16:6 18:8 20:1,5 22:12
 27:8 29:19,21 40:10,12 78:25 89:7,8

core 79:25 80:4

correct 27:1 75:23

corruptly 46:24

counsel 5:13 7:11 11:7 68:3 83:15,16
 87:9

count 6:24 49:18

counted 56:17

counts 7:1,3 23:8

couple 9:7

court 6:17,21 7:5,14 8:7,11 10:9,19
 12:15 14:17 15:1,18,19,25 17:2 19:2
 20:2 21:3,6,16 23:2,5,15,17,20 24:13,
 14 28:4,13 30:1,17 40:10 41:17 44:10,
 14 45:22 46:14 48:6,25 49:7 51:13,14
 59:14 65:9,18 67:2 70:14,22 72:14,18
 75:2,23 76:13 77:13,23 78:7 79:9,10,
 16,23 81:1,22 83:4,15 84:25 85:12
 87:21 88:7,11 89:8

Court's 15:11 17:19 30:14 45:7 71:17
 76:24 79:11

courtroom 10:22 40:22 81:9

courts 24:2 82:15

covered 57:17 62:25

covering 55:25

created 39:23 71:16,21 80:20

crime 56:25 59:20 62:20 63:12

crimes 48:14,19

criminal 6:12 11:25 21:20 33:8,14,22
 46:20 47:10,11 54:13,15 55:8 68:20
 70:3 71:1

