# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### WASHINGTON, D.C.

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Criminal Case No.: 1:21-CR-00116-DLF** |
| **v.** | ) | |
| | ) | **Judge: The Honorable Dabney L. Friedrich** |
| **CALHOUN, William McCall, Jr.** | ) | |
| *Defendant.* | ) | |

---

## DEFENDANT'S SENTENCING MEMORANDUM AND

## MOTION FOR DOWNWARD VARIANCE[1]

On March 20, 2023, Defendant, William McCall Calhoun, Jr., was found guilty of

all charges in the Superseding Indictment (ECF Document #83, January 12, 2022),

namely:

Count one charging Mr. Calhoun with obstruction of an official proceeding, in

violation of 18 U.S.C. § 1512(c)(2); count two charging him with entering and remaining in a

restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); count three charging him

with disorderly and disruptive conduct in a restricted building or grounds, in violation of 18

U.S.C. § 1752(a)(2); count four charging him with disorderly conduct in a Capitol Building, in

violation of 40 U.S.C. § 5104(e)(2)(D); and count five charging him with parading

demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

---

[1] Defendant addresses his objections to the presentence report in a separate pleading previously filed with the Court through ECF and emailed to counsel for the Government.

**Sentencing Memorandum**

This memorandum is being submitted on behalf of Mr. Calhoun to supplement his argument at his upcoming sentencing hearing, and in an effort to present mitigating factors to the Court to assist in determining a sentence that is "sufficient, but not greater than necessary" pursuant to the purposes set out in 18 U.S.C. § 3553(a).

It is anticipated that the Government's sentencing memorandum will exhaustingly outline a compilation of the events that took place at the United States Capitol Building on January 6, 2021. Much of which, Mr. Calhoun wasn't even present for. It is also anticipated that the Government's sentencing memorandum, much like their June 7, 2023 letter to the United States Probation Officer, Aidee Gavito, will exhaustingly reiterate Mr. Calhoun's pre-offense social media posts. Many of which had nothing to do with his much later plans to attend the Trump Stop the Steal rally on January 6, 2021, in Washington, D.C. Lastly, it is anticipated that the Government, as presented in their June 7, 2023 letter to the United States Probation Officer, will seek an upward departure under the principle in U.S.S.G. § 3A1.4, cmt. n. 4.

Undersigned Counsel respectfully suggests that a time served sentence is appropriate in this case. Not only did Mr. Calhoun already serve almost two months in jail under onerous solitary confinement conditions (January 15, 2021 – March 10, 2021), but he also spent almost 4 months under a home detention condition of release (March 10, 2021 – July 8, 2021), and almost nine months in the custody of his sister, living in her

home in Macon, GA (March 10, 2021 – December 2, 2021). Additionally, Mr. Calhoun remained under location monitoring for almost thirteen months (March 10, 2021 – April 4, 2022). Even still, remaining under a 10 PM – 6 AM curfew requirement until July 11, 2022.

Since having been indicted, Mr. Calhoun has suffered from widespread media defamation, death threats and harassment, his personal and business bank accounts (including his IOLTA account) were involuntarily closed, his law practice went from having a five star google review to two and a half stars due to bad reviews from people he had no prior relationship with and never represented, attorney's fees and litigation expenses, lost time and lost income, and most devastatingly, the loss of his bar license, which is his livelihood.

Mr. Calhoun's own co-defendant, Mr. Nalley, who planned the trip, invited Mr. Calhoun to join him, and even reserved and paid for the hotel, was offered a Misdemeanor plea by the Government, with an imposed sentence of two-years' probation and sixty hours of community service. Mr. Nalley and Mr. Calhoun entered and exited the Capitol grounds and building at essentially the same time and were right with one another while inside the Capitol Building. Their actions and conduct were the same, yet Mr. Calhoun is being selectively prosecuted far beyond Mr. Nalley's prosecution.

I.    **History and Characteristics of the Defendant**

Mr. Calhoun is a sixty-year-old male from Americus, GA. He is the oldest of four children born to William McCall Calhoun and Joann Louise LeSeur. Both of his parents are passed. He has three younger sisters, all of which are attending his upcoming sentencing hearing. He is married to Tina Calhoun, and he has one child, a daughter, from a previous marriage.

Mr. Calhoun is an attorney and currently barred in the state of Georgia, though he is in the state bar process of having his license suspended and/or revoked as a result of his recent convictions in this Court.

Mr. Calhoun is a lifelong resident of Georgia, and has committed much of his adult life representing individuals that have gone through what is likely the lowest point in their lives, much like what he has been going through since his arrest in January of 2021 as a result of his presence on the Capitol grounds and in the Capitol building on January 6, 2021. In his spare time he likes to play music, do woodworking, metal working and blacksmithing.

