IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x

THE UNITED STATES OF AMERICA,

              Plaintiff,

vs.

WILLIAM MCCALL CALHOUN, JR., and
VERDEN ANDREW NALLEY,

              Defendant(s).

- - - - - - - - - - - - - - - - x

Criminal Action No.
1:21-cr-00116-DLF
Thursday, December 2, 2021
11:07 a.m.

_____

TRANSCRIPT OF STATUS AND PLEA AGREEMENT HEARING
HELD BEFORE THE HONORABLE DABNEY L. FRIEDRICH
UNITED STATES DISTRICT JUDGE

_____

APPEARANCES:

| | |
|---|---|
| For the United States: | **JENNIFER M ROZZONI, ESQ.**<br>**DOJ-USAO**<br>201 3rd Street NW - Suite 900<br>P.O. Box 607<br>Albuquerque, NM 87102<br>(505) 224-1460<br>jennifer_rozzoni@nmd.uscourts.gov |
| For Defendant Calhoun: | **JESSICA NICOLE SHERMAN-STOLTZ, ESQ.**<br>**SHERMAN STOLTZ LAW GROUP, PLLC**<br>P.O. Box 69<br>Gum Spring, VA 23065<br>(540) 255-4365<br>jessica@sslg.law |
| For Defendant Nalley: | **THOMAS LESLIE HAWKER, ESQ.**<br>**FEDERAL DEFENDER PROGRAM, INC.**<br>101 Marietta Street, NW<br>Centennial Tower, Suite 1500<br>Atlanta, GA 30303<br>(404) 688-7530<br>thomas_hawker@fd.org |
| Court Reporter: | Lisa A. Moreira, RDR, CRR<br>Official Court Reporter<br>U.S. Courthouse, Room 6718<br>333 Constitution Avenue, NW<br>Washington, DC  20001<br>(202) 354-3187 |

P R O C E E D I N G S

THE COURTROOM DEPUTY:  Your Honor, we're in Criminal Action 21-116, *United States of America vs. William Calhoun, Jr., and Verden Nalley.*  If I can have the parties identify themselves for the record beginning with counsel for Mr. Calhoun.

MS. SHERMAN-STOLTZ:  Jessica Sherman-Stoltz for defendant William Calhoun.

THE COURT:  Good morning.

THE COURTROOM DEPUTY:  Thank you.

MS. SHERMAN-STOLTZ:  Good morning, Your Honor.

THE COURTROOM DEPUTY:  And can I have counsel for Mr. Nalley?

MR. HAWKER:  Yes, good morning; Tom Hawker for Mr. Nalley.

THE COURT:  Good morning.

PRETRIAL SERVICES:  Shay Holman, Pretrial Services, in reference to Mr. Calhoun.

THE COURT:  Good morning, Ms. Shay Holman.

THE COURTROOM DEPUTY:  And can I have counsel for the United States?

MS. ROZZONI:  Good morning, Your Honor; Jennifer Rozzoni on behalf of the United States.

THE COURT:  Good morning, Ms. Rozzoni.

All right.  For the record this is a

videoconference being conducted pursuant to the chief judge's standing order related to the pandemic to which both defendants have consented.  I know that Mr. Nalley is prepared to enter a plea of guilty.  First I'd like to handle the status hearing portion of this with Mr. Calhoun as well, and then we can excuse Mr. Calhoun and Ms. Sherman-Stoltz and proceed with the plea.

Ms. Rozzoni, do you want to update me on any developments in the case beyond the discovery notices that have been posted on the docket?

MS. ROZZONI:  Yes, Your Honor.  Additional discovery was provided in the month of November, two particular disclosures as part of the global discovery that the government has been providing in this case, the last of which was provided on November 30th.  That was just Tuesday of this week.

I do believe that Ms. Sherman-Stoltz would like the opportunity to review that discovery as well as review it with her client, and I know that we have had the discussions about the potential for a plea in this case.  So my hope is that after she's had that opportunity to review that discovery, that we can enter into some negotiations that might result in the conclusion of this case short of a jury trial.

THE COURT:  All right.  Ms. Sherman-Stoltz,

anything you'd like to add?

MS. SHERMAN-STOLTZ:  That's accurate, Your Honor, what the government has just proffered.