criminalized 76:15

cross 55:12 66:4,8

CROSS-EXAMINATION 61:12

crowd 14:8 46:6 49:14

current 10:21


D

Dabney 15:20 18:18 19:25 20:6

damage 10:1 55:16 68:1

damages 9:15

date 41:23

day 8:13,16 12:4 31:6 36:17 53:23,25
 59:5,23 60:16 64:8 66:19 73:23 75:2
 89:4

days 12:13 61:23 66:18 88:22

DC 8:7 11:3 14:14 30:15 31:3 33:7,8
 34:23 35:6 36:2 65:5 66:18 73:4,6,19
 74:17 80:21

deadline 88:25 89:4

dealing 29:8,9 84:17

decided 65:14 69:5 88:3,4

**decision** 12:10 24:14 25:17 26:21 27:23 45:20 51:9,11 54:6 57:19 67:7 69:20,25 74:17 77:1,4 85:14 86:4

**decisions** 64:7

**decline** 13:10

**defend** 30:18

**defendant** 23:7,9 86:2

**defense** 36:11 65:23,24

**define** 23:24

**defined** 30:23

**definition** 24:10 26:14 69:23

**degree** 49:2

**delay** 12:10

**delayed** 8:7

**deliver** 6:3

**denotes** 16:8 21:5 27:21

**deny** 28:8 29:12 36:3,8 52:22 81:8

**Department** 14:3,23 81:5

**depend** 66:11

**deposition** 39:6 41:7

**deprive** 81:6

**describe** 9:24

**describes** 16:25

**designed** 72:2

**desk** 78:23

**determination** 16:25 51:22 71:13

**determine** 5:10 69:8,10,17 75:24 76:1

**developing** 57:8

**Dictionary** 26:18,20

**direct** 17:6 53:6

**directed** 23:2,6,10,17

**direction** 28:5 34:12

**directly** 41:13 65:8

**disagree** 51:15,17 85:24

**disbarment** 67:15 72:16

**disciplinary** 5:7,9 17:11 21:14 27:25 48:8 65:13 78:18 87:6

**discipline** 17:16 50:9 78:3,8 82:22 85:15

**discuss** 25:24 57:11

**discussed** 25:22 76:18

**discusses** 26:6

**discussion** 38:20 44:1 84:6

**dishonest** 80:8

**dishonesty** 71:5

**dishonor** 58:4

**dismiss** 22:17 26:25 28:8,20 29:15 36:1

**disobedience** 55:24 62:3 66:6

**disposed** 7:24

**disposition** 82:25

**dispute** 18:25 62:24 72:12

**disrupt** 17:9 50:14

**disrupting** 76:15

**Disruption** 29:18

**distinct** 19:5

**distinction** 19:4

**District** 15:19 41:17 74:17

**docket** 5:7 15:16 41:15,25

**document** 19:20 20:2

**documents** 7:11

**Donald** 5:17

**door** 46:7,8 56:5

**doors** 49:13

**doorway** 58:12

**double** 57:23

**downloaded** 37:6

**draft** 24:6

**drafted** 86:8

**drag** 7:18 12:1

**drive** 14:12 36:25 39:16,21 43:18

**driving** 23:8

**drove** 45:1

**due** 48:10 71:11 79:19 80:15 81:6

**duly** 53:4

**E**

**earlier** 84:3

**earn** 8:24

**easily** 24:9

**eaten** 32:13

**eating** 32:16

**effort** 37:16 54:22

**efforts** 26:12

**election** 30:8 35:16 49:10 53:16 55:24 62:19 65:3 73:18

**elections** 73:19

**electoral** 47:3

**elevated** 45:15

**eliminate** 12:22

**embarked** 55:7

**enable** 6:18

**endeavor** 55:8

**enforce** 17:19

**engage** 55:23 62:2,5 63:21

**engaged** 45:9 46:24 54:13 65:15

**English** 24:22 26:20 70:10

**ensuing** 28:6

**enter** 35:9 49:21 58:12

**entered** 18:19 21:9 27:5 46:7 59:25 60:2

**entertain** 38:3

**entire** 7:16 41:15,25 43:6 47:11 55:1 71:1

**entitled** 10:23 19:16 29:18 30:19 52:18 85:3,4

**entry** 7:7 30:11

**equal** 71:16,21 80:20

**era** 63:16

**establishing** 87:11 88:5

**estimated** 59:3

**EVAN** 22:20

**Evans** 5:17,19,21 6:3,4,5,16 7:13,25 9:8 10:7,12,14,17,19 11:22 12:14,18 13:13,18 14:1,6,11,16 15:1,5,9 16:7,9 17:23,25 18:2,12,20,21,24 19:7,10,14, 18 20:16,18 21:3 22:6,8,10,13,16 23:23 25:1,3,13,16,24 26:3,6,8,24 27:1,7,11 28:7,9,11,16,23 29:14,23 30:1 31:23 32:2,10 33:18,24 34:3 35:25 36:13,14 37:5,10,12,14 38:5,8 39:5,18 40:8,9,13,21,25 41:2,5,9,11 42:6,14 43:9,14 44:2,8,10,13,14,18 47:12,17,25 48:3 50:5,16,23 51:5,23, 25 52:3,7,10,24 53:1,7 54:16,17,19,21 55:2,5 61:7,8,21 64:10,12,14,18,19 65:16,20 66:1,15 67:17 68:22 69:14 70:10,16,18,23 71:9,15 72:2,22 73:16 74:12,14,19 75:11,18 76:3,6,7,9,22,24 77:3,12,19,22,25 78:1,19,22 79:3,15 81:15,17 84:1,5,23 85:8,16,23 86:7, 11,17 87:15,18,20,22,25 88:15,19 89:5,15,21,22,25

**Evans'** 38:16 47:8

**evenhandedly** 17:20

**events** 8:16,17 36:17

**evidence** 14:13 16:1 17:22 18:15 20:8 22:17 27:4 35:22 36:16 39:12 43:24 44:13 46:23 47:7 52:23 61:10 64:13

**exact** 35:2 72:8

**examination** 53:6 61:20 74:20

**examine** 21:4

**examined** 53:5

**exceeds** 80:6

**exceptions** 51:17

**exclude** 86:1

**exclusion** 25:7

**exclusive** 27:21

**excuse** 9:1 53:16

**exercise** 75:6 80:2 81:3

**exercised** 69:11 79:23

**exercising** 49:19 58:1 69:12 75:6 79:17

**Exhibit** 18:7,11,15,17 20:8 43:24

**Exhibits** 20:16

**exist** 65:21

**existed** 24:8

**existing** 11:16 13:1,7

**exists** 52:12,20

**exited** 46:8

**exonerated** 10:4

**expect** 9:18 10:9 41:22 88:15 89:22, 24

**expectation** 45:16

**expects** 27:25

**expediency** 68:16

**expressed** 36:7 67:2

**expressly** 26:9,10

**extend** 17:3 88:25

**extended** 79:12

**extensive** 82:6

**eyes** 9:16 10:1

**F**

**face** 12:9 50:9 83:20

**fact** 6:11 9:24 30:21 34:14,17,20 36:20 82:7

**factors** 78:6 81:19

**facts** 8:15 30:10 33:3 43:7

**failing** 17:16

**fair** 8:21

**faith** 52:12,19 58:3 64:8 67:2,7 69:11

**fall** 26:13 48:14 50:25 71:24

**familiar** 63:15

**fashion** 57:15

**favor** 21:18

**Federal** 7:6,16 15:21 41:15 44:15,20 45:25 46:22 73:18,19 74:7 77:13

**fee** 10:21

**feel** 59:19 61:22,25 62:8,16

**feeling** 61:25

**feet** 53:25 60:11

**felon** 50:18

**felonies** 32:22 48:24 71:15,21,24 73:25 78:3 83:5,12

**felonious** 31:14 57:3,4

**felony** 6:24 7:3,7 9:9,12,15 10:5,8 11:3 15:21 16:2,12,15 20:23 25:24 27:5,19 28:3 29:9 31:12,17,21,23 32:5,13,14,18 33:1,12 34:18 42:3,22, 24,25 44:21 45:4,15,17 46:24 49:2,15, 18,25 52:16 56:20,21,22 57:5,22 59:10,13 63:20 64:5,22 65:6,7 66:9 67:22 72:24 73:4,15 74:14 75:4 76:1 77:15 80:18,19,21,22,23,25 82:21 83:2,6 85:7 86:17,23 87:5,12 88:6

**felt** 35:17 45:8 66:3

**Fielden** 77:9

**fight** 62:3

**file** 7:14

**filed** 6:15 7:23 12:3 13:9 20:19

**filing** 8:23

**final** 17:4 82:25

**finally** 63:3,4

**find** 34:10 65:20

**finding** 23:25 47:8

**finds** 70:7

**fine** 6:5 10:16 38:19 43:19 64:2 88:11

**fitness** 16:20 48:16 49:5 50:1,21 51:6 64:25 78:5

**flash** 36:25

**focus** 70:24 71:18

**focused** 71:17

**folks** 31:3 82:17

**follow** 26:5 28:4

**forgone** 86:2

**forgotten** 62:5

**forward** 13:11

**found** 7:1,6 15:20 17:17 46:23 56:2 65:23 74:8 75:1,3 76:25 85:6

**Frederick** 5:14

**free** 51:14,16 66:25 73:24 78:11 79:21

**freedom** 80:24 81:4

**Friedrich** 15:20 18:18 19:25 20:6

**front**  46:6 69:9 86:12

**full**  51:20

---
**G**
---

**Ga**  23:1,14 48:12 77:6,8 78:25 81:22

**General**  5:13

**generally**  31:5 66:15 84:6

**genuine**  18:22

**genuinely**  57:25 66:24

**Georgia**  8:25 12:8 16:2,14 21:9,11,12 22:22 23:4 24:4,5,15 27:19 29:17 31:12,17 32:8,10,11,19 33:4,5,9,14, 16,25 34:13,16 35:1 36:3 46:13 60:8 65:7,16,19,20 66:17 70:18 72:13,22 73:12,17 76:10,19 79:8,16,17,19,20 80:14,22 87:6