## II.   <u>What William Calhoun Did and Did Not Do on January 6, 2021</u>

In imposing a sentence that is "sufficient but not greater than necessary to comply with the purposes" of 18 U.S.C. § 3553, it is imperative that a distinction be made between what Mr. William McCall Calhoun, Jr. did, and what he did not do in relation to the events of January 6, 2021.

A. **What He Did Do**

Mr. Calhoun traveled to Washington, D.C. on January 5, 2021, with his friend and

co-defendant, Mr. Nalley. Mr. Nalley invited Mr. Calhoun to join him, Mr. Nalley drove

his own vehicle to Washington, D.C., and Mr. Nalley reserved and paid for the hotel

room the two stayed at. They both went to the Trump Stop the Steal rally in the morning

of January 6, 2021, and at the conclusion of the rally, and at the bequest of Trump, they

both casually walked to the Capitol Building. Mr. Calhoun was aware that Vice President

Mike Pence was planning to certify the 2020 Presidential Election at some point that day,

and he was aware that many people in attendance of the Trump Stop the Steal rally were

upset that Vice President Pence was going to do so.

Upon their arrival to the Capitol grounds, Mr. Calhoun observed thousands of

people on the grounds of the Capitol, along with some disheveled and out of place bike

racks, not in an end to end manner intended to block people from entering, but instead

there were many openings between the bike racks, where sections had been removed,

which appeared to Mr. Calhoun as to be openings in which the people had entered the

Capitol grounds. He and Mr. Nalley entered the grounds through one such opening.

He and Mr. Nalley remained on the grounds of the building for a period of time,

and then eventually they made their way to the steps of the Capitol Building. As they

approached the steps the Capitol police were no longer actively preventing people from

going up the steps, and in fact, Mr. Calhoun did not come in to contact with any Capitol police as he made his way up the steps and into the Capitol Building, At approximately 2:19 PM he entered through an open door where many other people were entering, and can be seen on video holding his phone up over his head and recording as he walked through the door.

For the short period of time that Mr. Calhoun was inside the Capitol Building he did walk around and take pictures and videos, he and Mr. Nalley walked down to the crypt and he is in the crypt when other people break through the police line and move through the crypt towards the stairs that go to the rotunda. Mr. Calhoun and Mr. Nalley walk to the rotunda where Mr. Calhoun can be seen on video taking what appears to be more pictures and videos. Mr. Calhoun and Mr. Nalley also walk down a hallway lined with Congressmembers' offices, and can be seen outside of the circular waiting area leading to Nancy Pelosi's office. Mr. Calhoun and Mr. Nalley were inside of the Capitol for twenty-four minutes, exiting together at 2:43 PM.[2]

Mr. Calhoun did post narrative posts and pictures on social media. His posts described things that he had seen, heard others say had been done. Mr. Calhoun was honest after the fact about having gone inside the Capitol Building.

---

[2] The Government's letter to the United States Probation Officer indicates that Mr. Calhoun exited the Capitol Building at 2:36 PM, if this is the accurate time, and not 2:43 PM, then Mr. Calhoun was only inside of the Capitol Building for 17 minutes. *Letter to US Probation Officer*, June 7, 2023, p. 2.

### B.  **What He Did *Not* Do**

Mr. Calhoun did not confront or make physical contact with law enforcement. He did not bring onto the Capitol grounds or into the Capitol Building any riot gear or weapons, and he did not find or use any other objects as weapons. He did not come dressed in riot gear. He did not go beyond the crypt, the rotunda, and an adjacent hallway. He did not engage with anyone other than Mr. Nalley, and he certainly didn't engage in any kind of threatening or assaultive conduct. Mr. Calhoun did not attempt to rile up the crowd, or engage in encouraging others to enter the Capitol Buildings or the grounds of the Capitol.

Mr. Calhoun did not touch anything inside of the Capitol Building, and he did not take/steal anything. He did not attempt to, nor did he, damage any property. He did not walk through the Capitol Building yelling, screaming or chanting. He did not bring with him, or participate in, the use of illegal narcotics in the Capitol Building or on the Capitol grounds. Mr. Calhoun did not come into contact with any members of Congress, nor did he attempt to locate or disrupt ant members of Congress.

### III.  **Pretrial Detention and Conditions of that Detention**

Mr. Calhoun spent almost two months incarcerated prior to being granted bail. Nine days of his incarceration were spent in a dorm with thirty-four people, many of whom wished him physical harm for being a "racist" Trump supporter. The remainder of

the two months he spent in solitary confinement.

While being held in Washington, D.C., he was in a room that had black mold all over the windows. He would periodically clean it, but the black mold would always come back. Prior to his arrest, Mr. Calhoun had been diagnosed with cancer. It took the jail in Washington, D.C. fifteen days to start administering his essential medication.