THE COURT:  How long are you all suggesting that I continue this matter until?

MS. ROZZONI:  Your Honor, I believe that we're both in agreement that approximately 60 days would work, and I believe that Mr. Hopkins gave us a date of February -- actually, I had it written down.  February 2nd perhaps?

THE COURT:  Is that right, Mr. Hopkins?

THE COURTROOM DEPUTY:  You're close.  You're close, Ms. Rozzoni.  It was February the 1st at 11:00.

MR. ROZZONI:  Oh, I apologize.

THE COURTROOM DEPUTY:  That's okay.

THE COURT:  All right.  Does that work for both sides?

MS. SHERMAN-STOLTZ:  Yes, Your Honor.

MS. ROZZONI:  Yes, Your Honor.

THE COURT:  Okay.  So February 1st at -- did we say 1:00 or 11:00?

THE COURTROOM DEPUTY:  11:00, Your Honor.

THE COURT:  11:00, okay.  Are the parties suggesting that I exclude time from now until then in order to give the defense time to review the existing and forthcoming discovery and make decisions on how best to

defend this case?

MS. ROZZONI:  Absolutely, Your Honor.  Thank you.

THE COURT:  Ms. Sherman-Stoltz?

MS. SHERMAN-STOLTZ:  Yes, Your Honor.

THE COURT:  All right.  I do believe it's in the interests of justice to exclude time in order for the defense to do that, so I will exclude time from today until February 1st, and we'll return February 1st at 11:00 a.m.

I know that the defense had also filed a motion to modify the conditions, and Ms. Rozzoni, I can't recall whether -- I don't think the government's filed anything in response to that.

MS. ROZZONI:  The government did not, Your Honor, and I apologize that it ended up being -- it did not end up being an unopposed motion because the government has no problems with the change in conditions.

THE COURT:  All right.  Well -- and I know we have Ms. Holman on the line who I've discussed this with informally.

Ms. Holman, do you have anything new to add?  I understand that Mr. Calhoun has been compliant with his conditions of release and that you were inclined, based on your discussions with the officer who is supervising him in Georgia, to not object to the request.  Is that still the case?

PRETRIAL SERVICES:  Yes, Your Honor.  And just to clarify, the Middle District of Georgia, they completed the home visit, the perimeter.  They haven't done the actual walk-through, so they will do that once Mr. Calhoun moves to determine that it's still sufficient.  But they have no objection to him moving initially.

THE COURT:  Okay.  Well, contingent on everything checking out once he moves and the inspection of the home is done, I have no objection.  So, Ms. Holman, what do you need?  Can I do this modification through a minute order?

PRETRIAL SERVICES:  Yes, Your Honor, a minute order will be fine.

THE COURT:  Okay.

All right.  Well, I will get that posted later today, Ms. Sherman-Stoltz.

I'll confer with you, Ms. Holman, to make sure that it satisfies your needs.

Is there anything else that we need to address with regard to Mr. Calhoun?

MS. ROZZONI:  Your Honor, I believe there are two other pending motions that were filed by Ms. Sherman-Stoltz, one of which included an extension of pretrial motion deadlines --

THE COURT:  Right.

MS. ROZZONI:  -- which the government has no

objection to.

THE COURT:  Nor do I.

MS. ROZZONI:  And so there was that, and then there is a motion to dismiss pending that the government will respond to in time.

THE COURT:  Okay.  When do you expect to file a response to that?

MS. ROZZONI:  We may be asking actually for an extension on that, if the Court's willing to look at that. I know Ms. Sherman-Stoltz discussed potentially extending the deadline so that we could engage in some plea negotiations without the need of having to respond, if the Court's inclined to agree to --

THE COURT:  I am.

MS. ROZZONI:  -- an extension.

THE COURT:  I am, if it's a consent motion for an extension.

MS. ROZZONI:  I believe it would be, though I don't want to speak for Ms. Sherman-Stoltz.

THE COURT:  Well, you all confer; and if you file a joint motion to extend the time, I have no problem with that.

MS. ROZZONI:  Okay.

MS. SHERMAN-STOLTZ:  And I have no problem with that, Your Honor, pending the fact that we've just begun

plea negotiations.

THE COURT:  All right.  Well, do you know, Ms. Rozzoni, how much time you'd like to ask for an extension?