**get all**  78:24

**gist**  80:17

**give**  7:14 36:4 37:16,18,22 38:1 39:2 40:10 44:10 62:13

**giving**  54:22

**good**  5:2 12:4 52:12,19 58:3 64:8 67:2,7 69:11

**government**  35:5 58:6 60:10 63:9 78:11 79:22

**government's**  8:16 57:18 74:7

**gradations**  83:5 87:5

**grant**  9:5

**great**  10:1

**greater**  80:5

**grounds**  20:20,22 28:9 36:1 62:16

**guaranteed**  80:14

**guarantees**  79:20

**guess**  5:10 6:13 7:20 13:15 30:7 36:15 38:6,16 39:11 43:1 57:13 64:16 85:4

**guides**  34:5

**guilt**  19:24 23:25 26:11,15

**guilty**  7:1 15:20 16:8 17:17 18:18 21:7,8 22:3,9 28:14 70:8 85:6

---
**H**
---

**habeas**  17:2

**half**  12:5 46:2 58:20 63:4 74:4

**hallway**  49:23

**handful**  60:17 61:5

**handle**  13:6 38:1 66:20

**handles**  66:15

**happen**  56:12

**happened**  8:12 59:23 60:9 61:1,3 64:4 75:2

**happy**  89:2,19

**hard**  45:5 69:24

**harm**  10:20 11:3

**headed**  56:6 60:7

**Headnote**  23:1

**hear**  9:6 20:17 38:23 39:3 64:16

**heard**  8:8 41:22 60:14 64:19 65:9 66:2 73:3

**hearing**  6:18 12:12,14 13:11 15:25 17:4 31:19 34:25 37:17 46:23 74:2 88:22 90:10

**hearings**  68:25

**held**  12:12

**Heritage**  26:18,20

**hiding**  59:19

**high**  17:12

**hit**  30:21

**Hold**  38:11

**home**  59:19

**Honor**  6:16 10:12 14:1 18:2,12 20:18 28:10,24 29:14 35:21 36:7,13,19 38:10 39:15 40:4 47:25 64:14 70:23 77:3 78:25 84:1

**hotel**  44:24

**hour**  63:4 66:19

**House**  29:19 30:7 58:25

**hundred**  62:13

**hundreds**  59:2

---
**I**
---

**idea**  62:16 73:21 83:18

**ill**  21:9

**illegal**  29:16 32:19 35:1 63:18

**imagine**  66:21

**impair**  17:18 46:13 66:10

**impeding**  46:25

**important**  8:8 59:12,22 62:12 66:2 81:19

**impose**  72:20

**imposed**  16:9 21:7 52:11,19 74:18

**impression**  33:25 34:2

**inclined**  9:5

**include**  44:15 47:10 81:18

**included**  24:10 29:2 30:4

**includes**  26:15 79:9

**including**  6:22 25:6 71:5

**inclusion**  25:5,7

**incompetence**  48:10

**inconsistent**  67:1

**indictment**  18:8 30:2 49:25

**individual**  49:7 65:4

**individuals**  17:14 68:10

**influence**  23:8

**influencing**  46:25

**information**  27:4 84:13

**inherent**  79:7,11

**inherently**  55:20 62:1

**inquiring**  59:8

**inquiry**  73:5

**inside**  56:10

**insight**  55:18

**instance**  73:25 82:21 83:2

**insurrection**  60:14

**intact**  67:19

**intend**  13:23 28:13 41:19

**intended** 7:9 25:8 26:13

**intends** 6:11 16:21 17:5 20:10 75:6

**intent** 63:7 86:1

**interactions** 14:11

**interest** 82:14

**interested** 44:20 45:24 84:12

**interesting** 8:15 35:19

**interfered** 34:25

**interference** 71:6 78:12 79:22

**interfering** 30:6 31:8

**interpret** 24:20 25:18,21,22 26:3 49:1 77:19 85:20,21

**interpretation** 22:21 31:1 85:11

**interpreted** 21:18 48:7 70:13,21 72:3 83:4,5

**interpreting** 24:15

**interrupt** 22:10 65:11

**introduce** 17:22

**invoke** 13:20,21

**involve** 19:11 22:2 25:11,15 48:15 50:1 51:1 63:19 86:18,19

**involved** 8:18

**involvement** 8:17 15:22

**Involves** 25:16

**involving** 16:18 42:4 72:23 80:8 83:3

**issue** 9:11 12:22 25:25 26:1,14 30:25 33:11,24 34:1,5,17,22 42:2,17 47:23 49:4,17 51:10 68:17 69:5,8,16 71:20 72:16 80:9,10 83:14 87:20

**issued** 19:24 89:17

**issues** 11:24 47:16,21 69:2

**issuing** 87:13

J

**jail** 66:17

**jails** 66:17

**January** 7:8 8:12 14:9 15:22 30:9 40:1 49:11 53:12,15 57:8 61:1,16 66:13

**Jenny** 5:12

**jeopardize** 79:5

**job** 69:7,10

**John** 81:23

**Jones** 23:13

**Jr** 5:6 53:3,10

**judge** 7:6 10:15 15:19 18:18 19:24 20:6 27:9 30:15 44:20 45:5,25 46:23 59:8,15 63:2 70:7 74:17,18,25 75:1 85:13 86:3

**judge's** 27:23 28:14 34:23 69:25 85:13,14 86:4

**judged** 32:24

**judgement** 32:3

**judgment** 18:25 19:2,6,24 20:6 26:10,15 27:6 28:14 29:9 85:13

**judgments** 26:13

**judicial** 69:20

**juncture** 83:21 84:18,22

**juries** 24:2

**jurisdiction** 16:11 21:11 31:21,25 32:23,25 69:25

**jurisdictional** 34:5

**jurisdictions** 34:15 65:17

**juror** 56:23

**jury** 19:8,11,16 22:8,24 23:12,25 26:21 74:25 86:2

**justice** 14:4,23 71:7 78:14 79:3 81:5

K

**kind** 80:19

**knew** 56:25

L

**lack** 45:25 48:19 71:3 75:13 85:4

**lacks** 78:7

**lain** 60:11

**language** 21:19 24:22 26:20 28:12 89:13

**laptop** 40:18,19,24 41:3

**Larae** 5:3

**lastly** 21:9 78:2

**late** 29:5

**law** 16:20,25 17:13,18,19 20:21 21:12 22:22 23:4 24:4 32:9 33:4,16,25 34:5 46:13 48:5,10,17,20,23 49:5 50:1,21 51:6 52:11,19 55:11 57:7 65:1,8 67:8 70:18 71:1,4 72:5 75:12,15 77:20 78:5 79:8,25 82:17 86:21