## IV.  Section 3553(a) Sentencing Factors

### A.  The Nature and Circumstances of the Offense (§ 3353(1))

Mr. Calhoun has been honest from the outset of his charges as to his acts in Washington, D.C. He admitted from early on that he believed to be guilty of civil trespass for having gone inside the Capitol building. With that aside, it is important to focus on Mr. Calhoun's individual actions with regard to what occurred on January 6, 2021.

### B.  Mr. Calhoun's History and Characteristics (§ 3353(1))

To avoid redundancy, Mr. Calhoun incorporates and adopts the "History and Characteristics of the Defendant" section of this document. It bears noting, however, that until January 6, 2021, Mr. Calhoun was a productive and law-abiding citizen. He had little to no criminal history, and what minor misdemeanor convictions he had, were from many, many years ago.

### C.  Promoting Respect for the Law (§ 3353(2))

Mr. Calhoun has already served almost 2 months in jail as a result of the charges that he now stands convicted of. Deprivation of freedom is extremely punitive. But that's not all he's faced, over the past two and a half years his life has been publicized, scrutinized, and picked at as a result of his actions on January 6, 2021. He has had bar complaints filed against him by anti-Trump groups, he has been threatened (to include death threats), his law practice has been targeted and clientele has declined even before the Georgia State Bar began disciplinary proceedings against him. Mr. Calhoun is currently subject to the disciplinary jurisdiction of the Supreme Court of Georgia, the State Disciplinary Board of the State Bar of Georgia, and a Special Master properly designated by the Supreme Court of Georgia.

### D.  To Afford Adequate Deterrence and Protection of the Public (§ 3353(2))

Besides reflecting the seriousness of the offense and the need to protect the public, a sentence must be sufficient, but not greater than necessary, to deter the individual being sentenced as well as the public from committing crimes.  The deterrence by numbers concept is a fallacy of the criminal justice system.  Sending people to prison for extraordinarily long periods of time has been proven over and over again to be an ineffective way to deter crime. As noted by the Sentencing Commission, there is no evidence that increases in sentences deter crime. "Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing*, 34

Crime and Justice: A Review of Research 28-29 (2006). Instead, research has generally

shown that "increases in the certainty of punishment, as opposed to the *severity* of

punishment, are more likely to produce deterrent benefits."  *See* Valerie Wright,

*Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment*, The

Sentencing Project (Nov. 2010) at 1.[3]

      The Department of Justice acknowledges the facts that the certainty of being

caught is a vastly more powerful deterrent to crime and that the severity of punishment is

an ineffective deterrent to crime.  National Institute of Justice, *Five Things About*

*Deterrence*, June 6, 2016. Therefore, the fact that Mr. Calhoun is being sentenced at all will

achieve the same amount of general deterrence, regardless of the length of his sentence.

      A Federal sentence of time served is a substantial sentence as related to Mr.

Calhoun's actions and the short amount of time that he was inside of the Capitol

building. The time that he had in jail, the devastating loss of his bar license and with it,

his livelihood, coupled with the extreme negative financial impact that his actions have

cost him, will ensure that Mr. Calhoun never re-engages in future criminal conduct.

### E.  Rehabilitation and the Need for Treatment (§ 3353(2)(D))

---

[3] available at

http://www.sentencingproject.org/wp-content/uploads/2016/01/Deterrence-in-Criminal-Justice.pdf (noting
a study that found that longer prison sentences achieved only a three percent reduction in recidivism).

Though his actions on January 6, 2021 have caused (and will continue to cause) him devastating life consequences, Mr. Calhoun will happily acknowledge that these events led him to turn his life over to Christ and strengthened his Christian faith. It is through his faith in God that he hopes to begin his rehabilitation process.

**F.** **The Need to Avoid Unwarranted Sentencing Disparities Among Similarly Situated Defendants (§ 3353(7))**

Undersigned counsel recognizes that in light of the large volume of January 6th Defendants, it is important to the Court to attempt to achieve some degree of uniformity in the various sentences imposed. As such, Undersigned Counsel has identified other Defendant's that have been convicted of the 18 U.S.C. § 1512(c)(2) charge (among other convictions), and some of the facts and circumstances surrounding their cases. Additionally, Undersigned Counsel has identified other Defendant's who were charge with 18 U.S.C. § 1512(c)(2), but not convicted, and the facts and circumstances surrounding their cases.[4]

   a. **Defendants convicted of 18 U.S.C. § 1512(c)(2)**

The cases outlined below are intended to provide the Court with examples of the conduct and behavior of Defendants that have been convicted of the felony 18 U.S.C. §

_____

[4] Some of the analysis is based upon the Sentencing Chart filed in _United States v. Horning_, No. 1:21-CR-00275-ABJ on February 7, 2023, and _United States v. Miller_, No. 1:21-CR-00119-CJN on February 16, 2023.