MS. ROZZONI:  I think that it may be that I would ask for the beginning of January only because of the holidays and because we did just provide that discovery, Your Honor.

THE COURT:  All right.

MS. ROZZONI:  So if you'd like a written motion --

THE COURT:  No, let's go ahead and deal with it now to save everyone time.

MS. ROZZONI:  Okay.

THE COURT:  I mean, my inclination would be to extend it a little bit longer, Ms. Sherman-Stoltz, just anticipating you all might not get as much done as you'd hoped to during the holiday period.  Assuming you're engaged in good faith plea negotiations and there's no rush to resolve this motion, I'm fine continuing it for a longer period.  It's really up to the defense here on how quickly you want me to address those issues.

MS. SHERMAN-STOLTZ:  Your Honor, if possibly we could just take the date of our next status hearing and back it up by whatever appropriate amount of time the Court would like for any response to be filed, and then allowing the

defense to then file any additional response that we might have?  So maybe the middle of January, and then seven days prior to our status hearing would be our deadline, defense deadline?

THE COURT:  And, again, remind me.  Our status hearing is set for February 1st; is that right?

MS. SHERMAN-STOLTZ:  Yes, Your Honor.

THE COURT:  Okay.

MS. ROZZONI:  I was looking at January 14th, Your Honor.  Would that work?

THE COURT:  I think that would work.  So I will extend the time until January 14th for the government to oppose the motion to dismiss and until January 21st for the defense to file any reply.  And if you all are continuing to be engaged in, you know, plea negotiations at that point and don't want me to be able to hear argument on that motion on February 1st, I would entertain another motion to extend the time either for the government or the defense, if that would be helpful to you all.

So for now, government's opposition is due on the 14th, and the defense's reply is due on the 21st.  And we'll return on February 1st, and I'll address that at that time unless I hear otherwise from you all.

MS. SHERMAN-STOLTZ:  Thank you.

MS. ROZZONI:  Yes, Your Honor.

THE COURT:  All right.  Does that cover everything?

MS. SHERMAN-STOLTZ:  Yes, Your Honor, it does from the defense.

MS. ROZZONI:  I believe so.

THE COURT:  All right.  So Mr. Calhoun and Ms. Sherman-Stoltz, I'll excuse you all now, and I'll turn to the plea for Mr. Nalley, all right?  We'll see you back on February 1st.

MS. SHERMAN-STOLTZ:  Thank you, Your Honor.

PRETRIAL SERVICES:  Your Honor, do you want pretrial to stay on for the plea?

THE COURT:  No.  Is there anything we need to address, anything with respect to Mr. Nalley?

PRETRIAL SERVICES:  Not to my knowledge.

THE COURT:  Ms. Rozzoni, is there any need for pretrial to continue?

MS. ROZZONI:  I don't think so, Your Honor.

THE COURT:  Okay.  All right.  Thank you, Ms. Holman.

PRETRIAL SERVICES:  Thank you, Your Honor.

(Participants excused)

THE COURT:  All right.  So moving on to Mr. Nalley's plea, I have before me the plea paperwork, which includes the plea agreement that's dated November 1st

and signed on November 12th and 19th by Mr. Nalley and Mr. Hawker.  Have there been any changes to that plea agreement?

MS. ROZZONI:  There have not, Your Honor.

THE COURT:  Okay.  So, Mr. Hawker, I can certainly take Mr. Nalley's plea by videoconference through this hearing, but I do need to make the appropriate findings over the CARES Act that it's in the interests of justice to proceed now by videoconference rather than to delay this matter until Mr. Nalley can appear in court.  And if you can articulate for me whether it's concerns related to the pandemic or travel or whatever the case might be on why we can't further delay this without serious harm to the interests of justice, I will proceed with the plea.

MR. HAWKER:  Yes, we would consent to having the plea hearing by virtual conference recognizing that he has the right to proceed in person in front of the Court with everyone there physically.  And we've discussed it, and he would prefer to do it this way, both because of the concerns of the pandemic and travel especially being a higher risk situation, and also due to the logistical, perhaps, difficulties with the location of the U.S. Attorney down here in Georgia and his work schedule, which has taken him back and forth back here on alternating weekends with permission of the Court.