**laws** 21:20 32:6,25 34:6

**lawyer** 11:6 16:15,17 32:11 34:8,9 48:16 50:3,4 51:6 52:10,18 55:9 58:7 65:1 68:6,11,12 70:3,25 71:2 73:12 79:5 81:9

**lawyer's** 16:20 79:5

**lawyers** 79:18

**leading** 49:25

**learn** 7:6 8:15

**leave** 44:3

**leaving** 31:6

**led** 43:8

**leeway** 54:22

**left** 13:8 24:7 44:25 59:18 62:4 66:20

**legal** 17:10 72:4

**legitimate** 82:14

**level** 17:1 43:3

**license** 20:21 30:18,19 55:11,13 62:9, 13 67:19 71:23 72:10 75:12 86:18

**licenses** 62:14

**lies** 61:3

**light** 48:7 63:9

**lightly** 80:16

**limited** 21:24 36:21 50:25 73:6

**limits** 68:13

**lines** 55:12,14 66:4

**listened** 43:15 47:7

**lists** 28:24

**litigate** 43:2

**litigated** 8:13 57:3

CALHOUN, W. MCCALL on 06/21/2023                                      Index: live..natural

**live** 73:17

**living** 8:24

**long** 12:10 30:12 37:10,11 53:25
58:16 79:23 80:14

**longer** 12:23 41:12

**looked** 39:16 69:21

**lose** 11:5 68:2,6

**losing** 8:24

**lost** 54:3

**lot** 59:22 60:9,24

**lots** 71:24

**M**

**made** 14:16 21:16 23:9 29:16 32:19
35:1,4 46:14 47:7 50:2 54:5,11 59:18
64:8 87:22,25

**maintain** 17:12

**maintains** 11:2

**make** 13:2 14:22 32:17 40:13 51:11,
12 54:23 56:3 67:7 76:5 83:10 86:3
88:21

**making** 46:5,16 54:19 71:13

**man** 21:23 73:3 74:3,12 80:22 81:12

**manner** 90:7

**March** 18:19

**Master** 5:3 10:16 15:19 43:25 71:18

**material** 14:19 70:25 86:18

**matter** 5:5,7,9 8:2 15:17 17:4 19:10,
25 23:14,16 30:16 41:22 45:7 48:5,11
54:2 63:10 64:24 67:18 70:2 78:15,18,
20,22 79:6 81:22 83:1

**matters** 5:24 6:1 17:3 50:25 82:15
83:6

**Mccall** 5:5,18 10:20 11:2,10 15:17
31:4,13 53:1,3,10

**meaning** 21:1 22:23 23:11 24:3,17,19
27:14 64:23

**means** 16:7 25:8 27:12 40:19,21
42:16

**meant** 85:16

**media** 8:14 61:1 63:7,10

**meet** 33:8 65:4 67:9,10 88:24

**meeting** 76:16

**member** 16:1

**Members** 17:12

**mentally** 21:8

**mention** 26:10

**mentioned** 22:20 36:15 69:7 76:9

**mentions** 26:9

**mere** 63:5

**met** 54:4 87:10 88:4

**Miller** 57:9

**million** 60:16 73:22

**millions** 56:15

**mind** 42:2 59:22 87:23 88:1

**mindful** 55:10

**minimum** 12:4 42:23

**minute** 39:9,19,23 40:4 41:2 43:10,
13,19 44:5,6 46:2 74:5

**minutes** 14:7 31:7 37:12,21,22 38:7
39:17 43:19 58:19 81:12

**misconduct** 48:4

**misdemeanor** 7:1,9 9:14 16:18
31:16,17 32:20 33:2 35:2 36:3 42:4
43:2 45:5,14,19 56:17 66:6 76:11 83:3
87:2 88:6

**misdemeanors** 10:6 15:21 16:3 42:7
43:3 48:24 83:12

**misinformation** 60:25

**misperception** 60:25

**misrepresentation** 60:25

**Mister** 10:14 54:21 71:9

**mistrial** 23:11

**mitigation** 67:16,18

**Mittelman** 5:12,25 6:7,9 7:10 9:7,22
13:17 14:21 15:13,14 17:25 18:6,16
19:23 20:9 27:15,17 29:21,24 35:21
36:6,19 38:10,12,13,24 39:15 40:9
42:11 43:16,17 46:19 54:12,14,17
61:11,13,18 81:24 82:2,3 86:22 87:8
88:20 89:18 90:3,9

**model** 34:16

**moment** 6:22 34:24 46:16 52:24

**montage** 39:25 41:12

**months** 66:17

**Moore** 5:2,3,15,19,22 6:6,8,13 7:20
9:3,8,21 10:14,15,16,17,18 11:21
12:17 13:10,14,17,21 14:5,10,15,25
15:4,7,12,15 17:24 18:5,13,20,23
19:3,9,12,15,22 20:4,15 21:2 22:5,7,
10,14,19 23:22 24:24 25:2,9,14,20
26:2,5,7,23 27:2,9,10,15 28:7,11,17
29:12,25 31:18,24 32:4,21 33:18,21
34:1 35:24 36:8,14 37:10,13,15 38:6,
9,11,19,21 39:8 40:6,16,24 41:1,6,9,
14,24 42:9,12,13,18 43:12,15,21 44:4,
9,12,17 46:17,19 47:12,18 48:2 50:5,
17 51:4,7,24 52:2,5,8,21,25 53:2
54:12,21 55:4 61:7,9,19 64:11,15
65:11,19,25 66:14 67:11 68:8,23
69:16 70:12,17,20 71:8,11 72:1,7
73:10 74:11,13,16,22 75:17,21 76:5,8,
17,23 77:2,7,18,21,24 78:13,17,20
79:2,14 81:14,16,20 82:1,23 83:25
84:4,12 85:2,9,18,24 86:10,13,22
87:7,9,17,19,24 88:2,17 89:5,16,20,23
90:1,5