1512(c)(2) count, and received active sentences of incarceration. All Defendants had at least one, if not multiple, acts of aggressive, assaultive, and/or threatening conduct in the Capitol building. Many of which brought weapons into the Capitol, stole, damaged or destroyed property, assaulted law enforcement, used illegal substances, and even went into the private offices of Congressmembers. Their behavior was far more egregious than Mr. Calhoun's. Not only did they unlawfully enter the Capitol building, but they were found to have committed some kind of act, in addition to their mere presence, to corruptly obstruct an official proceeding.

1. *United States v. Robertson*, No. 1:21-CR-00034-CRC - 87 months incarceration:

- Also convicted of 18 U.S.C. § 231(a)(3)

- Police sergeant with the Rocky Mount, Virginia, police department and army veteran.

- Brought a gas mask and large wooden stick.

- Raised up his wooden stick in "port arms," a tactical position used by the military and law enforcement to push others away, and blocked the path of officers attempting to hold back the mob.

- Destroyed evidence from him and a co-defendant prior to arrest.

2. *United States v. Sandlin*, No. 1:21-CR-00088-DLF - 63 months incarceration:

- Also convicted of 18 U.S.C. § 111(a)(1) and 18 U.S.C. § 111(a)(2).

- Traveled to D.C. along with two co-conspirators in a car full of weapons, including several knives, bear spray, Glock 43 pistol, two magazines of ammunition, gas masks, stun gun, slingshot, military-style vests/body armor, two helmets, a baton, walkie-talkies and Sandlin's M&P pocket pistol.

- Made his way through the East Rotunda doors with his co-conspirators and shoved officers to force the door behind them open, allowing the mob outside to begin streaming in.

- Attempted to rip the helmet off an officer.

- Along with his co-conspirators, he engaged in a shoving match with officers in an attempt to keep the doors to the Senate Gallery open, striking an officer's head in the process.

- Wandered through the Capitol in pursuit of members of Congress, asking an unknown individual, "is that where the Senators are at?"

- Smoked a marijuana joint in the Rotunda of the Capitol while stating, "we made history" and "this is our house."

3. *United States v. Jensen*, No. 1:21-CR-00006-TJK - 60 months incarceration:

- Also convicted of 18 U.S.C. § 231(a)(3), 18 U.S.C. § 111(a)(1), 18 U.S.C. § 1752(a)(1) and (b)(1)(A), 18 U.S.C. § 1752(a)(2) and (b)(1)(A), 40 U.S.C. § 5104(e)(2)(D), and 40 U.S.C. § 5104(e)(2)(G).

- Convicted after a trial.

- Ringleader during the attack on the U.S. Capitol, working to rile up the crowd and encourage others to follow him into and through the building.

- Scaled a twenty-plus-foot wall to be one of the first rioters to break into the building and disrupt the proceedings in Congress.

- Tenth rioter to enter the Capitol.

- Led a group of armed rioters in pursuit of an officer up a staircase, steps away from the Senate Chamber, where members of Congress were sheltering at the very moment.

4. *United States v. Williams*, No. 1:21-CR-00377-BAH - 60 months incarceration:

- Also convicted of 40 U.S.C. § 5104(e)(2)(D); 40 U.S.C. § 5104(e)(2)(G); and 18 U.S.C. § 1752(a)(1) and (2).

- Convicted after a trial.

- Helped rioters climb bicycle racks so that he and the other rioters to overrun the police on the Northwest stairs.

- Stole water bottles that Capitol police officers had stored to be used for decontamination if they were hit with chemical irritants.

- Entered the Capitol through the Senate door with the first large wave of rioters to breach the Capitol.

- Celebrated and smoked marijuana with other rioters in the Rotunda.

5. *United States v. Pruitt*, No. 1:21-CR-00023-TJK - 55 months incarceration:

- Proud Boys member

- Wore a tactical glove with knuckle pads and a cut-off t-shirt with the logo of the "Punisher" –an anti-hero known for dispensing violent vigilante justice.

- Was wearing an electronic ankle monitor for being arrested recently.

- Climbed a bike rack as a ladder to be at the front of the mob that breached the building.

- Tossed a chair in the direction of officers in the Visitor Center.

- Came face to face with then-Senate Minority Leader Chuck Schumer, who was trying to evacuate.

6. *United States v. Wilson*, No. 1:21-CR-00345-RCL - 51 months incarceration:

- Also convicted of 18 U.S.C. § 111(a)(1).

- Physically engaged with officers by punching, shoving and kicking them, as well as attempting to steal their riot shields.