So with all those things in play, we would consent to having it by virtual videoconference.

THE COURT:  All right.  And I understand this case has been pending for some time and he's, I take it, interested in resolving it and not having it be delayed further for him to safely appear in D.C.?

MR. HAWKER:  That's correct, Your Honor.  We have been on -- he's been on bond with a monitor for nine months now, and it has been pending.  So yes, for efficiency's sake.

THE COURT:  All right.  Well, consistent with the CARES Act, I do find it's appropriate in the interests of justice to proceed by way of video rather than delay this further.  Doing so would cause a serious harm to the interests of justice.  Mr. Nalley's case has been pending for many months, and there are, you know, rising numbers right now with the new variant so I think it is appropriate to proceed.

Mr. Nalley, I just want to confirm on the record, you do understand that you do have the right to appear before me if you desire to do so, but I understand from what your attorney's saying it's your preference to proceed today by videoconference with this plea rather than delay it so that you can appear before me in the courtroom.  Is that correct?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.

Okay.  In that case, I do have also before me -- I have the waiver of trial by jury.  I have the waiver of indictment, the statement of offense, the plea, and the information.  I understand Mr. Nalley will be pleading to entering and remaining in a restricted building or grounds in violation of Title 18 United States Code Section 1752(a)(1), correct?

MS. ROZZONI:  That's correct, Your Honor.

MR. HAWKER:  Correct, Your Honor.

THE COURT:  Okay.  In that case, Mr. Hopkins, could you please place Mr. Nalley under oath.

THE COURTROOM DEPUTY:  Absolutely, Your Honor.

(Defendant sworn)

THE COURT:  All right.  Mr. Nalley, do you understand, now that you've been placed under oath, you could be prosecuted for perjury or for making a false statement should you testify falsely here today?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  I'm going to ask you a series of questions to make sure you understand your rights and that your plea is voluntary.  If at any point you don't understand my questions, I want you to let me know, and I'll give you an opportunity to ask me a question or your

attorney a question.

I'll also give you a chance to meet with your attorney privately and take a break, if you have any questions at all.  It's critical to a valid plea that you understand every question before you answer it.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Are you having any trouble hearing me?

THE DEFENDANT:  No.

THE COURT:  Okay.  Let me know if you are, all right?

Okay.  Mr. Nalley, if you could tell me, please, when and where were you born?

THE DEFENDANT:  I was born in Decatur, Georgia.

THE COURT:  In what year?

THE DEFENDANT:  1971.

THE COURT:  All right.  How far did you go in school?

THE DEFENDANT:  To the 8th grade.

THE COURT:  All right.  Are you able to read and write?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  Have you had any drugs or medication or anything else in the last two days that might

make it difficult for you to follow these proceedings?

THE DEFENDANT:  No, ma'am.

THE COURT:  Is there any other reason that might make it difficult for you to follow these proceedings?

THE DEFENDANT:  No, ma'am.

THE COURT:  Have you received a copy of the information which contains the written charge against you in this case?

THE DEFENDANT:  Yes.

THE COURT:  And obviously Mr. Nalley has not been arraigned, Mr. Hawker, on the information.  Do you waive formal reading of the information?

MR. HAWKER:  We do, Your Honor.

THE COURT:  Okay.  All right.

Mr. Nalley, did you read the information?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And did you understand the charge against you?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Does counsel for either side doubt Mr. Nalley's competence to enter a plea at this time?

MS. ROZZONI:  I have no reason to, Your Honor.

THE COURT:  All right.  Mr. Hawker?

MR. HAWKER:  No, Your Honor.

THE COURT:  All right.  I find based on Mr. Nalley's responses to my questions that he is fully competent and capable of entering an informed plea here.

All right.  Mr. Nalley, again, I understand that instead of going to trial you wish to plead guilty to the offense of entering and remaining in a restricted building or grounds in violation of Title 18 United States Code Section 1752(a)(1).  Specifically the charge is that you knowingly entered and remained in a restricted building or grounds without lawful authority to do so; is that correct?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Before we go over the terms of the plea agreement, let me ask you, Ms. Rozzoni, does this plea agreement reflect the most lenient offer which was made to Mr. Nalley in this case?

MS. ROZZONI:  Yes, it does, Your Honor.