**moral** 16:18 42:4,16 43:3 48:15,22
49:3,18 51:1 63:19 64:24 75:13 78:3
83:3 86:19

**morning** 5:2

**motion** 6:23 23:9,11 28:8 29:13 36:1,
9

**motions** 6:21 7:22,24 8:3,8,23 11:10
12:2,21 13:4 36:10,12

**move** 13:11 22:16 29:14 35:3,4 36:10

**moves** 18:7,10,16

**moving** 7:16 26:24 36:17

**murder** 71:22

**mystery** 74:4

**N**

**Nalley** 35:20 53:22,23 54:5 56:3 60:7

**Nancy** 35:11

**narrow** 85:11,22

**narrowly** 70:13,21

**natural** 24:21

**nature** 82:24

**necessarily** 17:18

**nolo** 21:7 22:4

**normal** 21:19 26:18

**note** 23:16 43:22

**notebook** 6:2 9:23 16:6 17:7 18:9

**noted** 51:8 81:20 86:14

**notice** 6:14 7:23 8:23 13:8 45:12 49:15 76:12

**notified** 39:18

**number** 5:6,7 15:16 48:17 50:24 52:17 64:21 66:12 70:24 72:6

**O**

**O.C.G.A.** 29:18 30:2 76:12,14

**object** 6:25 7:10 10:10 14:24 18:21, 25 35:21

**objecting** 19:18

**objection** 19:23 40:5,6 43:23

**objections** 18:12 37:4 38:4 39:3 51:17

**objectively** 62:6

**obligated** 20:12

**obligation** 52:11,12,19,20

**observe** 79:4

**obstructing** 46:25

**obtained** 14:19

**occur** 73:19

**occurred** 33:13

**occurring** 32:23

**off-the-record** 38:20 44:1

**Offender** 21:10

**offense** 17:17 32:1 33:14 36:2 70:3 73:14 76:19

**offenses** 32:23 33:5,17 71:3,5 88:6

**offer** 35:22

**office** 14:14,19 35:11 38:15

**officer** 57:14

**official** 30:6 40:11 46:25

**oftentimes** 34:8

**Oklahoma** 66:18

**one's** 79:21 83:17

**ongoing** 34:25

**open** 46:7,9 49:13 58:12

**opened** 8:1

**opening** 15:15 17:23,25

**opinion** 12:6 47:20 85:14

**opportunities** 67:22

**opportunity** 12:21 14:22 36:5 37:2, 18,20,23 38:2,14,15 39:2 69:18 74:24 85:19,20

**opted** 19:17 75:1 86:3

**order** 11:9 57:4 69:2

**orderly** 13:2

**ordinary** 24:18,21

**origin** 38:14

**outcome** 9:20 10:3 16:24 20:13 27:24 36:23 83:9,24

**outweigh** 68:4

**overrule** 51:22

**overt** 46:1

**overturn** 59:15

**P**

**p.m.** 90:10

**Pacer** 7:17 41:19

**paid** 10:21 11:6,13 68:2

**Pakistan** 32:12,16

**Palazzola** 78:15,21,23,24 81:23,24

**paper** 67:24

**paralegal** 14:18

**pardon** 87:24

**part** 41:21 42:7,11 43:11 54:1 60:13 66:6 70:25 73:10,13

**partially** 42:17

**participated** 49:9

**participating** 35:15 52:14

**participation** 49:6 65:2

**parties** 89:2

**parties'** 39:12

**party** 88:3

**pass** 35:11

**path** 54:10

**Paula** 5:14

**pay** 64:2

**peaceful** 62:6,22 63:22

**peacefully** 62:19

**peers** 74:25

**Pelosi's** 35:11

**pending** 7:22 9:19 10:3,10 16:24 17:21 20:13 36:22 42:24 51:12 83:9, 23

**people** 35:10 44:2 46:7,9 56:15 58:21 59:4,10,24 60:2,5,16 61:4,5 66:16 68:5 73:22 79:18,20 81:8

**period** 68:24

**person** 44:22 45:18 49:8 56:24 62:1 72:9

**personally** 71:1

**persons** 14:12 59:2

**persuaded** 33:9 70:8

**pertain** 8:17

**pertaining** 42:15

**pertains** 84:13

**peruse** 37:23

**Peterson** 79:3

**Peterson's** 78:14

**petition** 5:8 15:24 20:19,20,22 26:25 36:1 42:12 82:10

**petitioned** 15:18 72:10

**photographs** 46:5

**physical** 41:18 68:5

**pictures** 74:8

**place** 10:9 46:21,22 47:8 49:22 73:18

**plain** 24:18 28:12

**play** 37:14 40:17 43:9 78:6

**playing** 40:20,22

**plea** 21:7,9 22:3

**plead** 22:3,4

**pleas** 26:9

**plenty** 67:21

**point** 10:6,8 16:12 20:11 21:4 26:24 28:19 34:11 38:25 39:22 46:11 56:23 58:2 65:8 67:5,13,14 69:19 71:14 82:9,20 83:13 86:15,23 89:6