- Picked up a several feet long white cylindrical object, believed to be a thin polyvinyl chloride (PVC) pipe, and indiscriminately struck at officers with it.

- "[E]ngaged multiple officers with whatever means he had available."

7. *United States v. Bledsoe*, No. 1:21-CR-00204-BAH - 48 months incarceration:

- Also conviction of 18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2); and 40 U.S.C. § 5104(e)(2)(D).

- Convicted after a trial.

- Scaled a wall to access the upper northwest terrace.

- Climbed statue of President Gerald Ford and planted a Trump flag on his arm.

- Remained inside the Capitol for 22 minutes and wandered through the Statuary Hall before joining another crowd of rioters circling the House Chamber while members of Congress were trapped inside and unable to evacuate.

8. *United States v. Decarlo*, No. 1:21-CR-00073-BAH - 48 months incarceration:

- Significant ties to Proud Boys

- Threw smoke bomb at police.

- Rummaged through a Capitol police duffle bag and stole a pair of flex cuffs.

- Scrawled "Murder the Media" on one of the Capitol's doors.

9. *United States v. Hale-Cusanelli*, No. 1:21-CR-00037-TNM - 48 months

incarceration:

- Also convicted of 18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2); 40 U.S.C. § 5104(e)(2)(D); and 40 U.S.C. § 5104(e)(2)(G).

- Convicted after a trial sporting a "Hitler mustache."

- Former Army reservist and security contractor who held a "Secret" level security clearance when he and others sieged the Capitol.

- At front of a mob that attacked police and smashed windows and doors to breach the Capitol.

- Unsuccessfully intervened in an arrest of a rioter by trying to pull the rioter away from the officer.

10. *United States v. Herrera*, No. 1:21-CR-619-BAH - 48 months of incarceration:

- Also convicted of 18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2); 40 U.S.C. § 5104(e)(2)(D); and 40 U.S.C. § 5104(e)(2)(G).

- Convicted after a trial.

- Came prepared wearing a gas mask, goggles, and a bulletproof vest.

- Climbed scaffolding and entered the Capitol through a fire door, located near the Senate Parliamentarian's Office on the Senate wing side of the building.

- Posted an Instagram photo of himself picking up a stack of papers and throwing them in the air.  Later, in an exchange with someone else on Instagram, he said he had picked up the papers and had someone photograph him because he wanted a "fuck you" picture.

- Stole a bottle of liquor, which he drank and raised triumphantly as he exited the Capitol the first time.

- Reentered the Capitol through the nearby Senate Wing Doors. As he entered, he walked past shattered windows on each side of the door and spent a few minutes setting up his camera and taking photographs.

- Then he proceeded to a nearby "hideaway" office of a U.S. Senator, where he smoked a marijuana cigarette that was passed around by other rioters.

- After, he proceeded to the Crypt, and remained inside for 15 minutes while he took more photographs, before exiting the building.

11. *United States v. Ochs*, No. 1:21-CR-00073-BAH - 48 months incarceration:

- Proud Boys member.

- Walked around and filmed the attack on the U.S. Capitol.

- Threw smoke bomb at police.

- Smoked cigarettes in Rotunda.

- Pointed rioters toward the Speaker's Office.

- Posed in front of "Murder the Media" graffiti his co-defendant had scrawled on one of the Capitol's doors.

12. *United States v. Hughes*, No. 1:21-CR-000106-TJK - 46 months incarceration:

- Climbed scaffolding.

- Among first rioters to reach the Upper West Terrace.

- Eighth rioter to enter the Senate Wing Door building through smashed window.

- Kicked the Senate Wing Door open from inside with another rioter.

- Chased a Capitol Police officer and yelled violent and angry threats.

- Occupied the Senate chamber and reviewed sensitive documents that had been left behind by Senators forced to flee for their lives.

13. *United States v. Secor*, No. 1:21-CR-00157-TNM - 42 months incarceration:

- Scaled scaffolding.

- Walked through the office suite of Nancy Pelosi.

- Assisted a group of rioters to push open the East Rotunda doors and helped other rioters enter the building.

- Sat in the seat that Vice President Mike Pence occupied 30 minutes earlier.

14. *United States v. Chansley*, No. 1:21-CR-0003-RCL - 41 months incarceration:

- Q-Anon Shaman and the very face of the events of January 6.

- Climbed the scaffolding.

- Entered the Capitol and roamed the second and third floors of the building.

- Entered the Senate gallery and screamed obscenities.

- Scaled the Senate dias "taking the seat that Vice President Mike Pence had occupied less than an hour before" and took pictures of himself on the dias.

- Called other rioters up to the dias and lead them in an incantation including to be thankful for the "opportunity 'to allow us to send a message to all the tyrants, the communists, and the globalists, that this is our nation, not theirs, that we will not allow American, the American way of the United States of America to go down.'"