THE COURT:  All right.  Mr. Nalley, I'm going to hold up here on the screen a copy of the plea agreement in this case.  This is the agreement dated November 1st.  Do you see that?

THE DEFENDANT:  (No verbal response)

MR. HAWKER:  Can you see it?

THE DEFENDANT:  Yes.

THE COURT:  All right.  I'm going to turn to the last page, which is Page 11, and hold up what I think is

your signature here.  If you can confirm for me, is that your signature on the last page, Page 11, of this plea agreement?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  Did you read this plea agreement and discuss it fully with your lawyer before signing it?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Do you understand it?

THE DEFENDANT:  Yes.

THE COURT:  And is this the plea agreement you wish to enter?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  Attached to the plea agreement is another document called the "Statement of Offense," and that sets forth what the government would have proven if this case were to have gone to trial.  It is a six-page document, and, again, I'm going to hold up the last page, which appears to have your signature on it.  Can you confirm with me whether that's your signature?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  It is?  That's your signature?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  Did you also read this document fully and discuss it with your lawyer before

signing it?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand it?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  Do you agree that what is stated in the facts in the "Statement of Offense" is true and actually what occurred in this case?

THE DEFENDANT:  Yes.

THE COURT:  All right.  I'm not going to review every fact that's stated in the "Statement of Facts," but I do want to confirm with you, Mr. Nalley, that it is true that on January 6th you and your co-defendant, William Calhoun, drove into Washington, D.C., to listen to speeches, and ultimately you went to the U.S. Capitol on that date. Is that correct?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And around 2:20 p.m. is it true that you and Mr. Calhoun went inside the building and walked around the Capitol, including in the Crypt and the Rotunda of the building?

THE DEFENDANT:  Yes.

THE COURT:  And you remained in the Capitol for approximately 30 to 40 minutes?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And afterwards you posted photographs

and other social media postings about this event?

THE DEFENDANT: Yes.

THE COURT: All right. And at the time you entered the U.S. Capitol building on January 6th, you knew that it was a restricted building?

THE DEFENDANT: Yes, ma'am.

THE COURT: And you knew you didn't have permission or lawful authority to enter that building?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Ms. Rozzoni, are there any other facts that the government would like to put on the record?

MS. ROZZONI: No, Your Honor. Presuming that the statement of offense is part of the record, I believe that covers everything.

THE COURT: It is.

You understand, Mr. Nalley, even though I didn't cover everything that's stated in the "Statement of Facts," you've sworn that this "Statement of Offense" is true and accurate?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay.

All right. Ms. Rozzoni, if you could please now state and describe the elements of the charge against Mr. Nalley.

MS. ROZZONI:  Yes, Your Honor.  It is a misdemeanor charge.  The elements are rather straightforward, essentially that Mr. Nalley did knowingly and unlawfully enter or remain in a restricted area pursuant to 18 USC 1752(a)(1).  A restricted area is defined by 1752(c)(1) -- or excuse me -- yes, (c)(1), and is defined as any posted, cordoned off, or otherwise restricted area of the building or grounds where the president or other person protected by the Secret Service is or will temporarily be visiting.

THE COURT:  Okay.  And he did -- and also, he didn't have the lawful authority to be in that area, correct?

MS. ROZZONI:  Yes, Your Honor.  I apologize, and he also did not have the lawful authority to be there.

THE COURT:  All right.  Mr. Nalley, do you understand the charge against you?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  The government has agreed in the plea agreement that the D.C. U.S. Attorney's Office will not criminally prosecute you further, Mr. Nalley, for the conduct set forth in the "Statement of Offense."  Do you understand?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  Do you also understand that the

government has agreed that it will not charge you with any nonviolent criminal offense committed before the plea agreement was executed and about which it was made aware before the plea agreement, but the government may prosecute you for any crime of violence if you committed or commit such crime of violence before or after execution of this plea agreement.  Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And in exchange for your plea today the government is agreeing to dismiss other pending charges in the indictment before this Court.

That's correct; right, Ms. Rozzoni?

MS. ROZZONI:  It is correct, Your Honor.