**pointing** 30:24

**points** 69:4

**police** 57:14

**political** 35:16 45:9 49:9 55:15,17 62:6 63:15 65:3 66:7

**politically** 8:13

**Poole** 23:5

**pork** 32:13,16

**portion** 9:11

**position** 9:6 27:16 34:10 46:18

**possibly** 15:8,9 27:23

**posted** 63:10

**posts** 63:7

**posttrial** 6:21 7:22,24 8:3,22 11:10 12:1,21 13:3

**power** 80:6

**practice** 16:20 17:9 46:13 48:10,16, 20,23 49:5 50:1,13,21 51:6 65:1 71:4 75:15 78:5 79:7,25 86:20

**practices** 34:9

**practicing** 82:17

**precedent** 58:6

**precludes** 34:19

**preliminary** 5:23 6:1 23:13,16

**premature** 71:13 84:20,22

**prematurely** 11:14

**prepared** 6:22 14:3

**presence** 40:1 63:5

**present** 5:11,14,20 53:11 57:6

**presentation** 82:6

**presented** 72:8

**presenting** 90:6

**presidency** 30:8

**preview** 7:14

**previously** 56:1 65:14

**primary** 48:7

**principle** 11:4 72:25 84:6

**principles** 11:18 81:11

**print** 7:18

**prior** 66:13

**private** 49:7 65:4

**problem** 17:11

**problems** 53:16

**proceed** 5:23 8:9 13:15 15:13 18:4

**proceeding** 22:17 30:6 42:1 47:1,22

**proceedings** 8:21 41:16 44:15 48:8 67:25

**process** 47:18,19 67:14 68:18 79:19 80:15 81:6

**profession** 9:16 10:1 11:4 17:10 78:11 79:21 81:7

**professional** 16:4,14,17 24:5 32:11 34:11,12 72:6 90:7

**professionally** 71:2

**progress** 59:17

**prohibit** 79:16

**proof** 36:11

**property** 55:16

**proposed** 89:2,11

**propriety** 83:11

**prosecute** 8:3 11:10 12:21 57:19

**prosecuted** 12:19

**prosecuting** 58:7

**prosecution** 35:6

**prosecutorial** 45:20

**protect** 48:8 79:24

**protected** 45:9,10 63:14,24 66:25 73:24

**protection** 80:1,12

**protest** 35:16 45:9 49:9 53:15 55:16, 17,24 62:19 65:3 66:7 69:12 72:23 73:17

**protesting** 62:19 63:15

**protests** 62:6 63:22

**provide** 12:12

**provided** 17:7

**provisions** 79:15 87:2

**public** 7:17 9:17 10:2 17:9,14,18 31:5 48:9 50:9,14,16,17,18,19,21 76:15 79:24 80:1,12 82:16

**publicly** 58:23

**punish** 30:25 66:23 81:12

**punished** 66:22

**punishment** 21:14 34:19 84:23,25

**purpose** 27:13 36:21 47:14 48:7 55:23 75:22,24,25

**purposes** 20:25 29:1 31:19 47:22 72:4 85:15 87:6

**pursuant** 5:8

**put** 31:1 74:9

---

### Q

**qualified** 48:9

**qualify** 86:5

**question** 6:14 7:21 15:5 25:11 28:2 31:20 36:19 37:1,15 39:11 40:3 48:21 59:11 61:14 62:12 88:17 89:14,15,21, 24

**questioned** 63:1

**quick** 76:5

**quickly** 69:6

**quote** 78:14

---

### R

**raise** 37:3 46:3

**raised** 83:14

**reach** 38:24 80:6

**reaching** 79:10

**read** 24:20 27:3 70:10 77:5 87:16

**reading** 85:22

**ready** 5:23 13:14

**real** 22:22

**realize** 51:10

**reason** 9:12 17:20 20:3 33:15 42:19, 24 47:10 72:3 75:9 82:13

**reasonable** 24:21 80:3,18

**reasons** 52:13,14 73:6 74:20

**receipt** 27:4 88:24

**receiving** 16:1

**recess** 38:7,22,23 39:6,9 41:7

**recessed** 90:10

**recognized** 46:12

**recommend** 88:7

**recommendation** 42:20 51:9,13,16, 18 69:9 81:18 84:24 87:13,21 88:9,21 89:10,12,17

**recommended** 72:11

**record** 7:17 39:10 41:21 43:6,11,23 44:5,16 51:8 53:9 77:4,8,25 81:21 86:15 88:12

**recorded** 51:8,12

**recording** 36:16 37:11 39:14

**redirect** 61:19,20

**reevaluate** 10:6

**reference** 72:4 87:2

**referred** 84:3

**reflect** 7:15 88:12

**reflected** 68:24

**reflecting** 20:5

**refuse** 52:10,18

**regard** 42:15 49:2 78:3 80:19

**regulate** 79:7 80:2

**regulating** 79:24

**regulation** 80:1,17

**regulations** 80:5

**rehearing** 6:23

**relate** 46:15

**related** 15:22 25:6 36:21,25 37:4 46:20 82:6 83:11

**relates** 16:19 86:20

**relating** 48:16 51:5 64:25

**relation** 78:5

**relationship** 82:14

**relevance** 25:19 36:20 37:1,9,16 39:14 40:3 43:5

**relevant** 14:17 22:21 41:25 48:20 51:21 52:14 71:4 76:20 77:11 82:5 83:21 84:7 87:3

**relief** 13:4

**relitigate** 30:16 43:7 47:15,20 54:25

**relitigating** 69:2 73:8

**relitigation** 54:15

**rely** 50:10 82:18

**remainder** 39:19

**remains** 64:16

**remarks** 17:23 64:16

**remember** 42:18

**remorse** 61:15,17,23,25 62:8,16

**removed** 10:5

**rendered** 57:18

**repeatedly** 65:22

**report** 51:18 81:17 84:11 87:20 88:16 89:10,11,13,17,22,24

**reported** 42:20 51:9,16 69:8 87:13

**reporter** 40:10 44:11 88:12

**reports** 89:2

**represent** 11:13 13:3 54:23 66:10

**representation** 9:16 10:22 72:5

**Representatives** 29:19 30:7