- Gave a *60 Minutes* interview falsely claiming that he was let into the Capitol by law enforcement and was merely intending to bring divinity, to bring God back into the Senate.

15. *United States v. Fairlamb*, No. 1:21-CR-00120-RCL - 41 months incarceration:

- Also convicted of 18 U.S.C. § 111(a)(1).

- Shoved and Punched an MPD officer.

- Climbed the scaffolding.

- Entered the Capitol carrying a stolen police baton.

16. *United States v. Neefe*, No. 1:21-CR-00567-RCL - 41 months incarceration:

- Also convicted of 18 U.S.C. § 111(a)(1).

- Fabricated a wooden club and carried it on to the Capitol grounds.

- Assisted a group of rioters in hoisting and thrusting a large metal sign frame into a line of officers. The sign could have "split someone's head open."

17. *United States v. Rubenacker*, No. 1:21-CR-00193-BAH - 41 months incarceration:

- Also convicted of 18 U.S.C. § 231(a)(3); 18 U.S.C. § 111(a); 18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2); 18 U.S.C. § 1752(a)(4); 40 U.S.C. § 5104(e)(2)(D); 40 U.S.C. § 5104(e)(2)(E); 40 U.S.C. § 5104(e)(2)(F); and 40 U.S.C. § 5104(e)(2)(G).

- One of the first 50 rioters to enter the Capitol.

- Was at the front of the mob, along with other rioters, and chased a Capitol police officer up a flight of stairs, directly past where lawmakers had just retreated from conducting the joint session, yelling "Where are they counting the votes?" and "He's one person, we're thousands!"

- Exited the east side of the Capitol and reentered later through the East Rotunda doors as part of a mob of rioters, during which rioters

surrounded and assaulted law enforcement officers attempting to prohibit entry to the East Rotunda doors.

- Smoked marijuana in the Rotunda.

- Swung a water bottle at an officer's head and threw liquid at other officers.

18. *United States v. Smith*, No. 1:21-CR-00567-RCL - 41 months incarceration:

- Also convicted of 18 U.S.C. § 111(a)(1) and (2).

- Assisted a group of rioters in hoisting and thrusting a large metal sign frame into a line of officers.  The sign could have "split someone's head open."

- Encouraged rioters to keep forcing a door closed so that officers could not exit and defend the Capitol.

19. *United States v. Hughes*, No. 1:21-CR-00106-CKK - 38 months incarceration:

- Climbed scaffolding.

- At the front of the mob that forced bike rack barriers down and breached the police line.

- Among first rioters to reach the Upper West Terrace.

- Ninth rioter to enter the Senate Wing Door building through smashed window.

- Chased a Capitol Police officer and yelled violent and angry threats.

20. *United States v. Reid*, No. 1:21-CR-00316-DLF - 37 months incarceration:

- Also convicted of 18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2); 40 U.S.C. § 5104(e)(2)(D); and 40 U.S.C. § 5104(e)(2)(G).

- Was in the front among the first to rush up the steps when rioters broke through a police line under the scaffolding.

- For over an hour, he walked through the Capitol, surged through police lines, led rioters through the building, and encouraged other rioters to enter.

- Made his way to the Speaker's Lobby and damaged a television and water cooler in the nearby bathroom.

21. *United States v. Tenney*, No. 1:21-CR-00640-TFH - 36 months incarceration:

- Also convicted of 18 U.S.C. § 231(a)(3).

- He and a co-defendant entered the Capitol through the West Terrace.

- He then walked through the rotunda and it was he who personally forced open the Rotunda Doors on the east side which ultimately allowed rioters to enter from that side of the building.

- He grabbed the Sergeant at Arms from behind and pushed him into a doorframe.  He also locked arms with a U.S. Capitol Police Officer B.A. and shoved another U.S. Capitol Police officer.

22. *United States v. Thompson*, No. 1:21-CR-00161-RBW - 36 months

incarceration:

- Also convicted of 18 U.S.C. § 641; 18 U.S.C. § 1752(a)(1); 18 U.S.C. §

  1752(a)(2); and 40 U.S.C. § 5104(e)(2)(D).

- Convicted after a trial.

- Came prepared wearing a bulletproof vest.

- Walked into and looted Senate Parliamentarian's office, stealing two

  bottles of liquor.

- Then went outside to find and encouraged co-defendant Lyon to

  participate in the riot.

- He stole a coat rack, and announcer pager used by U.S. Capitol Police to

  send emergency alerts throughout the building.

- Picked up someone's cell phone off a staffer's desk.

23. *United States v. Miller*, No. 1:21-CR-00075-RDM - 33 months incarceration:

- Also convicted of 18 U.S.C. § 111(a)(1).