THE COURT:  All right.  Mr. Nalley, I'm now not going to review every single term of the plea agreement, but, again, you do need to understand that so long as a term is mentioned in the written plea agreement you're bound by it even if I don't cover it today.  Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  All right.  The offense to which you're pleading guilty to, Section 1752(a)(2) of Title 18, has a maximum sentence of one year in prison, a maximum fine of $100,000, a maximum term of supervised release after any period of incarceration of not more than one year, and an obligation to pay any applicable interest or penalties on

fines or restitution not timely made.  Do you understand?

THE DEFENDANT:  Yes.

MS. ROZZONI:  Your Honor, you said -- just for clarity, you said 1752(a)(2).  He's pleading to (a)(1) in this case.

THE COURT:  Oh, I'm sorry.  I don't know why I read (a)(2).  It's (a)(1).  All right.

MS. ROZZONI:  Correct.

THE COURT:  Sorry about that.  Thank you for that correction.

Mr. Nalley, do you also understand that you're agreeing to pay a special assessment of $25 to the court, the clerk of court for the district court?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  And do you understand that the Court could order or even impose a fine that's sufficient to pay the federal government for the cost of any imprisonment, term of supervised release, or period of probation?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And you also understand that the Court could order you to pay restitution to any victim of your offense for any damage done as a result of this offense?

THE DEFENDANT:  Yes.

THE COURT:  And pursuant to this plea agreement,

you are agreeing to pay $500 to the U.S. Department of Treasury in restitution, correct?

THE DEFENDANT:  Yes.

THE COURT:  All right.  And as I mentioned already, you could be subject to a period of supervised release following any term of imprisonment, if a term of imprisonment is imposed, and that would mean that if you're sent to prison, then upon your release you will be on supervision subject to certain conditions and rules with which you must comply.  If you violate any of those conditions, you could be sent back to prison for an additional period of time.  Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Do you also understand that parole has been abolished for federal charges, and if you're sentenced to prison you will serve the sentence I impose less a small reduction for good time credit potentially?  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Do you also understand that this offense is subject to the U.S. sentencing guidelines?

THE DEFENDANT:  Yes.

THE COURT:  And have you discussed with your attorney how those guidelines might apply in this case?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Pages 2 through 4 outline in some detail how the guideline calculations are expected, at least by the government attorney and your attorney, and they both estimate that the total offense level will be a Level 4, and your criminal history category would be 1.  And if they are correct, your estimated guideline sentencing range would be zero to six months, and your estimated fine range would be $500 to $9,500.

Do you understand those estimates?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And do you also understand that the parties have agreed not to seek any departures from the guideline range except the government's reserved the right to request an upward departure pursuant to Section 3A1.4 Note 4 of the guidelines?  The parties have also reserved the right to argue for a different criminal history category if appropriate and to fully allocute at sentencing.  Do you understand all of that?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Do you also understand that the sentence I impose might be different from any estimate that your attorney or the government attorney thinks it might be?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  So do you understand that I won't know exactly what your guideline range is until after I've had a chance to review a presentence report that will be prepared by the probation office between now and the time of sentencing?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  And you understand both you and the government will have an opportunity to challenge the facts that the probation office reports to me?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand that the sentencing guideline range is where I have to start in determining an appropriate sentence in this case, but I don't have to end there because the sentencing guidelines are not binding on me?

THE DEFENDANT:  Yes.

THE COURT:  And you understand that in deciding what the appropriate sentence is in your case, my obligation will be first to calculate the guidelines, then to determine whether there are any appropriate departures either upwards or downwards from the guidelines, and then to consider any other sentencing factors that are listed in Title 18 United States Code Section 3553(a).

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And you understand that I can sentence

you anywhere within the guideline range or above the guideline range, not below the range because the range is zero here.  But I can never sentence you higher than the statutory maximum, which is in this case one year imprisonment.  Do you understand that?

THE DEFENDANT:  (No verbal response)

MR. HAWKER:  Do you?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Did you hear me?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  The plea agreement also specifies certain rights to appeal that you're giving up by pleading guilty, and I want to review those with you.

Do you understand that under the plea agreement you're giving up all of your rights to appeal your conviction of guilt in this case except to the extent it is based on ineffective assistance of counsel?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Do you also understand under the plea agreement you're giving up your right to directly appeal the sentence imposed except to the extent that your appeal is based on ineffective assistance of counsel or the Court sentences you above the statutory maximum or above the guideline range determined by the Court?