**representing** 49:8

**request** 13:11 35:23

**requesting** 16:23

**require** 49:2 80:16

**required** 13:24 48:24

**requires** 15:24 61:25

**research** 84:9

**reserve** 18:3

**resolve** 8:22

**resolved** 56:17

**respect** 17:14 35:25 71:11 74:16

**respected** 17:13

**respond** 35:23

**responded** 45:25

**respondent** 5:16 12:8 44:7 49:5

**respondent's** 36:11 43:24

**response** 27:16 36:5,18

**responsibility** 79:24

**responsible** 60:20,21

**resting** 20:16

**restraint** 78:10

**rests** 20:11

**resubmit** 84:10

**result** 24:11 29:2

**resulted** 72:23 82:21

**resumed** 39:7 41:8

**retirement** 80:8,11

**return** 17:4

**reus** 57:1

**reveal** 30:11

**review** 28:17,18 37:20,22 38:2,22 39:1,12 41:4 45:7

**reviewed** 38:3 44:5

**reviewing** 37:19 89:9

**reviews** 43:25

**revoked** 71:24

**rid** 67:22

**rights** 11:17 49:20 56:14 58:1 62:3 63:16 69:13 80:15 81:6

**riot** 15:22 55:18,19

**rise** 43:3

**risk** 73:10,13 80:5

**rode** 35:20 44:23 53:21

**room** 44:24 50:4

**ropes** 31:5 35:12

**rubric** 48:15 51:1

**rule** 13:20,22 15:24 16:13 20:21,24,25
21:4 22:12 26:8 27:3,13,14,25 28:21
48:3,4,13,18 49:1 50:23 51:2 52:3,6,
15 64:21 67:6 69:4,15 70:24 71:16
79:10 86:23 87:1 88:20,21 89:3

**ruled** 48:6 77:10

**rules** 11:23 12:8,12 16:4,7,14,17
21:13,15,17,19,21,22,25 22:20 23:24
24:5,8,15,17 25:18 26:1,4 27:12,19
29:1,10 30:20,23,25 32:11 33:6,19
34:4,10,11,12,16,21 48:6,21 55:3
64:23 67:4 68:15,17,19 70:6 72:2,3,6
82:12

**ruling** 34:23 36:25 37:8 85:14 88:10,
13

**rulings** 6:20

_____

**S**
_____

**sanctioning** 78:2

**scenario** 72:9

**seated** 53:8

**seconds** 39:17 43:19

**secretary** 37:6 38:16

**section** 16:5 21:14,21 27:20 34:7

**select** 68:11

**selected** 11:7

**Senate** 29:19 58:25

**send** 84:2

**sentence** 16:9 21:6

**sentenced** 9:2 12:2 16:11

**sequestration** 13:22

**series** 9:18,23

**set** 21:1 27:14 47:3 58:6

**settled** 62:23

**shell** 89:13

**short** 46:2

**shouting** 44:2

**show** 15:25 20:12 59:13 72:18

**showed** 63:7

**shown** 14:21

**shows** 14:6 31:10 64:24 75:13,15

**sic** 11:2 23:1 26:9

**side** 90:7

**sight** 54:3

**significant** 45:6 82:24

**similar** 21:10 76:25 84:17

**simply** 8:1 12:19 25:17 42:3 66:22
76:15

**single** 35:7 74:5

**singular** 73:21

**situation** 83:17

**situations** 12:11 70:1 86:1

**slowed** 8:6

**social** 63:7,10

**sole** 20:22

**solemn** 79:23

**solitary** 61:23 66:19

**sooner** 38:9

**sort** 55:25 65:15 82:22

**sought** 13:4 74:8

**sounds** 46:19

**speak** 9:4 13:23 29:10 33:19 34:4
46:4 76:4

**speaker** 24:21

**speaking** 31:7

**Special** 5:3 10:16 15:19 43:25 71:18

**species** 73:23

**specific** 25:5 28:24,25

**specifically** 25:21 28:19 29:17 41:20
47:2 89:3

**speech** 45:11 66:25 73:24 80:24

**spending** 66:16

**spent** 39:19 58:20 61:23

**stage** 12:20

**stairs** 35:10 56:2,4,6,7,8,9

**stake** 56:15

**standard** 17:13 25:3 33:10 57:24
67:10,12

**standards** 25:17 31:13,25 32:24 33:9
65:5

**started** 12:15

**starting** 9:23

**starts** 84:24,25

**state** 5:6,8,11,13 7:2 9:6 11:1,17
13:16 15:16,17 18:3,4,7,10,15,16,17
19:1,19 20:8,11,15,19 22:25 23:5,13
26:25 27:16 30:20,23 32:6,7,15 33:13
34:9,11,18 36:4,18 37:19,24 39:16
40:7 43:23 48:6 50:11 53:8 58:5 62:8,
10 64:17 65:14 66:23 68:6 70:6 72:7
73:11,13,15 77:8,9 81:5 82:9,13,17
85:3 87:10 88:4 90:3

**State's** 67:23

**stated** 20:20 24:9

**statement** 15:15 18:1 32:17

**statements** 67:9

**States** 17:2 19:25 47:4 65:23,24 84:7,
14

**status** 39:11

**statute** 21:10 25:5 31:15 65:8 76:10,
12,20,25 77:14,17

**statutes** 57:17

**statutory** 21:19 22:21 24:12 25:4

**stayed** 44:24 58:23

**staying** 35:12

**step** 13:24 35:25 63:25 64:1,12

**sticking** 55:3

**stipulate** 6:11

**stipulated** 16:22

**stipulation** 6:10,14 20:10

**stolen** 35:17

**Stoner** 9:24 17:6 28:5 50:12 82:18,19
83:13,14

**stood** 16:10 63:5

**stop** 86:24

**stopped** 30:12

**stretch** 80:5 86:6

**strictly** 21:17

**stronger** 26:12

**stuff** 60:9

**subject** 37:8

**submit** 7:12 65:18

**submitted** 37:24 50:12 69:22

**Subsection** 20:25 54:20

**substantive** 33:4

**substitute** 32:2

**sufficient** 57:15

**suggest** 68:19

**superfluous** 57:18

**Supreme** 15:18 17:2 24:14 28:13 45:6,22 46:14 48:6 51:13,14 59:14 70:14,22 72:14,18 75:23 76:13,24 77:13,23 78:7 81:22 84:25 85:12 87:21 88:7 89:8