- While on restricted ground of the Capitol, draped in a Confederate flag,

  threw a full beer can at law enforcement.

- Used a bike rack to scale the Capitol wall.

- Threw batteries at officers.

- Sprayed officers located in the Lower West Terrace tunnel with the contents of a fire extinguisher as other rioters assaulted officers with bats, flagpoles, and riot shields. The contents of the fire extinguisher sprayed at least a dozen police officers.

      **b. Defendants charged, but not convicted of 18 U.S.C. § 1512(c)(2).**

As the Court can see from the cases outlined below, the Defendant's actions on and inside the Capitol building and grounds are either similarly situated, or less egregious than the examples provided. All the cases outlined below received either time served or probation only, including Mr. Calhoun's co-defendant. Mr. Calhoun and Mr. Nalley's actions and conduct on the Capitol grounds and in the Capitol building were almost exact. Mr. Calhoun entered the building right after Mr. Nalley, and they traveled the same path inside the Capitol. They were very close to one another in the crypt and rotunda, and in the hallway with Congressmembers offices. They exited the building together as well. Mr. Calhoun was just the unfortunate co-defendant to not receive a misdemeanor plea offer from the Government.

     1. *United States v. Nalley*, No. 1:21-CR-00116-DLF – 2 years probation and sixty hours of community service.

- Initially charged with 18 U.S.C. § 1512(c)(2), (k); 18 U.S.C. § 1752(a)(1)-(2); and 40 U.S.C. § 5104(e)(2).

- Plead guilty to 18 U.S.C. § 1752(a)(1), a Class A misdemeanor.

- "Committed no act of property damage or violence towards any individual."

- "He and his friend, along with hundreds of others, walked over to the Capitol."

- "Walked around the common areas, took some pictures, and left."

- "Drove back to GA that same night."[5]

2. *United States v. Cordon*, No. 1:21-CR-00277-TNM – 12 months probation.

- Initially charged with 18 U.S.C. § 1512(c)(2), (k); 18 U.S.C. § 1752(a)(1)-(2); and 40 U.S.C. § 5104(e)(2)(D) and (G).

- Plead guilty to 18 U.S.C. § 1752(a)(1), a Class A misdemeanor.

- Entered into the Capitol Building by climbing through a broken window.

- Dressed in preparation for violence by wearing a vest of body armor and a gas mask.

- Broadcasted incendiary language showing his intent in entering the Capitol and justifying the riot, including a statement that "this is just the beginning."[6]

---

[5] Facts obtained from the Defendant's Sentencing Memorandum, ECF Doc. No. 92, March 3, 2022.
[6] Facts obtained from the Government's Sentencing Memorandum, ECF Doc. No. 34, November 5, 2021.

3. *United States v. Dresch*, No. 1:21-CR-00071-ABJ – Time served with no term of supervised release.

- Initially charged with 18 U.S.C. § 1512(c)(2) and 2, (k); 18 U.S.C. § 1752(a)(1)-(2); and 40 U.S.C. § 5104(e)(2)(D) and (G).

- Plead guilty to 40 U.S.C. § 5104(e)(2)(G).

- Posted on Facebook that he was preparing to go to DC, and was "prepared for chemical attacks and what not."

- Urged others to go to DC by way of his Facebook account.[7]

4. *United States v. Griffith*, No. 1:21-CR-00204-BAH – 36 months of probation with 90 days of home confinement.

- Initially charged with 18 U.S.C. § 1512(c)(2) and 2, (k); 18 U.S.C. § 1752(a)(1)-(2); and 40 U.S.C. § 5104(e)(2)(D) and (G).

- Plead guilty to 40 U.S.C. § 5104(e)(2)(G).

- "Has displayed virtually no remorse for his conduct and appears to have little patience for the criminal proceedings before the Court."

- Espoused "extremist political views on social media."

- "Smiled and yelled in excitement during the horrific attack."

---

[7] Facts obtained from the Government's Sentencing Memorandum, ECF Doc. No. 33, August 3, 2021.

- "Used his arrest as a badge of honor to fundraise, to promote his social media accounts, and to bring attention to a video game he is creating."[8]

5. *United States v. Rosa*, No. 1:21-CR-00068-TNM – 12 months probation.

   - Initially charged with 18 U.S.C. § 1512(c)(2) and 2, (k); 18 U.S.C. § 1752(a)(1)-(2); and 40 U.S.C. § 5104(e)(2)(D) and (G).

   - Plead guilty to 40 U.S.C. § 5104(e)(2)(G).

   - He entered the United States Capitol where he knew the Congressional certification was underway.[9]

6. *United States v. Cudd*, No. 1:21-CR-00068-TNM – 2 months probation.