THE DEFENDANT:  Yes.

THE COURT: And finally, do you understand that you're giving up your right to collaterally attack either the conviction entered or the sentence imposed in a separate proceeding except to the extent your appeal is based on a claim that you received ineffective assistance of counsel or a claim based on newly discovered evidence?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Do the parties agree I've correctly stated the substance of the plea agreement?

Ms. Rozzoni?

MS. ROZZONI: You have, Your Honor.

THE COURT: All right. Mr. Hawker?

MR. HAWKER: Yes, Your Honor.

THE COURT: All right. Mr. Nalley, is what I've stated here what you've agreed to do?

THE DEFENDANT: Yes, ma'am.

THE COURT: Has anyone promised you the sentence I will give you in this case?

THE DEFENDANT: No.

THE COURT: Has anyone made any promises to get you to plead guilty here today other than those that I've mentioned or those that are set forth in the plea agreement?

THE DEFENDANT: No, ma'am.

THE COURT: Do you have any questions at all or any confusion about this plea agreement that you'd like to

ask either me or your attorney about?

THE DEFENDANT:  No.  I think I've got it.

THE COURT:  Okay.  Well, there's one last set of questions I need to ask you, and those relate to other rights that you would be giving up by pleading guilty today, so I want to review those with you.  They are also in the plea agreement, but I want to go over them orally here with you.

Do you understand that you're not required to plead guilty and that you have a right to go to trial on the charge contained in the information?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand that if you went to trial, the government would have to prove you guilty beyond a reasonable doubt, and the government would have to convince 12 jurors to convict you unanimously?

THE DEFENDANT:  Yes.

THE COURT:  And if you went to trial, you'd have the right to have your lawyer present with you throughout the trial and in every other stage of the proceeding, and if necessary, you could have the Court appoint counsel to represent you.

And your lawyer could make motions.  Your lawyer could challenge any searches or seizures.  Your lawyer could move to suppress statements or evidence.  Do you understand

that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Your lawyer could also make objections during trial and cross-examine all of the government's witnesses.  Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And you would also have the right to present a defense and put on evidence at your trial, including your own witnesses who you could subpoena and require to testify on your behalf, if you wished, but you would not be required to put on any evidence at all because you would be presumed innocent.  Do you understand?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  You could also testify at trial if you chose to do so, but no one could force you to testify because you would have an absolute right to remain silent at your trial, and I would instruct a jury that they could not hold that against you.  Do you understand?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Do you understand that unless and until I accept your guilty plea, the law presumes that you are innocent because it is the government's burden to prove your guilt beyond a reasonable doubt; and until it does, you cannot be convicted at trial?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  If you were found guilty at your trial, you would have a right to appeal; and if you could not afford a lawyer on your appeal, a lawyer would be appointed to represent you.  Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And do you understand that if you plead guilty here today, you will waive your right to a trial, including all of the rights I've just discussed, and there would be no trial.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  I want to show you two more documents that you've signed.  The first is a waiver of trial by jury.  Did you read that document before signing it?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  I'm sorry, I didn't hear you.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  Did you understand it?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  You had a chance to talk to your lawyer about it?

THE DEFENDANT:  Yes.

THE COURT:  And you wish to waive your right to a jury trial?

THE DEFENDANT:  Yes.

THE COURT: All right. And this is your signature on that document; is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. And you've also waived your right to -- wait, he's pleading guilty to a misdemeanor, right, so we don't need the waiver of indictment; is that correct, Ms. Rozzoni?

MS. ROZZONI: That is actually correct, Your Honor. Yes, as far as I'm concerned, yes.

THE COURT: Okay. All right.

I know you signed a waiver of indictment, but for a misdemeanor charge you don't have a right to a grand jury indictment. Do you agree with that, Mr. Hawker?

MR. HAWKER: Yes, we do.

THE COURT: Okay.

All right. Understanding, Mr. Nalley, all of the rights you're giving up by pleading guilty, do you still want to plead guilty?

THE DEFENDANT: Yes, ma'am. I just want to put it behind me.

THE COURT: Okay. Do you have any questions about the rights you're giving up or anything else connected with this plea of guilty?

THE DEFENDANT: No, ma'am.