**suspend** 72:16 84:24

**suspended** 9:19 10:3,10 16:24 20:13 51:12 75:12 88:8

**suspension** 17:21 20:21 36:22 42:20,21 72:10,17,20 83:9,23 84:17, 19

**swiftly** 17:16

**sworn** 53:5

**system** 8:7 87:6

---

T

**tab** 18:9

**tag** 57:22

**takes** 11:14 37:21 62:14

**taking** 49:22

**talk** 25:21

**talking** 11:18 24:4 33:5 35:3 44:19 55:20 68:14 72:16 77:22

**talks** 25:18 89:3

**tape** 14:3 15:10 31:10 35:4 43:10,13 44:8 50:2 73:2 74:5,6,10

**team** 56:18

**telling** 88:3

**ten** 53:25

**tend** 47:13

**tender** 36:16

**tendered** 35:5 44:6

**tendering** 20:16

**tenet** 25:3

**term** 22:23 24:1 30:22 64:22

**termination** 17:1

**terminology** 16:5 27:20

**terms** 11:22 21:24 70:5 71:13 84:22

**terrace** 56:4

**testified** 53:5 55:22 56:1

**testify** 13:23

**testimony** 7:11 35:22 73:3

**text** 24:18

**thing** 25:6 47:13 60:14 73:23 79:4

**things** 9:7 17:3 22:11 25:5,7 28:25 55:19,22 57:19 59:23 61:5,6 75:20 83:21

**thinking** 58:8

**thought** 29:4 56:8 64:21 66:24

**thoughts** 71:19

**thousand** 59:7

**thousands** 59:2

**threaten** 63:11

**threshold** 66:5

**throw** 81:11

**thumb** 14:12 39:16,20 43:18

**ticket** 63:17

**time** 7:21 9:5 12:25 13:8 16:22 18:6 28:1 38:20,25 39:19 44:1,23 45:5 49:14,16 51:19 58:20 67:3,14 68:24 69:24 70:5 86:24 87:17 88:23

**timeline** 56:21

**today** 9:13 10:23 13:12 33:6 36:21

41:20 42:19 50:15 51:10,20,22 54:24 68:15 69:8 75:9,22,24,25 76:21 82:4

**told** 13:18 16:9 37:5

**top** 56:4

**touch** 31:9

**Touchton** 77:9

**town** 60:10

**trained** 55:10

**trampled** 11:16

**transcript** 40:11 47:11,14,15 51:20 74:21 88:18,24 89:6,8,9

**transcripts** 41:16 44:15

**transition** 13:2

**traveled** 53:20

**tread** 80:16

**treat** 76:11

**trespass** 56:13

**trespassers** 57:22

**trial** 6:23 19:13,14,16,17 22:2 23:2,4, 5,7,17,19 24:7,11 25:12 26:11,16,21 27:24 28:3 29:1 47:11 51:21 55:23 59:15 70:4

**tribunal** 8:1 10:19

**trouble** 81:13

**troubles** 7:2

**troubling** 9:8,10

**trust** 71:6 82:16

**turn** 33:3

**turned** 64:5

**turpitude** 16:19 42:5,16 43:4 48:15, 22 49:3,19 51:1 63:19 64:24 75:13 78:4 83:4 86:19

**type** 56:13

**typically** 72:24

---

U

**U.S.C.** 47:5 57:10

**Uh-huh** 22:13 29:23 40:25 52:7

**unable** 66:20

CALHOUN, W. MCCALL on 06/21/2023

Index: uncertain..York

**uncertain** 8:20

**unconstitutional** 77:1,17

**underlying** 16:19 33:16 43:7 47:15 48:22 50:6,8,19 51:2 54:15 64:25 69:2 74:23 75:14,24 78:4 82:5,24 85:5

**understand** 45:22 68:9 69:19 84:21 85:2,9 86:13,23

**understanding** 32:21

**unfit** 75:15

**unique** 81:2

**United** 17:2 19:25 47:4

**unprofessional** 33:19,22 48:10

**unreasonable** 78:9,11 79:22

**unrelated** 65:2,3

**unworthy** 27:24

**V**

**vacillated** 82:4

**valid** 52:12,20 65:24

**vandalism** 55:16

**Verden** 53:22

**verdict** 16:8 18:18 19:1,2,5,7,20,21 21:8 22:2,9,23,24 23:3,6,10,17,18 24:1,3 26:15,19,20 69:23 70:13 85:8, 15

**verdicts** 26:9

**verify** 13:18 37:8 38:14

**version** 43:10

**versus** 20:1 22:25 23:5,13 77:9

**vests** 79:8

**video** 39:16,19,23,25 40:5,10 41:10 43:25 44:6 46:2 58:17 62:24,25

**view** 15:11 24:19 84:14

**violate** 67:8

**violated** 73:1

**violation** 16:14,16 27:18 30:20 31:15 47:5 52:15 82:11 83:22

**violations** 82:10

**violence** 63:21 71:5

**violent** 60:15,18

**voice** 46:3

**voluntarily** 72:9

**vote** 47:3 56:16 62:13

**W**

**wait** 35:10 88:18 89:6

**walk** 35:9,13,18 54:6 64:1

**walked** 49:13

**walking** 31:4 46:5,9 57:16 81:12

**walks** 35:11

**wanted** 13:18 57:21 79:10

**wanting** 36:15

**warrant** 87:13

**Washington** 59:23 82:8

**William** 20:1 53:10

**willingness** 17:19

**window** 13:8 58:10

**witnesses** 13:19,20,22 14:2 15:7,8 61:10 64:13

**Woodham** 22:25

**word** 24:3 26:19 30:22 85:5

**words** 54:2 85:11

**work** 78:10 79:6,21 80:14 81:7

**worry** 42:6

**worse** 74:9

**worst** 56:12

**worth** 40:5

**writes** 79:4

**wrong** 30:16 56:12 58:8 62:2,5 75:8, 22 82:7

**Y**

**year** 12:5 24:15 57:22

**years** 12:5

**York** 34:15,18,21 65:17 84:4