   - Initially charged with 18 U.S.C. § 1512(c)(2) and 2, (k); 18 U.S.C. § 1752(a)(1)-(2); and 40 U.S.C. § 5104(e)(2)(D) and (G).

   - Plead guilty to 18 U.S.C. § 1752(a)(1), a Class A misdemeanor.

   - "Prepared for violence by wearing a bulletproof sweatshirt during the riot."

   - "Crossed overturned bike racks and scaled a wall to get to the Capitol."

   - "Engaged in a self-described push against law enforcement officers while yelling 'go' and 'charge' to reach the entrance of the U.S. Capitol building."

---

[8] Facts obtained from the Government's Sentencing Memorandum, ECF Doc. No. 92, October 7, 2021.
[9] Facts obtained from the Government's Sentencing Memorandum, ECF Doc. No. 66, October 4, 2021.

- "Entered the U.S. Capitol building and remained inside for approximately 20 minutes, despite hearing loud banging and smelling—and feeling the effects of—tear gas."

- "After exiting the Capitol building, remained on Capitol grounds, watching clashes with law enforcement officers, for what appears to be about an hour and 20 minutes after exiting Capitol building."

- "Celebrated property destruction after leaving the Capitol. For example, on social media, Cudd posted, 'We didn't vandalize anything. But we did. We did, as I say that. We did break down the Nancy Pelosi's office door and somebody stole her gavel and took a picture sitting in the chair flipping off the camera.'"

- "Lacks remorse for her participation in the events of January 6 and has noted that she may participate in similar events in the future."[10]

7. *United States v. Marquez*, No. 1:21-CR-00136-RC – 18 months probation.

- Initially charged with 18 U.S.C. § 1512(c)(2) and 2, (k); 18 U.S.C. § 1752(a)(1)-(2); and 40 U.S.C. § 5104(e)(2)(C) and (D).

- Plead guilty to 18 U.S.C. § 1752(a)(2), a Class A misdemeanor.

- "Entered the Capitol building as part of a mob, with alarms blaring and next to broken glass and windows."

---

[10] Facts obtained from the Government's Sentencing Memorandum, ECF Doc. No. 90, March 16, 2022.

- "Once inside the Capitol building, he interfered with Capitol Police officers trying to protect the building by repeatedly asking them for selfies and fist bumps."

- "Spent about 10 minutes, with 20 other rioters, inside the private hideaway office of Senator Merkley, which suffered substantial damage."

- "Spent about 53 minutes inside the Capitol itself."

- 'Traveled from Florida to Washington, D.C., with a firearm in his car."[11]

## V.   Exhibits and/or Witnesses

### A.  Exhibits

Mr. Calhoun is working on obtaining character reference letters from close friends, colleagues and family members. Undersigned counsel hopes to have those soon, to submit to the Court prior to Mr. Calhoun's sentencing hearing.

### B.  Witnesses

Mr. Calhoun Intends to call the following witnesses to testify on his behalf at his sentencing hearing on August 4, 2023:

1. Tina Calhoun – Defendant's Wife

---

[11] Facts obtained from the Government's Sentencing Memorandum, ECF Doc. No. 28, December 2, 2021.

2.  Mary Calhoun – Defendant's Sister

3.  Virginia A. L. Calhoun – Defendant's Sister

4.  Anne Calhoun Davis – Defendant's Sister

5.  Allen Meadors, Sr. – Defendant's Cousin and GA barred attorney

6.  Allen Meadors, Jr. – Defendant's Cousin's Son (See above)

**VI.   Conclusion**

For the foregoing reasons, Mr. William McCall Calhoun, Jr. respectfully requests

that the Court sentence him to time served, a sentence that is a warranted and fair

downward departure from the low-end of the relevant sentencing guidelines, and

provides the punishment and deterrence contemplated by 18 U.S.C. § 3553. In addition,

Mr. Calhoun respectfully requests such other and further consideration as the Court

deems just and proper.

Dated: July 24, 2023.

Respectfully Submitted,

 /s/ *Jessica N. Sherman-Stoltz*
Jessica N. Sherman-Stoltz, Esq.
Virginia State Bar #90172
Sherman-Stoltz Law Group, PLLC.
P.O. Box 69, Gum Spring, VA 23065
Phone: (540) 451-7451 / Fax: (540) 572-4272
Email: jessica@sslg.law

## <u>CERTIFICATE OF SERVICE</u>

I hereby CERTIFY that on this the 25th day of July 2023, a true and correct copy of the foregoing *Defendant's Sentencing Memorandum* was filed with the Clerk of Court via the CM/ECF system, which will automatically send an email notification of such filing to all counsel of record.

 /s/ Jessica N. Sherman-Stoltz
Jessica N. Sherman-Stoltz, Esq.
Virginia State Bar #90172
Sherman-Stoltz Law Group, PLLC.