THE COURT: Have you had enough time to discuss

with your lawyer the charge against you, the plea, and the rights you're giving up by pleading guilty?

THE DEFENDANT:  Yes.

THE COURT:  And are you satisfied with his services as your lawyer in this case?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Are you pleading guilty because you are, in fact, guilty?

THE DEFENDANT:  Yes, ma'am, I'm guilty of going into the Capitol.

THE COURT:  All right.  Has anyone forced or threatened you to get you to plead guilty?

THE DEFENDANT:  No, ma'am.

THE COURT:  Okay.

All right.  Mr. Nalley, how do you plead on the charge of entering and remaining in a restricted building or grounds in violation of Title 18 United States Code Section 1752(a)(1), guilty or not guilty?

THE DEFENDANT:  Yes, I'm guilty of going in it.

THE COURT:  All right.  I'm satisfied that Mr. Nalley understands his rights and what he's waiving and agreeing to plead guilty to.  I find that he has entered his plea voluntarily.  I find there's a factual basis for his plea, I, therefore, accept his plea and find him guilty of Count 1, entering or remaining in a restricted building or

grounds in violation of Title 18 United States Code Section 1752(a)(1).

All right.  So we will refer this to the probation office to prepare a presentence report.  Have you all discussed a potential date for sentencing?

MR. HAWKER:  We did, Your Honor.

MS. ROZZONI:  We have, Your Honor.  We're looking at March 10th at 12:30 p.m.

THE COURT: Okay.  That works for me.  So we'll continue this matter until March 10th for sentencing, and at this point, given the state of the pandemic, I don't know whether we'll still be able to do this by videoconference or not, and even if we are, I'm not sure whether I will want to do this by videoconference or in person, but Mr. Hopkins will reach out to you in the new year.

And, Mr. Hawker, if you -- I know Mr. Nalley certainly has a right to appear before me in person, and I will accommodate that in the pandemic as well.  So why don't you touch base with Mr. Hopkins in the new year, let him know what your preference is, what Mr. Nalley's preference is, and he will get back to you on how that will proceed.  But at this point it's just too early to decide.

And, Ms. Rozzoni, I know you're out of district as well.  Is that a date you would be able to travel, if necessary?

MS. ROZZONI:  It is, Your Honor.  It would be fine.

THE COURT:  Okay.  All right.  So I would ask that you all file your sentencing memoranda on March 3rd, no later than March 3rd, on or before that date, and if there's a need to respond to anything stated by the other side, I'd ask if you could do that by March 7th.  I'm not asking for oppositions, but if there's a need to address something.

And, Ms. Rozzoni, I don't -- I'm not aware that Mr. Nalley engaged in any assault or property damage; and, therefore, there may not be a need for me to review any video footage, but -- am I correct about that?

MS. ROZZONI:  Your Honor, to the government's knowledge he did not.  There may be some footage of him walking through the Capitol that we may -- but it wouldn't be a lot, if we even submit it to the Court.

THE COURT:  Okay.  Well, if you do submit it to the Court, I'd ask that you do so on or before the 3rd of March.

MS. ROZZONI:  I will.

THE COURT:  And that you also make that video available to the public through the mechanism the U.S. Attorney's Office has set up to do that.

MS. ROZZONI:  I will.

THE COURT:  Okay.  Mr. Hawker, anything else we

need to address?

MR. HAWKER:  No, Your Honor.

THE COURT:  Okay.

All right, then.  I'll see you back in March, Mr. Nalley, for sentencing.  Thank you, all.

THE DEFENDANT:  Thank you, ma'am.

MS. ROZZONI:  Thank you.

MR. HAWKER:  Thank you.

(Whereupon the hearing was

concluded at 11:44 a.m.)

**<u>CERTIFICATE OF OFFICIAL COURT REPORTER</u>**

I, LISA A. MOREIRA, RDR, CRR, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability.

**NOTE:**  This hearing was held remotely by Zoom or some other virtual platform and is subject to the technological limitations of court reporting remotely.

Dated this 29th day of December, 2023.

<u>/s/Lisa A. Moreira, RDR, CRR</u>
Official Court Reporter
United States Courthouse
Room 6718
333 Constitution Avenue, NW
Washington, DC 20001